THE HONORABLE DAVID G. ESTUDILLO

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11   STEPHEN LISS and BONI MELCHOR, on
their own behalf and on behalf of others
similarly situated,

                    *Plaintiffs,*

          v.

SKECHERS U.S.A. INC.,

                    *Defendant.*

Case No. 3:25-cv-05861-DGE

**DEFENDANT'S MOTION TO
DISMISS**

NOTE ON MOTION CALENDAR:
November 4, 2025

ORAL ARGUMENT REQUESTED

**O'MELVENY & MYERS, LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

I.      INTRODUCTION ...................................................................................... 1

II.     RELEVANT ALLEGATIONS IN COMPLAINT ..................................... 3

III.    PLAINTIFFS' CEMA CLAIM IS PREEMPTED BY FEDERAL LAW ................. 5

        A.    Legal Standard ................................................................................ 5

        B.    The CAN-SPAM Act Preempts CEMA ......................................... 6

        C.    CAN-SPAM's Limited, Narrow Exception to Preemption for "Traditional Tort Theories" Does Not Apply ........................................ 8

              1.    Only Claims Involving Traditional Fraud or Deceit Survive Preemption. ........................................................... 8

              2.    Plaintiffs' Claims Are Not Predicated on Traditional Tort Principles. 11

              3.    Plaintiffs Fail to Allege a Material Misrepresentation. ...................... 12

              4.    Plaintiffs Do Not Adequately Allege Scienter. .................................. 15

              5.    Plaintiffs Do Not Allege Reliance or Damages. ................................ 18

              6.    Plaintiffs Cannot Satisfy the Rule 9 (b) Pleading Requirements for Fraud Claims. ................................................. 20

IV.     PLAINTIFFS' CPA CLAIM FAILS BECAUSE IT IS PREDICATED ON THEIR FAILED CEMA CLAIM. ............................................. 21

V.      CONCLUSION ........................................................................................ 21

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004)..................................................................................6

*Adomitis ex. rel. United States v. San Bernardino Mountains Cmty. Hosp.
Dist.*,
816 F. App'x 64 (9th Cir. 2020) ............................................................................15

*Altria Group, Inc. v. Good*,
555 U.S. 70 (2008)....................................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................5, 14

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
622 F. Supp. 2d 935 (N.D. Cal. 2009) ...................................................................11

*Asis Internet Servs. v. Member Source Media, LLC*,
2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) .......................................................19

*Asis Internet Servs. v. Vistaprint USA, Inc.*,
617 F. Supp. 2d 989 (N.D. Cal. 2009) ...................................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................6

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
777 F. 3d 712 (4th Cir. 2015)..................................................................................18

*Bitton v. Gencor Nutrientes, Inc.*,
654 F. App'x 358 (9th Cir. 2016) ...........................................................................16

*Brown v. Old Navy et al.*,
Case No. 2:23-cv-00781-JHC (W.D. WA) ..............................................................3

*Brown v. Old Navy, LLC*,
4 Wash. 3d 580 (2025).............................................................................................17

*Brown v. Old Navy, LLC*,
567 P.3d 38 (Wash. 2025).......................................................................................11

*Brummett v. Washington's Lottery*,
171 Wash. App. 664 (2012) .....................................................................................13

*Dahlstrom v. Life Care Centers of Am., Inc.*,
2023 WL 4893491 (W.D. Wash. Aug. 1, 2023) .......................................................6

*DeHoog v. Anheuser-Busch InBev SA/NV*,
899 F.3d 758 (9th Cir. 2018)...................................................................................15

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014)...................................................................................16

*Elcon Const., Inc. v. E. Washington Univ.*,
273 P.3d 965 (Wash. 2012)..................................................................................9, 13

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

*Emp. Painters' Tr. v. Asencio*,
    2021 WL 228892 (W.D. Wash. Jan. 22, 2021) ..................................................................... 15

*Eritrean Ass'n of Greater Seattle v. Gebrekidan*,
    2025 WL 306181 (W.D. Wash. Jan. 27, 2025) ....................................................................... 6

*Gordon v. First Premier Bank, Inc.*,
    WL 5195897 (E.D. Wash. Dec. 21, 2009) ......................................................................... 7, 21

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) ................................................................................... passim

*Gray v. Twitter, Inc.*,
    2021 WL 11086642 (W.D. Wash. 2021) ............................................................................. 15

*Great Pac. Sec. v. Barclays Cap., Inc.*,
    743 F. App'x 780 (9th Cir. 2018) ....................................................................................... 20

*Haskins v. Symantec Corp.*,
    654 F. App'x 338 (9th Cir. 2016) ....................................................................................... 20

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
    76 F.4th 1164 (9th Cir. 2023) ............................................................................................ 13

*In re Amazon Serv. Fee Litig.*,
    2024 WL 3460939 (W.D. Wash. 2024) ............................................................................. 16

*Indus. Truck Ass'n, Inc. v. Henry*,
    125 F.3d 1305 (9th Cir. 1997) .............................................................................................. 6

*Integra Med Analytics LLC v. Providence Health & Servs.*,
    854 F. App'x 840 (9th Cir. 2021) ....................................................................................... 16

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
    2009 WL 10676391 (W.D. Wash. May 27, 2009) ...................................................... 11, 19

*Joseph v. Amazon.com, Inc.*,
    46 F. Supp. 3d 1095 (W.D. Wash. 2014) ........................................................................... 21

*Khan Air, LLC v. U.S. Aircraft Ins. Grp.*,
    2005 WL 2739167 (W.D. Wash. Oct. 24, 2005) ................................................................ 21

*Kleffman v. Vonage Holdings Corp.*,
    2007 WL 1518650 (C.D. Cal. May 23, 2007) ............................................................... 7, 18

*Martin v. CCH, Inc.*,
    784 F. Supp. 2d 1000 (N.D. Ill. 2011) ............................................................................... 15

*Martin v. Miller*,
    24 Wash. App. 306 (1979) .................................................................................................. 13

*Mostowfi v. i2 Telecom Int'l, Inc.*,
    269 F. App'x 621 (9th Cir. 2008) ....................................................................................... 20

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
    469 F.3d 348 (4th Cir. 2006) ..................................................................................... passim

*Prudencio v. Midway Importing, Inc.*,
    831 F. App'x 808 (9th Cir. 2020) ....................................................................................... 16

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

*Rogers v. Meiser*,
   68 P.3d 967 (Okla. 2003) ................................................................................ 9

*Ross v. Sioux Honey Ass'n, Co-op.*,
   2013 WL 146367 (N.D. Cal. 2013) ............................................................... 14

*Shahpur v. Ulta Beauty*,
   Case No. 2:25-cv-284 (E.D. WA) .................................................................. 3

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ......................................................................... 20

*Wagner v. Spire Vision*,
   2014 WL 5140288 (N.D. Cal. Mar. 3, 2014) ............................................... 19

*Window World Int'l, LLC v. O'Toole*,
   2020 WL 7041814 (E.D. Mo. 2020) ............................................................. 14

### **STATUTES**

15 U.S.C. § 7701(a)(11) .................................................................................... 6

15 U.S.C. § 7701(a)(8) ...................................................................................... 7

15 U.S.C. § 7704 ............................................................................................... 7

15 U.S.C. § 7707(b)(1) ........................................................................... 2, 7, 8, 12

15 U.S.C. § 7707(b)(2) ...................................................................................... 8

15 U.S.C.A. § 7706 ........................................................................................... 7

Cal. Bus. & Prof. Code § 17529.5(a)(3) ......................................................... 19

### **CONSTITUTIONAL PROVISIONS**

U.S. Const. art. VI, cl. 2 .................................................................................... 6

**O'MELVENY & MYERS, LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

# I.    **INTRODUCTION**[1]

By this lawsuit, Plaintiffs seek to hold defendant Skechers U.S.A., Inc. ("Skechers") liable for allowing consumers extra time to take advantage of sales or discounts that were lawfully promoted by email under federal law.  Plaintiffs bring this putative class action under Washington's Commercial Electronic Mail Act, Wash. Rev. Code § 19.190.020  ("CEMA"), a 1998 statute that prohibits sending commercial emails to Washington residents which contain "false or misleading" information in the subject line.  Plaintiffs allege that certain subject lines in Skechers' marketing emails were "false or misleading" because the sales referenced in those subject lines ultimately lasted a day or so *longer* (not shorter) than initially advertised.  For having allowed consumers extra time to take advantage of discounted prices, Plaintiffs seek statutory damages from Skechers of up to $1,500 for *every email* sent to *every consumer* in Washington where the sale did not end "on time."

The Complaint seeks to cast Skechers' conduct in a decidedly false light.  Skechers, like countless other retailers nationwide, sends emails with subject lines announcing various sales and discounts.  Skechers may allow a grace period (typically twenty-four hours) at the end of such promotions so that consumers who decide only at the last minute to place an order (or who only become aware of the sale through third-party marketing and coupon sites, which tend to be slow in removing advertised deals from their search engines) do not miss the opportunity to participate.  Separately, Skechers may advertise a new (and different) promotion by email at or around the time a prior one concludes.  Neither practice is deceptive or unlawful—indeed, both are decidedly pro-consumer, as they allow consumers more opportunities to purchase products at a lower price.

Yet Plaintiffs allege that nine marketing emails sent by Skechers over the past four years allegedly violated CEMA.  Plaintiffs do not allege that any sale mentioned in the subject lines of those emails was fictitious, that Skechers failed to honor the prices it advertised, or

---

[1] Unless otherwise indicated, all emphasis is added and all quotations and citations are omitted.

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

that any consumer paid more than she or he was promised.  Nor do they allege that they (or anyone else in Washington, for that matter) even read the subject lines of these emails, or made a purchase decision based on the content of those subject lines.  Instead, their theory reduces to this: whenever Skechers extends a sale that had been offered via email—or offers another sale soon after one has ended—the original email advertising the sale instantly becomes "false or misleading."  And, according to Plaintiffs, such conduct results in strict liability:  it makes no difference whether anyone ever read, relied on, or was harmed by the content of the emails' subject lines.  If accepted, that strict-liability logic would expose every national retailer that decides to extend a sale to potentially massive statutory penalties and legal costs, even for good-faith marketing decisions intended to offer consumers *more* time and *more* opportunities to save.

Plaintiffs' strict-liability theory for application of CEMA, however, is expressly preempted by federal law.  Five years after CEMA was enacted, in order to address a diverse and unworkable patchwork of state laws purporting to regulate commercial email practices, Congress enacted the "Controlling the Assault of Non-Solicited Pornography And Marketing (CAN-SPAM) Act of 2003."  Directly responding to the then-existing mass of conflicting state laws, the CAN-SPAM Act established a uniform, nationwide framework for regulating commercial email, including subject lines, and expressly preempted state statutes like CEMA that purport to "regulate[] the use of electronic mail to send commercial messages."  15 U.S.C. § 7707(b)(1).

Congress enacted the CAN-SPAM Act expressly and precisely to prevent the kind of sweeping state-level liability trap for senders of commercial emails that Plaintiffs are trying to set.  The Act recognizes and seeks to balance the legitimate and beneficial elements of commercial email against truly harmful practices—fraudulent and abusive spam emails—by shielding legitimate businesses from inconsistent and overly onerous state laws aimed at

DEFENDANT'S MOTION TO DISMISS - 2
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

insignificant inaccuracies in emails.  The conduct targeted by Plaintiffs here falls squarely within that protection.

To avoid preemption, Plaintiffs can be expected to point—as they have in other, parallel cases they have brought against other retailers[2]—to a "limited, narrow exception" to preemption that Congress created for state laws prohibiting "falsity or deception." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1061 (9th Cir. 2009).  But the Ninth Circuit has made clear that this exception is only for claims involving "traditionally tortious or wrongful conduct." *Id*. at 1062.  As Plaintiffs formulate their claims under CEMA, those claims are *not* based on traditionally tortious or wrongful conduct.  Instead, their Complaint presumes CEMA bans emails containing *any* inaccurate information in the subject line—regardless of whether the allegedly inaccurate statement was intentional, material, or relied upon by the recipient.

Because Plaintiffs' CEMA claim is preempted and cannot be sustained as a matter of law, their Washington Consumer Protection Act ("CPA") claim based on the alleged violation of CEMA likewise cannot stand.  As a result, the Complaint should be dismissed with prejudice.

## II.    RELEVANT ALLEGATIONS IN COMPLAINT

According to Plaintiffs, CEMA is violated whenever anyone sends a commercial email to a Washington resident that "[c]ontains any false or misleading information in the subject line[]" of that email.  Compl. ¶ 2.  Here, Plaintiffs allege that Skechers violated CEMA by sending emails with subject lines that created a "false sense of urgency" by using language such as "Savings Ends Tonight" or "Today-Only Savings" when, according to Plaintiffs, the advertised promotions were subsequently extended beyond the deadline stated in the initial email.  In other words, Plaintiffs allege that Skechers violated CEMA by sending emails with

---

[2] Counsel is aware of at least the following other proceedings involving substantially similar claims:  *Shahpur v. Ulta Beauty*, Case No. 2:25-cv-284 (E.D. WA) and *Brown v. Old Navy et al*., Case No. 2:23-cv-00781-JHC (W.D. WA).

DEFENDANT'S MOTION TO DISMISS - 3
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

subject lines that *understated* the ultimate length of the advertised sale.  And they further contend that a violation of CEMA also constitutes a per se violation of the CPA.

In terms of factual allegations, the Complaint alleges that Plaintiff Liss received an April 9, 2025 email from Skechers with the subject, "Flash Sale Alert! Don't Miss Today-Only Savings," allegedly marketing a 20% off sale, and that Skechers subsequently "promoted a 20% deal to consumers" in a series of emails from April 10–15, 2025.  *Id*. ¶¶ 42, 43.  Then, later in the year, Plaintiffs Liss and Melchor claim that they each received a May 26, 2025 email from Skechers with the subject line "Long Weekend Savings End Tonight," advertising a sale of up to 30% off.  *Id*. ¶ 39.  They allege that on the following day, May 27, 2025, Skechers sent another email with the subject "Surprise! Long Weekend Savings Extended for Today," which extended the sale for one day.  *Id*. ¶¶ 40.

Plaintiffs do not allege that they opened any of these emails, nor do they say that they even saw or read the subject lines at issue.  Further, Plaintiffs do not allege that they made any purchase decisions in reliance on these emails.  They also do not contend that the sales being advertised in the subject lines of the April 9, 2025 or May 26, 2025 emails did not exist or that they (or anyone else) did not receive the pricing promised.  Rather, Plaintiffs assert that Skechers violated CEMA, and thus the CPA, merely by sending the April 9, 2025 and May 26, 2025 emails promoting genuine sales because the subject lines allegedly contained "false statements of fact," as the sales being advertised did not end on the specific date the emails said they would end.  *Id*. ¶¶ 64–68.

The April 9, 2025 and May 26, 2025 emails are the only two emails that the Complaint alleges either Plaintiff actually received from Skechers.  *Id*. ¶¶ 64–66.  Nonetheless, the Complaint goes on to identify seven other alleged instances in which Skechers sent emails with subject lines containing false or misleading statements in violation of CEMA.  *Id*. ¶¶ 44–53.  In this category, the Complaint alleges Skechers sent:

- An August 26, 2024 email with the subject, "Hurry, 25% off Ends Today!," that

DEFENDANT'S MOTION TO DISMISS - 4
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

allegedly was then followed by an August 27, 2024 email stating, "Surprise! One More Day to Save with 25% off," *id.* ¶¶ 44–45;

- A September 23, 2024 email with the subject, "Ends Tonight: Up to 40% off + so much more!" followed by a September 24, 2024 email stating, "SALE EXTENDED: Deals on slip-ins, boots + more!," *id.* ¶¶ 46–47;

- A November 20, 2024 email with the subject "Up to 30% off Ends Tonight," followed by an email the next day advertising "Black Friday Early Access 30% Off Starts Now!," *id.* ¶¶ 48–49;

- A November 27, 2023 email with the subject, "ENDS AT ~ MIDNIGHT: Claim your 30% off for Cyber Monday," followed by an email the next day with the subject, "EXTENDED: This is really it... 30% off ends tonight!" *Id.* ¶¶ 51–52; and

- Three additional emails dated March 10, 2024 with the subject line "Don't miss your chance to save up to 40% off," dated December 1, 2024 with the subject line "Last Call! Final Hours to Shop 30-50% off Site Wide," and dated March 9, 2025 with the subject line "Today Only! Members Take an Extra 10% Off." *Id.*, Ex. A.

Plaintiffs purport to represent a class "estimated to minimally contain thousands of members," *id.* ¶ 73, consisting of "all Washington citizens holding an email address to which Defendant sent or caused to be sent any" of the nine emails identified in Exhibit A to the Complaint within the class period. *Id.* ¶ 69. Plaintiffs seek damages that are "the greater of Plaintiffs' actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee." *Id.* ¶ 96.

### III.   PLAINTIFFS' CEMA CLAIM IS PREEMPTED BY FEDERAL LAW

#### A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face," *Ashcroft v.*

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

*Iqbal*, 556 U.S. 662, 678 (2009) (*Iqbal*), and to "raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The Court need not . . assume the truth of conclusory allegations." *Eritrean Ass'n of Greater Seattle v. Gebrekidan*, 2025 WL 306181, at *3 (W.D. Wash. Jan. 27, 2025); *Dahlstrom v. Life Care Centers of Am.*, Inc., 2023 WL 4893491, at *3 (W.D. Wash. Aug. 1, 2023) ("[C]onclusory allegations of law" and "unwarranted inferences are insufficient to defeat a motion to dismiss.") (citing *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)).

### B.    The CAN-SPAM Act Preempts CEMA

The Supremacy Clause of the U.S. Constitution provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. As the Supreme Court has stated, "state laws that conflict with federal law are without effect." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008). Congress may choose to "explicitly define[] the extent to which its enactments preempt state law." *Virtumundo*, 575 F.3d at 1060 (quoting *Indus. Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1309 (9th Cir. 1997)).

That is exactly what Congress did when it enacted the CAN-SPAM Act. Congress recognized in 2003 that the patchwork of inconsistent state laws regulating commercial email—which, at the time, included CEMA—had created confusion and unworkable compliance burdens for businesses nationwide:

> Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, **since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply**.

15 U.S.C. § 7701(a)(11). To solve this problem, Congress established "one national standard, applicable across jurisdictions," *Virtumundo*, 575 F.3d at 1062–63, designed to ensure that

"legitimate businesses would not have to guess at the meaning of various state laws when their advertising campaigns ventured into cyberspace." *Kleffman v. Vonage Holdings Corp*., 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007). With the CAN-SPAM Act, Congress crafted a regulatory framework for the use of commercial emails that struck a "careful balance between preserving a potentially useful commercial tool and preventing its abuse." *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006) ("*Omega*").[3]

Like CEMA, CAN-SPAM regulates the subject lines of commercial emails. But the CAN-SPAM Act only prohibits the sending of commercial emails with subject lines that are "likely to mislead a recipient" about "a *material* fact regarding the contents or subject matter of the message," and limits liability to those senders with actual or constructive knowledge that the subject line is misleading. 15 U.S.C. §§ 7704, 7701(a)(8). Congress further restricted enforcement of this and all other provisions of the Act to designated government agencies and state officials, allowing a limited private right of action only for internet access service providers. 15 U.S.C.A. § 7706.

To preserve CAN-SPAM's goal of establishing a single national framework, Congress expressly barred states from imposing their own liability rules for commercial email. The CAN-SPAM Act states that it "supersedes any statute, regulation, or rule of a State" that "expressly regulates the use of electronic mail to send commercial messages." *Id*. § 7707(b). By this expansive language, Congress sought to "broadly preempt state regulation of commercial e-mail with *limited, narrow exception*." *Virtumundo*, 575 F.3d at 1061.

CEMA falls squarely within this express preemption provision. *See Virtumundo*, 575 F.3d at 1057 (holding that CAN-SPAM Act preempted CEMA claims); *see also Gordon v. First Premier Bank, Inc*., WL 5195897, at *1 (E.D. Wash. Dec. 21, 2009) (same). Plaintiffs'

---

[3] *See also Virtumundo*, 575 F.3d at 1049 ("[D]espite what . . . anti-spam enthusiasts might contend, the purpose of the CAN–SPAM Act was not to stamp spam out of existence"; "there are beneficial aspects to commercial e-mail, even bulk messaging, that Congress wanted to preserve, if not promote").

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

claims thus are expressly preempted by CAN-SPAM unless they can establish that an exception applies, which, as discussed below, it does not.

### C.    CAN-SPAM's Limited, Narrow Exception to Preemption for "Traditional Tort Theories" Does Not Apply

Plaintiffs likely will argue that their claims fall within the exception created by Congress for state law claims based on "traditional tort theories." *Virtumundo*, 575 F.3d at 1061–62 (citing 15 U.S.C. § 7707(b)(2)). They are wrong. First, Plaintiffs' CEMA claims are not based on traditional tort theories. Plaintiffs do not plead materiality—an element that the Ninth Circuit has expressly required to invoke CAN-SPAM's narrow exception to preemption. Nor do Plaintiffs plead any of the other elements involved in traditional tort liability such as scienter, causation, and injury. Second, even if Plaintiffs attempted to reframe their CEMA claim as a traditional fraud claim, their allegations could not meet those pleading requirements.

### 1.    Only Claims Involving Traditional Fraud or Deceit Survive Preemption.

CAN-SPAM preempts state laws like CEMA except to the extent those laws "prohibit[] falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). The scope of this exception has been clearly outlined by the Ninth Circuit, and by the Fourth Circuit's decision in *Omega* (on which the Ninth Circuit heavily relied). *Virtumundo*, 575 F.3d at 1063. Both Circuits concluded that only claims based on "traditionally tortious" conduct fall within the exception and survive preemption. *Id.* at 1062.

In *Omega*, the Fourth Circuit considered whether the CAN-SPAM Act preempted claims brought under Oklahoma's counterpart to CEMA. 469 F.3d at 354. The Oklahoma statute, like CEMA, "reach[ed] beyond common law fraud or deceit." *Id.* at 353 ("By its terms, the statute is not limited to inaccuracies in transmission information that were material, led to detrimental reliance by the recipient, and were made by a sender who intended that the

misstatements be acted upon and either knew them to be inaccurate or was reckless about their truth.").

The Fourth Circuit held that a plaintiff's claims, based on "immaterial errors," were preempted and that CAN-SPAM's preemption exception for claims based on "falsity or deception" should be narrowly construed to cover only traditional tort theories grounded in fraud and deceit:

> The pre-emption clause links "falsity" with "deception"—**one of the several tort actions based upon misrepresentations**. Keeton et al., Prosser and Keeton on the Law of Torts § 105, at 726–27 (5th ed. 1984) (defining deceit as species of false-statement tort); Restatement (Second) of Torts § 525 (describing elements of deceit). **This pairing suggests that Congress was operating in the vein of tort when it drafted the pre-emption clause's exceptions, and intended falsity to refer to other torts involving misrepresentations, rather than to sweep up errors that do not sound in tort.**

*Id.* at 354. "Torts involving misrepresentations"—in particular, common law fraud and deceit—require materiality, reliance, actual injury, and deceptive intent. *Id.* (citing *Rogers v. Meiser*, 68 P.3d 967, 977 (Okla. 2003)); Restatement (Second) of Torts § 525 (stating that claim for "deceit," *i.e.*, "fraudulent misrepresentation," requires deceptive intent, "justifiable reliance upon the misrepresentation," and "pecuniary loss"); *accord Elcon Const., Inc. v. E. Washington Univ.*, 273 P.3d 965, 970 (Wash. 2012) (summarizing "nine essential elements of fraud").

The Fourth Circuit noted that a narrow interpretation of the exception was reinforced by "[o]ther sections of the CAN-SPAM Act," which contain a materiality component, *Omega*, 469 F.3d at 354. The court emphasized that allowing claims based on "bare error" to survive preemption would "upset the Act's careful balance between preserving a potentially useful commercial tool and preventing its abuse." *Id.* at 354. Broadening the exception to cover "strict liability" claims premised on "insignificant inaccuracies" would "undermine[] to the point of near-irrelevancy" the "national standard" that Congress created and its "plain intent."

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

*Id*. at 355.  Indeed, "[t]he strict liability standard imposed by a state such as Oklahoma would become a de facto national standard, with all the burdens that imposed [on companies], even though the CAN–SPAM Act indicates that Congress believed a less demanding standard would best balance the competing interests at stake." *Id*.  By contrast, limiting the exception to "more narrowly tailored causes of action" based on traditional fraud or deceit would "effectively respond to the obstacles to convenience and efficiency that unsolicited messages present." *Id*. at 355.

Three years later, in *Virtumundo*, the Ninth Circuit "independently analyzed the CAN–SPAM Act's text, structure, and legislative purpose" and "reach[ed] the same conclusion as the district court and the Fourth Circuit." 575 F.3d at 1061.  Agreeing that the preemption exception is "narrow" and must be "limited" to claims involving "*traditionally tortious* or wrongful conduct," the Ninth Circuit held that only claims akin to a "*tort action based on misrepresentations*" survive preemption.  *Id*. at 1062 (emphasis added).  The Ninth Circuit observed that such a narrow reading was supported by the "statutory text," which "counsels against any interpretation that preempts laws relating to 'acts of fraud,'" as well as "[f]urther scrutiny of congressional intent." *Id*.  The Ninth Circuit also agreed with the Fourth Circuit that a "contrary reading" of the statute would "turn an exception to a preemption provision into a loophole so broad that it would virtually swallow the preemption clause itself." *Virtumundo*, 575 F.3d at 1061 (citing *Omega*, 469 F.3d at 355).

Accordingly, the Ninth Circuit held that CEMA claims based on "*immaterial* inaccuracies or omissions" are preempted. *Id.* at 1062; *id*. at 1065 (requiring misrepresentation of "something of *material importance*") (emphasis in original); *id*. at 1061 (stressing that "*materiality component* comported with the policy pursued by the federal legislation as a whole").  The Ninth Circuit also underscored the plaintiff's own admission in that case that "he was not in any way misled or deceived"—*i.e.*, that he did not rely on any alleged misstatement—was a missing element required to establish a fraud or deceit claim. *Id*. at 1063.

Hence, *Virtumundo*'s determination that Section 7701(b)(1) creates a "limited, narrow exception," 575 F.3d at 1061, forecloses the erroneous, "broader" exception certain other courts had previously found, which was "not limited *just* to common-law fraud and other similar torts." *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009) (emphasis in original); *Asis Internet Servs. v. Vistaprint USA, Inc*., 617 F. Supp. 2d 989, 993 (N.D. Cal. 2009).

### 2.    Plaintiffs' Claims Are Not Predicated on Traditional Tort Principles.

Plaintiffs have adopted a strict liability view of what constitutes liability under CEMA. When CEMA was enacted, the central concern the statute sought to address was the "added cost consumers faced" from spam in a time when "[i]nternet access was comparatively slow and expensive" and "[c]onsumers often paid for access 'by the minute or hour.'" *Brown v. Old Navy, LLC*, 567 P.3d 38, 41 (Wash. 2025). Consistent with its goal to reduce email clutter, CEMA did not purport to require any of the traditional elements of intentional torts such as fraud and deceit. *See Isomedia, Inc. v. Spectrum Direct, Inc*., 2009 WL 10676391, at *3 (W.D. Wash. May 27, 2009) (finding CEMA does not "include all the elements of common law fraud"). Instead, the text of the statute "purport[s] to regulate a vast array of non-deceptive acts and practices." *Virtumundo*, 575 F.3d at 1059 (noting that CEMA imposes liability for "unintentional" errors or "imperfect representations").

CEMA, as Plaintiffs are using it here, is not consistent with, and has been fully preempted by, federal law. Congress has adopted national standards for regulating commercial email and expressly preempted state laws that seek to regulate commercial email, preserving only certain, limited claims based on traditionally tortious conduct. As a result, the only claims under CEMA that might survive mandatory preemption by CAN-SPAM are those that sufficiently plead the required elements of traditional tort liability. But, as discussed below,

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

that is not how Plaintiffs intend to use CEMA—and, in fact, they have pled none of those elements.

### 3.        Plaintiffs Fail to Allege a Material Misrepresentation.

To avoid preemption, Plaintiffs' CEMA claim must allege facts establishing that the challenged emails contain *materially* false or misleading subject line information. *Virtumundo*, 575 F.3d at 1061-62, 1065; 15 U.S.C. § 7707(b)(1).    Claims that target "immaterial inaccuracies or omissions" do not survive. *Virtumundo, Inc*., 575 F.3d at 1061–62; *id* at 1065 (requiring "something of *material* importance").    Plaintiffs fall far short of this requirement.

*First*, Plaintiffs do not plausibly allege any materially false or misleading content.    At most, the Complaint describes how, on a handful of occasions over a four-year class period, Skechers either extended a sale by a single day, *see* Compl. ¶¶ 39–40, 44–47,50–52, or later promoted a separate sale following the conclusion of an earlier one, *id*. ¶¶ 42–43, 48–50. Neither of these actions support a claim of falsity or deception.

As to the emails advertising sales that were later extended by a day, Plaintiffs do not allege the advertised sales failed to occur, that the discounts were unavailable during the stated period, or that they (or anyone else) were denied the benefit of any promotion.    Nor can Plaintiffs' plausibly describe how extending a sale *by one day* retroactively renders the original subject line false or misleading.    A subsequent decision to extend a sale for a short time only changes the offer going forward—it does not transform an earlier, accurate statement about the sale into a false one.

Further, as to the April 9, 2025 and November 20, 2024 emails, which advertised one-day promotions, Plaintiffs claim that these emails were misleading because Skechers later sent new emails adverting similar discounts.  Compl. ¶¶ 42–43, 48–50.  But the Complaint does not plausibly allege that the later promotions were continuations of the same sales, being applied to the same products, and on the same terms.  *See infra* at 16.  To the contrary,

Plaintiffs' own descriptions of these subsequent promotional emails indicate that each promotion was distinct—such as when Skechers' November 21, 2024 email expressly referred to a "Black Friday" sale, a separate event not mentioned in the earlier November 20, 2024 email. Compl. at ¶¶ 48–50. Plaintiffs do not plausibly allege, nor can they, how Skechers' decision to launch a subsequent sale renders the subject line promoting a prior sale false, misleading, or otherwise deceptive in any material respect.

Second, Plaintiffs fail to allege that the cited subject lines were materially false such that they affected *Plaintiffs'* own purchase decisions. To establish materiality, Plaintiffs must plead facts demonstrating that the challenged subject lines were significant to *Plaintiffs' purchase decision*, as would be required under the traditional tort concepts discussed in *Virtumundo* and *Omega*. They cannot simply assert in a conclusory manner that that the subject line *could* be material to a hypothetical recipient's sense of urgency to open an email. *See Elcon*, 273 P.3d at 970 (materiality absent because alleged misstatements were not material to the plaintiff); *Martin v. Miller*, 24 Wash. App. 306, 309 (1979) (analyzing whether "representations were material to the plaintiffs' decision to enter into a purchase and marketing agreement with the defendant"); *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023) (focusing on whether the alleged misstatement was "material to [the plaintiff's] decision- making"); *Brummett v. Washington's Lottery*, 171 Wash. App. 664, 678 (2012) (advertisement claiming tickets were "going fast" was not "something of material importance").

Here, Plaintiffs do not allege that they ever even read the subject lines (or the content of the emails at issue), much less that the subject line of those emails had any influence on their purchase decisions. Plaintiffs instead seek to impose strict liability for any statement later deemed to be inaccurate, regardless of whether anyone read it or whether it played a significant role in an actual purchase decision. This strict liability approach would effectively nullify the materiality requirement and expand CEMA far beyond the narrow scope permitted under the

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

CAN-SPAM Act's preemption exception. *See Omega*, 469 F.3d at 355 (concluding that interpreting the CAN-SPAM Act's pre-emption clause to permit "strict liability for insignificant inaccuracies" would undermine the Act's "national standard . . . to the point of near-irrelevancy.").

Third, the Complaint fails for the independent reason that it is devoid of facts plausibly establishing that Skechers' alleged misstatements would be material to a *reasonable consumer*'s purchase decisions. The Complaint relies on conclusory assertions that the subject lines "create a false sense of urgency" without sufficient "facts to support such inferences." *Window World Int'l, LLC v. O'Toole*, 2020 WL 7041814, at *4 (E.D. Mo. 2020); *Ross v. Sioux Honey Ass'n, Co-op.*, 2013 WL 146367, at *18 n.9 (N.D. Cal. 2013) (rejecting "conclusory statements" regarding materiality under *Iqbal*). Knowing that materiality is required, Plaintiffs cite in their Complaint a policy document from the Federal Trade Commission (FTC) articulating the FTC staff's unilateral and unproven view that emails can, under certain circumstances, create pressure to buy by advertising deals "without a deadline or with a meaningless deadline," and a discussion paper from a U.K. agency observing the unremarkable fact that consumers respond to scarcity. Compl. ¶¶ 30–37. These are simply legal conclusions, and they do not substitute for articulating actual facts demonstrating what a reasonable consumer would find to be material. Here, where at most Plaintiffs have pled that Skechers occasionally extends a sale by one day or occasionally offers different sales in close proximity to each other (which are very different from the assumptions made by the FTC staff about never-ending "sales" or supposedly "meaningless deadlines"), Plaintiffs' conclusory statements amount to nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation"—which is not allowed. *Iqbal*, 556 U.S. at 678.

At most, Plaintiffs' allegations amount to a claim that Skechers should have included *additional* information in their subject lines—i.e. the possibility that the sale might later be extended. But such claims premised on "incomplete" or "less than comprehensive

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

information" are not actionable and are preempted by the CAN-SPAM Act. *See, e.g., Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000, 1008 (N.D. Ill. 2011) (granting motion to dismiss claim under Illinois anti-spam law—which similarly prohibited the sending of "false or misleading" information in a subject line—because plaintiff's allegations that the subject lines were incomplete and contained a "half-truth" did "not rise to the level of traditionally tortious' conduct," and thus the claim was preempted).

### 4.     Plaintiffs Do Not Adequately Allege Scienter.

To state a non-preempted claim under CEMA, Plaintiffs must also plausibly allege that Skechers *knew* the challenged subject lines were false or misleading when sent. *See, e.g.*, *Virtumundo*, 575 F.3d at 1061–1063 (requiring "traditionally tortious or wrongful conduct"); *Omega*, 469 F.3d at 353-54 (fraud or deceit tort requires sender "knew" statements were false); *see also Emp. Painters' Tr. v. Asencio*, 2021 WL 228892, at *3 (W.D. Wash. Jan. 22, 2021) ("Claims of fraud and fraudulent misrepresentation require an intent to deceive."). Plaintiffs must allege sufficient facts from which a conclusion of scienter can be reasonable inferred. *Gray v. Twitter, Inc*., 2021 WL 11086642, at *6 (W.D. Wash. 2021). Allegations based on "mere speculation" are insufficient. *Adomitis ex. rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64, 66 (9th Cir. 2020); *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018) ("[S]peculation stops short of the line between possibility and plausibility of entitlement to relief."). Again, Plaintiffs do not meet this burden.

For example, nowhere do Plaintiffs allege that Skechers intended for its subject lines to be (or knew that they were) supposedly false or misleading; indeed, as noted above, Plaintiffs do not even actually allege that the subject lines were false or misleading when sent. S*ee supra* at 11–12. Instead, they offer only conclusory allegations that Skechers had a "scheme to corral consumers to purchase its products," and sent "emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds." Compl. ¶¶ 4, 38. And they identify only a handful of instances where Skechers later extended an advertised

sale or promoted a separate sale over a four-year period. *Id*. ¶¶ 39–53. What Plaintiffs seem to want to imply—without directly alleging—is that Skechers predetermined the ultimate length of these sales at the outset and purposefully misstated their duration in the initial subject lines. Such conclusory speculation is insufficient under Rule 8(a)(2).

Plaintiffs are required to a factual basis for their claims, however, and their only apparent factual basis for the supposed inference of fraudulent intent is a few subsequent emails extending certain sales or advertising additional sales. But an inference of fraudulent intent does not follow from those scant facts. Instead, Plaintiffs rely on speculative leaps and unreasonable inferences, neither of which satisfy Rule 8(a)(2)'s plausibility requirement. *In re Amazon Serv. Fee Litig.*, 2024 WL 3460939, at *8 (W.D. Wash. 2024); *accord Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358, 363 (9th Cir. 2016).

When assessing plausibility under Rule 8(a)(2), "courts must also consider an 'obvious alternative explanation.'" *Integra Med Analytics LLC v. Providence Health & Servs.*, 854 F. App'x 840, 844 (9th Cir. 2021). The Court "need not accept the conclusion" that Skechers defrauded Plaintiffs "when its actions are in line with lawful rational and competitive business strategy." *Id.*; *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014). Indeed, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability," the Ninth Circuit has held, "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 810 (9th Cir. 2020).

Here, Plaintiffs allege that Skechers "has been blasting out marketing emails at a rate averaging (at least) 388 per year, 32 per month, and 1 per day." Compl. ¶ 55. Assuming the truth of that factual allegation, there would be 1,552 (4 years x 388 emails/year) at issue, yet they identify only *nine* emails as making a supposedly false representation. There are, of course, numerous reasonable and innocuous (if not beneficial) reasons why a retailer might

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

occasionally decide to extend a sale for a day (or start a new sale), such as clearing excess inventory, responding to unexpected demand, or providing customers a grace period.  In fact, Plaintiffs allege no facts to suggest that Skechers intended to mislead anyone when it sent the original emails, or was fulfilling some malicious intent when it provided one-day grace periods at the end of sales.  The far more logical conclusion is that Skechers occasionally extended a sale (or offered a new sale) in order to allow consumers *more* opportunities to take advantage of lower prices, not to engage in some "scheme" to compel purchases that consumers would not otherwise make.

Furthermore, at least two of the instances identified in the Complaint describe nothing more than Sketchers advertising a new and independent promotion sometime after the conclusion of a prior sale.  For the April 9, 2025 email—subject line "Flash Sale Alert! Don't Miss Today-Only Savings!" —Plaintiffs allege only that Skechers later "promoted a 20% deal to consumers."  Compl.¶¶ 42, 43.  However, they plead no facts plausibly linking that later promotion to the April 9 offer: no allegations that it shared the same terms, applied to the same products, or was marketed as a continuation of the prior sale.  The most reasonable inference is a benign one—that the later email advertised a separate, different sale.[4]  The same is true of the November 20, 2024 email—subject "Up to 30% off Ends Tonight" —which Plaintiffs allege was followed by an email with the subject line "Black Friday Early Access-30% Off Starts Now."  *Id*. ¶¶ 48–50.  Nothing reasonably ties the latter to the earlier promotion; indeed, the later subject line expressly invokes "Black Friday," an event not mentioned in the November 20 email subject line, and signals a new sale ("Starts Now"), not an extension.  *Id*.

---

[4] Plaintiffs allege that the April 9 email "marketed a 20% off deal" and that Skechers continued to promote a 20% off deal in subsequent emails.  Compl. ¶ 42–43.  But the April 9 subject line Plaintiffs quote—"Flash Sale Alert — Don't Miss Today Only Savings"—contains no reference to "20% off."  Plaintiffs presumably derive the 20% figure from the body of the April 9 email, yet, as the Washington Supreme Court has acknowledged, "deciding whether a subject line is misleading requires evaluating the subject line alone because CEMA does not regulate the body of the e-mail, only the subject line."  *Certification from United States Dist. Ct. for W. Dist. of Washington in Brown v. Old Navy, LLC*, 4 Wash. 3d 580, 589 (2025).

Major online retailers routinely run multiple, sometimes overlapping promotions that may use similar percentage-off language but differ in scope, duration, and product mix. Those ordinary, pro-consumer practices of offering different types of sales over time supply an obvious alternative explanation, and none of Plaintiffs factual allegations support a plausibly inference that Skechers intended to deceive or mislead customers.

### 5. Plaintiffs Do Not Allege Reliance or Damages.

As discussed, Plaintiffs' CEMA claim must be based on traditional tort theories associated with fraud and deceit to survive preemption. *Virtumundo*, 575 F.3d at 1062 (holding that only claims akin to a "*tort action based on misrepresentations*" survive preemption); *id.* ("Congress's intended . . . to save from preemption only statutes, regulations, or rules that target *fraud and deception*.") (emphasis in original); *Omega*, at 354 ("Congress was operating in the vein of tort when it drafted the pre-emption clause's exceptions, and intended falsity to refer to other torts *involving misrepresentations*, rather than to sweep up errors that do not sound in tort.").

The most accurate reading of *Virtumundo* and related cases is that, in addition to materiality and scienter, a plaintiff asserting a non-preempted CEMA claim must also sufficiently plead reliance and damages—two additional cornerstone elements of a traditional fraud and deceit claim. *See* Restatement (Second) of Torts § 525 (stating that claim for "deceit," i.e., "fraudulent misrepresentation," requires deceptive intent, "justifiable reliance upon the misrepresentation," and "pecuniary loss"); *see also Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F. 3d 712, 717 (4th Cir. 2015) (holding that California and Maryland's anti-spam statute implicitly incorporate "common law principles," including "causation" and other elements "necessary to compose a complete regime of tort liability," and thus avoid preemption.); *Kleffman*, 2007 WL 1518650 at *3 (finding that plaintiff's claims were "clearly preempted" because the complaint "does not allege a traditionally tort theory at all, or even that he was at any point mislead by any of the . . . emails").

DEFENDANT'S MOTION TO DISMISS - 18
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

1      Plaintiffs make no attempt to plead either of these elements. Because Plaintiffs

2 advance a strict liability theory under CEMA, "there is no allegation of 'reliance' to be found

3 anywhere in the [Complaint]." *Isomedia, Inc. v. Spectrum Direct, Inc.*, 2009 WL 10676391, at

4 *4 (W.D. Wash. May 27, 2009). Rather, Plaintiffs allege only that they "received" two of the

5 allegedly offending emails from Skechers. Compl ¶¶ 65–66. But this "is not the same as an

6 allegation that anyone acted in reliance upon the information contained in [the emails]."

7 *Isomedia*, 2009 WL 10676391, at *4. As discussed, neither Plaintiff alleges that they even

8 *read*—let alone suffered an actual injury as a result of their reliance on—any purported

9 misstatement in the subject line of any email. More fundamentally, it is wholly implausible

10 that Plaintiffs suffered any actual injury simply because a sale was extended by a day or so

11 beyond its initial end date, as this gave consumers *more time*—not less—to take advantage of

12 the savings.

13      Based on arguments Plaintiffs' counsel have made in other cases, Skechers anticipates

14 that Plaintiffs will rely on Northern District of California decisions holding that California

15 consumers need not plead reliance or damages to state a non-preempted claim under

16 California's anti-spam act, and will argue that the same rule should apply to Plaintiffs' CEMA

17 claim. *E.g., Wagner v. Spire Vision*, 2014 WL 5140288, at *2-4 (N.D. Cal. Mar. 3, 2014); *Asis*

18 *Internet Servs. v. Member Source Media, LLC*, 2010 WL 1610066, at *3 (N.D. Cal. Apr. 20,

19 2010). Such decisions are inapposite for several reasons. First, they are out of district and not

20 binding on this Court. Second, they interpret a California statute that differs from CEMA in

21 key respects.[5] Third, to the extent those cases suggest that reliance and injury are unnecessary

22 elements of a non-preempted CEMA claim, they directly conflict with the Ninth Circuit's

23

24 _____

[5] Most notably, the most relevant California statute provides that liability attaches for a subject
25 line only if "[t]he e-mail advertisement has a subject line that a person knows would be *likely*
*to mislead* a recipient, *acting reasonably under the circumstances*, about a *material fact*
26 regarding the contents or subject matter of the message." Cal. Bus. & Prof. Code §
17529.5(a)(3) (emphasis added).

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

controlling decision in *Virtumundo* and therefore should be disregarded.[6]  *See Virtumundo*, 575 F.3d at 1061–62; *see also Omega*, 469 F.3d at 354.

### 6.  Plaintiffs Cannot Satisfy the Rule 9 (b) Pleading Requirements for Fraud Claims.

Even if Plaintiffs were to reframe their CEMA claim as a traditional fraud-based tort claim (which they cannot), they would still fall far short of Rule 9(b)'s pleading requirements. Rule 9(b) requires claims sounding in fraud to be pleaded with particularly.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007); *Mostowfi v. i2 Telecom Int'l, Inc*., 269 F. App'x 621, 623 (9th Cir. 2008) ("Rule 9(b) may apply to claims—that although lacking fraud as an element—are 'grounded' or 'sound' in fraud.").  Plaintiffs do not come close to satisfying this standard.

Although the Complaint references nine promotional emails that allegedly violate CEMA, it alleges only that either Plaintiff personally received two of those emails, *See* Compl. ¶¶ 64–66.  And even as to those two, the Complaint does not plausibly explain how any statement in the subject lines were false.  *See supra* at 11–12.  For the remaining emails, the Complaint does not allege that either plaintiff—or any Washington resident—ever received them.  Nor does the Complaint describe with any specificity why the subject lines of those emails were misleading, as opposed to reflecting innocuous, lawful, and pro-consumer business practices.

Further, as discussed, neither Plaintiff alleges anything about—let alone facts with the required particularity—if and how they relied on any purported misstatement in an email subject line or suffered any actual harm as a result.  *See Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (finding plaintiff "failed to plead her fraud claims with particularity as required by Rule 9(b)" by not alleging detrimental reliance); *Great Pac. Sec.*

---

[6] Even if the Court were to conclude that reliance and damages are not required, *Virtumundo* and *Omega* leave no doubt that materiality is a required element.  As explained above, Plaintiffs have not plausibly alleged materiality, which independently compels dismissal of their claims.

DEFENDANT'S MOTION TO DISMISS - 20
CASE NO. 3:25-CV-05861-DGE

**O'MELVENY & MYERS, LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

*v. Barclays Cap., Inc.*, 743 F. App'x 780, 782 (9th Cir. 2018) (holding complaint "failed to plead reliance with particularity").  And neither Plaintiff pleads specific facts demonstrating that any alleged misstatement was material to them or anyone else, *supra* at § III(C)(3), or that Skechers knew that the subject lines at issue were false or misleading when they sent them, *supra* at § III(C)(4).  The Complaint, thus, fails to meet Rule 9(b)'s heightened pleading requirements and must be dismissed for that reason as well.  *See Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1109 (W.D. Wash. 2014) (granting judgment on the pleadings because plaintiff did not plead with sufficient particularly any "material representation to him that he had right to and did rely upon to his detriment*")*; *Khan Air, LLC v. U.S. Aircraft Ins. Grp.*, 2005 WL 2739167, at *1 (W.D. Wash. Oct. 24, 2005) (dismissing counterclaim that failed to "adequately ple[a]d materiality of the omission" or "the nature of its damages," which "must be plead with particularity").

## IV.  PLAINTIFFS' CPA CLAIM FAILS BECAUSE IT IS PREDICATED ON THEIR FAILED CEMA CLAIM.

Because Plaintiffs' "CEMA claims fail as a matter of law," their CPA claims, which are "grounded in CEMA violations, are likewise inadequate and [a]re properly dismissed." *Virtumundo*, 575 F.3d at 1065; *Gordon v. First Premier Bank, Inc.*, 2009 WL 5195897 at *2 (dismissing "Plaintiff's CPA claim" because it was "dependent on his pre-empted CEMA claim.").

## V.  CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

*I certify that this memorandum contains 7,158 words, in compliance with the Local Civil Rules.*

/ / /

/ / /

DEFENDANT'S MOTION TO DISMISS - 21
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

Dated this 14th day of October, 2025.

ANGELI & CALFO LLC

By: s/ Angelo J. Calfo
Angelo J. Calfo (WSBA #27079)
Tyler S. Weaver (WSBA #29413)
angelo@angelicalfo.com
tylerw@angelicalfo.com

O'MELVENY & MYERS LLP

By: s/ Jeffrey A. Barker
Daniel M. Petrocelli (CA Bar #97802)
(*Pro Hac Vice*)
Jeffrey A. Barker (CA Bar #166327)
(*Pro Hac Vice*)
Daniel Cooper (CA Bar # 329607)
(*Pro Hac Vice*)
dpetrocelli@omm.com
jbarker@omm.com
dcooper@omm.com

*Attorneys for Defendant Skechers U.S.A., Inc.*

DEFENDANT'S MOTION TO DISMISS - 22
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700