THE HONORABLE DAVID G. ESTUDILLO

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEPHEN LISS and BONI MELCHOR, on their own behalf and on behalf of others similarly situated, | Case No. 3:25-cv-05861-DGE |
| *Plaintiffs,* | **DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** |
| v. | NOTE ON MOTION CALENDAR: December 16, 2025 |
| SKECHERS U.S.A. INC., | ORAL ARGUMENT REQUESTED |
| *Defendant.* | |

**O'MELVENY & MYERS, LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

**TABLE OF CONTENT**

Page

TABLE OF AUTHORITIES ...................................................................................... ii

I.     INTRODUCTION ........................................................................................... 1

II.    RELEVANT ALLEGATIONS IN AMENDED COMPLAINT ................................. 3

III.   PLAINTIFFS' CEMA CLAIMS ARE PREEMPTED BY FEDERAL LAW ............ 7

       A.    Legal Standard ................................................................................... 7

       B.    The CAN-SPAM Act Preempts CEMA.............................................. 8

       C.    CAN-SPAM's Limited, Narrow Exception to Preemption for "Traditional
             Tort Theories" Does Not Apply ........................................................ 10

             1.    Only Claims Involving Traditional Fraud or Deceit Survive
                   Preemption. ....................................................................... 10

             2.    Plaintiffs' Claims Are Not Predicated on Traditional Tort Principles. 13

             3.    Plaintiffs Fail to Allege a Material Misrepresentation. ....................... 14

             4.    Plaintiffs Do Not Adequately Allege Scienter. ................................ 17

             5.    Plaintiffs Do Not Allege Reliance or Damages. ............................... 21

             6.    Plaintiffs Cannot Satisfy the Rule 9(b) Pleading Requirements for
                   Fraud Claims. ..................................................................... 22

IV.    PLAINTIFFS' CPA CLAIMS FAILS BECAUSE THEY ARE PREDICATED ON
       THEIR FAILED CEMA CLAIM. .................................................................... 24

V.     CONCLUSION ............................................................................................ 24

DEFENDANT'S MOTION TO DISMISS - i
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ............................................................................. 8

*Adomitis ex. rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*,
816 F. App'x 64 (9th Cir. 2020) ......................................................................... 17

*Altria Group, Inc. v. Good*,
555 U.S. 70 (2008) ............................................................................................... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 7, 17

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
622 F. Supp. 2d 935 (N.D. Cal. 2009) ................................................................ 13

*Asis Internet Servs. v. Member Source Media, LLC*,
2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) .................................................... 22

*Asis Internet Servs. v. Vistaprint USA, Inc.*,
617 F. Supp. 2d 989 (N.D. Cal. 2009) ................................................................ 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................. 7

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
777 F. 3d 712 (4th Cir. 2015) ............................................................................. 21

*Bitton v. Gencor Nutrientes, Inc.*,
654 F. App'x 358 (9th Cir. 2016) ....................................................................... 20

*Brown v. Old Navy et al.*,
Case No. 2:23-cv-00781-JHC (W.D. WA) ........................................................... 3

*Brown v. Old Navy, LLC*,
567 P.3d 38 (Wash. 2025) ................................................................................... 13

*Brummett v. Washington's Lottery*,
171 Wash. App. 664 (2012) ................................................................................ 15

*Dahlstrom v. Life Care Centers of Am., Inc.*,
2023 WL 4893491 (W.D. Wash. Aug. 1, 2023) ................................................... 8

*DeHoog v. Anheuser-Busch InBev SA/NV*,
899 F.3d 758 (9th Cir. 2018) .............................................................................. 17

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .............................................................................. 18

*Elcon Const., Inc. v. E. Washington Univ.*,
273 P.3d 965 (Wash. 2012) .......................................................................... 11, 15

*Emp. Painters' Tr. v. Asencio*,

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

# TABLE OF AUTHORITIES

**Page**

2021 WL 228892 (W.D. Wash. Jan. 22, 2021) ............................................................. 17

*Eritrean Ass'n of Greater Seattle v. Gebrekidan*,
2025 WL 306181 (W.D. Wash. Jan. 27, 2025) ............................................................. 8

*Gordon v. First Premier Bank, Inc.*,
WL 5195897 (E.D. Wash. Dec. 21, 2009) ............................................................. 9, 24

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) ............................................................. passim

*Gray v. Twitter, Inc.*,
2021 WL 11086642 (W.D. Wash. 2021) ............................................................. 17

*Great Pac. Sec. v. Barclays Cap., Inc.*,
743 F. App'x 780 (9th Cir. 2018) ............................................................. 23

*Haskins v. Symantec Corp.*,
654 F. App'x 338 (9th Cir. 2016) ............................................................. 23

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
76 F.4th 1164 (9th Cir. 2023) ............................................................. 15

*In re Amazon Serv. Fee Litig.*,
2024 WL 3460939 (W.D. Wash. 2024) ............................................................. 20

*Indus. Truck Ass'n, Inc. v. Henry*,
125 F.3d 1305 (9th Cir. 1997) ............................................................. 8

*Integra Med Analytics LLC v. Providence Health & Servs.*,
854 F. App'x 840 (9th Cir. 2021) ............................................................. 18

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
2009 WL 10676391 (W.D. Wash. May 27, 2009) ............................................................. 13, 21, 22

*Joseph v. Amazon.com, Inc.*,
46 F. Supp. 3d 1095 (W.D. Wash. 2014) ............................................................. 23

*Khan Air, LLC v. U.S. Aircraft Ins. Grp.*,
2005 WL 2739167 (W.D. Wash. Oct. 24, 2005) ............................................................. 23

*Kleffman v. Vonage Holdings Corp.*,
2007 WL 1518650 (C.D. Cal. May 23, 2007) ............................................................. 8, 21

*Liss et al. v. Lenovo United States Inc.*,
3:25-cv-05840 (W. D. WA) ............................................................. 3

*Martin v. CCH, Inc.*,
784 F. Supp. 2d 1000 (N.D. Ill. 2011) ............................................................. 17

*Martin v. Miller*,
24 Wash. App. 306 (1979) ............................................................. 15

*Mostowfi v. i2 Telecom Int'l, Inc.*,
269 F. App'x 621 (9th Cir. 2008) ............................................................. 23

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

## TABLE OF AUTHORITIES

Page

469 F.3d 348 (4th Cir. 2006)................................................................passim

*Prudencio v. Midway Importing, Inc.*,
831 F. App'x 808 (9th Cir. 2020) ................................................. 18

*Rogers v. Meiser*,
68 P.3d 967 (Okla. 2003) ............................................................. 11

*Ross v. Sioux Honey Ass'n, Co-op.*,
2013 WL 146367 (N.D. Cal. 2013).............................................. 15

*Shahpur v. Ulta Beauty*,
Case No. 2:25-cv-284 (E.D. WA) ................................................. 3

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007)........................................................ 23

*Syed v. M-I, LLC*,
853 F.3d 492 (9th Cir. 2017)........................................................ 16

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003)........................................................ 16

*Wagner v. Spire Vision*,
2014 WL 5140288 (N.D. Cal. Mar. 3, 2014) ............................... 22

*Window World Int'l, LLC v. O'Toole*,
2020 WL 7041814 (E.D. Mo. 2020).............................................. 15

## STATUTES

15 U.S.C. § 7701(a)(11) ........................................................................ 8

15 U.S.C. § 7701(a)(8) .......................................................................... 9

15 U.S.C. § 7704 ................................................................................... 9

15 U.S.C. § 7707(b)(1)........................................................ 2, 9, 10, 14

15 U.S.C. § 7707(b)(2)........................................................................ 10

15 U.S.C.A. § 7706 ............................................................................... 9

Cal. Bus. & Prof. Code § 17529.5(a)(3) ............................................. 22

Wash. Rev. Code § 19.190.020  ("CEMA") ........................................ 1

## OTHER AUTHORITIES

https://perma.cc/847M-EY69/................................................................ 16

## TREATISES

Restatement (Second) of Torts § 525............................................. 11, 21

**O'MELVENY & MYERS, LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

## TABLE OF AUTHORITIES

**Page**

### <u>REGULATIONS</u>

89 Fed. Reg. 96087 (Nov. 27, 2024)...............................................................................20

### <u>CONSTITUTIONAL PROVISIONS</u>

U.S. Const. art. VI, cl. 2 .................................................................................................8

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

I.    **INTRODUCTION**[1]

By this lawsuit, Plaintiffs seek to hold Defendant Skechers U.S.A., Inc. ("Skechers") liable for allowing consumers extra time to take advantage of sales or discounts that were lawfully promoted by email under federal law.  Plaintiffs bring this putative class action under Washington's Commercial Electronic Mail Act, Wash. Rev. Code § 19.190.020 ("CEMA"), a 1998 statute that prohibits sending commercial emails to Washington residents containing "false or misleading" information in the subject line.  Plaintiffs allege that certain subject lines in Skechers' marketing emails were "false or misleading" because the sales referenced in those subject lines ultimately lasted a day or so *longer* (not shorter) than initially advertised.  For having allowed consumers extra time to take advantage of discounted prices, Plaintiffs seek statutory damages from Skechers of up to $1,500 for *every email* sent to *every consumer* in Washington where the sale allegedly did not end "on time."

Defendant previously moved to dismiss Plaintiffs' original complaint on October 14, 2025, Dkt. 21.  On November 4, rather than opposing that motion, Plaintiffs filed an amended complaint in which they added twelve more allegedly offending emails but made no other substantive changes.  Adding a few more emails with similar contents, however, does nothing to address the fundamental defects with Plaintiffs' claims described herein.

Both the original complaint and the current Amended Complaint cast Skechers' conduct in a decidedly false light.  Skechers, like countless other retailers nationwide, sends emails with subject lines announcing various sales and discounts.  Skechers may allow a grace period (typically twenty-four hours) at the end of such promotions so that consumers who decide near the end of the sale to place an order (or who only become aware of a sale through third-party marketing and coupon sites, which often lag behind in removing advertised deals from their search engines) do not miss the opportunity to participate.  Separately, Skechers may advertise a new (and different) promotion by email after a prior one concludes.  Neither

---

[1] Unless otherwise indicated, all emphasis is added and all quotations and citations are omitted.

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

1   practice is deceptive or unlawful—indeed, both are common marketing practices and are pro-

2   consumer, as they allow customers more opportunities to purchase products at lower prices.

3        Yet Plaintiffs allege that 21 (formerly nine in the original Complaint) marketing emails

4   sent by Skechers over the past four years allegedly violated CEMA.  Plaintiffs do not allege

5   that any sale mentioned in the subject lines of those emails was fictitious, that Skechers failed

6   to honor the prices it advertised, or that any consumer paid more than the price she or he was

7   promised.  Nor do they allege that they (or anyone else in Washington, for that matter) ever

8   read the subject lines of these emails or made a purchase decision based on the content of the

9   subject lines.  Instead, their theory reduces to this: whenever Skechers extends a sale that had

10  been offered via email—or offers another sale days, weeks or months after one has ended—

11  the original email advertising the sale instantly becomes "false or misleading."  And, according

12  to Plaintiffs, such conduct results in strict liability:  it makes no difference whether there was

13  any intent to deceive on Skechers' part or whether any recipient ever read, relied on, or was

14  harmed by the content of the subject lines.  If accepted, this strict-liability theory would expose

15  every national retailer that may extend a sale to potentially massive statutory penalties and

16  legal costs in the State of Washington, even for good-faith marketing decisions intended to

17  offer consumers *more* time and *more* opportunities to save.

18       Federal law does not permit application of CEMA in the manner proposed by Plaintiffs,

19  however.  Five years after CEMA was enacted—and expressly for the purpose of addressing

20  the unworkable patchwork of individual state laws purporting to regulate commercial email

21  practices that included CEMA—Congress enacted the Controlling the Assault of Non-

22  Solicited Pornography And Marketing (CAN-SPAM) Act of 2003.  The CAN-SPAM Act

23  established a uniform, nationwide framework for regulating commercial email, including

24  email subject lines, and expressly preempted statutes like CEMA that purport to "regulate[]

25  the use of electronic mail to send commercial messages."  15 U.S.C. § 7707(b)(1).

26

DEFENDANT'S MOTION TO DISMISS - 2
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

1    Congress enacted the CAN-SPAM Act precisely to prevent the kind of sweeping state-

2    level "liability trap" for senders of commercial emails that Plaintiffs are trying to set.  The Act

3    recognizes and seeks to balance the legitimate and beneficial elements of commercial email

4    against truly harmful practices—fraudulent and abusive spam emails—by shielding legitimate

5    businesses from inconsistent and overly onerous state laws aimed at insignificant inaccuracies.

6    The alleged "inaccuracies" targeted by Plaintiffs here fall squarely within that protection.

7    To avoid preemption, Plaintiffs can be expected to point—as their lawyers have done

8    in other, parallel cases brought against other retailers[2]—to a "limited, narrow exception" to

9    preemption that Congress allowed for state laws prohibiting "falsity or deception."  *See, e.g.,*

10   *Gordon v. Virtumundo, Inc*., 575 F.3d 1040, 1061 (9th Cir. 2009).  But the Ninth Circuit has

11   made clear that this exception encompasses only claims involving "traditionally tortious or

12   wrongful conduct."  *Id*. at 1062.  As Plaintiffs formulate their CEMA claims, they are *not*

13   based on such traditionally tortious or wrongful conduct.  Instead, the CEMA claims asserted

14   in the Amended Complaint assert that emails with *any* inaccurate information in their subject

15   lines give rise to liability—regardless of whether the alleged inaccuracies were intentional,

16   material, relied upon, or caused harm.  That type of claim is clearly preempted by CAN-SPAM.

17   Because Plaintiffs' CEMA claims are preempted and cannot be sustained as a matter

18   of law, their Washington Consumer Protection Act ("CPA") claims based on alleged violations

19   of CEMA likewise cannot stand.  Further, because Plaintiffs apparently lack sufficient facts to

20   plead non-preempted claims, the Amended Complaint should be dismissed with prejudice.

21   ## II.    RELEVANT ALLEGATIONS IN AMENDED COMPLAINT

22   According to Plaintiffs, CEMA is violated whenever anyone sends a commercial email

23   to a Washington resident that "[c]ontains any false or misleading information in the subject

24   ───────────────

25   [2] Counsel is aware of at least the following other proceedings involving substantially similar claims:  *Shahpur v. Ulta Beauty*, Case No. 2:25-cv-284 (E.D. WA); *Brown v. Old Navy et al*.,

26   Case No. 2:23-cv-00781-JHC (W.D. WA); *Liss et al. v. Lenovo United States Inc*., 3:25-cv-05840 (W. D. WA).

DEFENDANT'S MOTION TO DISMISS - 3
CASE NO. 3:25-CV-05861-DGE

**O'MELVENY & MYERS, LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

line[]" of that email.  *See* Amended Complaint ("Compl.") ¶ 2.  Here, Plaintiffs allege that Skechers violated CEMA by sending emails with subject lines that created a "false sense of urgency" by using language such as "Savings Ends Tonight" or "Today-Only Savings" when, according to Plaintiffs, the advertised promotions were subsequently extended.  In other words, Plaintiffs allege that Skechers violated CEMA by sending emails with subject lines that *understated* the ultimate length of the advertised sale, even if only by a day.  Alternatively, Plaintiffs assert that other emails advertising one sale are similarly rendered false and misleading if a *different* sale starts shortly after the first one ended.  And they further contend that these alleged violations of CEMA also constitute per se violations of the CPA.

In terms of factual allegations to support such theories, the Amended Complaint alleges that Plaintiff Liss received an email dated April 9, 2025 from Skechers with the subject, "Flash Sale Alert! Don't Miss Today-Only Savings," offering a 20% off sale, but then Skechers subsequently "promoted 20% off to consumers" in a series of emails from April 10–15, 2025. Compl. ¶¶ 58, 59.  Plaintiff does not allege any details regarding any of these offers, however, such as whether the sales were on the same or different terms or covered the same or different products.  Then, over a month later, Plaintiffs Liss and Melchor claim that they each received a May 26, 2025 email from Skechers with the subject line "Long Weekend Savings End Tonight," advertising a sale of up to 30% off.  *Id*. ¶ 43.  But, they allege, Skechers then sent another email the following day, May 27, 2025, with the subject "Surprise! Long Weekend Savings Extended for Today," which extended the sale for one day.  *Id*. ¶ 44.

Plaintiffs do not allege that they opened either the April 9 or May 26 email, nor do they say that they even saw or read the subject lines at issue.  Further, Plaintiffs do not allege that they were induced to make, or made, any purchases in reliance on these emails.  They also do not contend that the sales advertised in the allegedly false subject lines did not exist or that they (or anyone else in the putative class) did not receive the pricing promised.  Rather,

Plaintiffs assert that Skechers violated CEMA, and thus the CPA, simply by sending emails promoting genuine sales that did not end on the dates originally advertised.  *Id*. ¶¶ 76–80.

The only two emails that either Plaintiff claims to have received are the April 9 and May 26 emails.  *Id*. ¶¶ 77–78.  Nonetheless, the Amended Complaint goes on to identify 19 other emails that allegedly have false or misleading subject lines.  *Id*. ¶¶ 46–65.  These 19 other emails fall broadly into two groups.

The first group consists of ten emails advertising sales that Skechers allegedly extended *by a single day*.  These include:

- A January 30, 2022 email with the subject, "Beat the clock, this member only exclusive sale ends TONIGHT! [clock emoji]," followed by a January 31 email with the subject, "EXTENDED: This member exclusive sale was too good to end!" *Id*. ¶¶ 62–63.

- A December 21, 2022 email with the subject, "Calling all Skechers Plus members: Take 20% off for one day only!," followed by a December 22 email with the subject, "Flash sale EXTENDED! Members take 20% off," *Id*. ¶ 61.

- A January 9, 2023 email with the subject, "Our member exclusive sale ends tonight!," followed by a January 10 email with the subject, "Surprise! Member exclusive sale extended for one more day!"  *Id*.  ¶ 64.

- A January 18, 2023 email with the subject, "FLASH SALE: Take 30% off boots!," followed by a January 19 email with the subject, "Flash sale extended for 24 hours only!"  *Id*. ¶ 61.

- A March 12, 2023 email with the subject, "The clock is ticking…20% off almost everything ends tonight!," followed by a March 13 email with the subject, "Sale extended one more day!"  *Id*.

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

- An August 27, 2023 email with the subject, "25% off ends in 3…2…1 [clock emoji]," by an August 28 email with the subject, "SALE EXTENDED! One more day to save 25% off[.]" *Id.* ¶¶ 47–48;

- A November 27, 2023 email with the subject, "ENDS AT ~ MIDNIGHT: Claim your 30% off for Cyber Monday," followed by a November 28 email with the subject, "EXTENDED: This is really it... 30% off ends tonight!" *Id.* ¶¶ 49–50;

- An August 26, 2024 email with the subject, "Hurry, 25% off Ends Today!," followed by an August 27 email with the subject, "Surprise! One More Day to Save with 25% off[.]" *Id.* ¶¶ 51–52;

- A September 23, 2024 email with the subject, "Ends Tonight: Up to 40% off + so much more!," followed by a September 24 email with the subject, "SALE EXTENDED: Deals on slip-ins, boots + more!," *id.* ¶¶ 53–54;

- A March 9, 2025 email with the subject, "Today Only! Members Take an Extra 10% Off," followed by a March 10 email with the subject, "Surprise! One More Day Of Extra Savings!" *Id.* ¶ 64.

The second group consists of nine emails that Plaintiffs claim violated CEMA because the discounts being offered in the subject lines were followed days, weeks or months later by other sales offering similar discounts, thereby allegedly falsely "communicat[ing] to the consumer that the deal is fleeting." *Id.* ¶ 60. Emails in this category include the following:

- A February 14, 2022 email with the subject, "With [heart emoji] from Skechers, last day for 25% off! Price as marked!" *Id.*

- A March 6, 2022 email with the subject, "Don't miss out, our 25% off sale ends TONIGHT!" *Id.*.

- A March 13, 2022 email with the subject, "24 hours left: 25% off select styles!" *Id.*

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

- A May 22, 2022 email with the subject, "Don't forget, 20% off ends TONIGHT!" *Id.* ¶ 61.

- A July 17, 2022 email with the subject, "Hurry, 25% off ends tonight!" *Id*. ¶ 60.

- A July 25, 2022 email with the subject, "Don't be late, up to 25% off ends TONIGHT!" *Id.*

- A March 10, 2024 email with the subject, "Don't miss your chance to save up to 40% off!" *Id*. Ex. A.

- A November 20, 2024 email with the subject, "Up to 30% off Ends Tonight.," followed by a November 21, 2024 email advertising a "Black Friday Early Access 30% Off" sale that ran through November 28, 2024. *Id.* ¶¶ 55–57.

- A December 1, 2024 email with the subject, "Last Call! Final Hours to Shop 50-50% off Site Wide." *Id*. Ex. A.

Plaintiffs allege that they represent a class "estimated to minimally contain thousands of members," *id.* ¶ 85, consisting of "all Washington citizens holding an email address to which Defendant sent or caused to be sent any" of the 21 emails identified in Exhibit A to the Amended Complaint within the class period. *Id*. ¶ 81. Plaintiffs seek damages that are "the greater of Plaintiffs' actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee." *Id*. ¶ 108.

## III.   PLAINTIFFS' CEMA CLAIMS ARE PREEMPTED BY FEDERAL LAW

### A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Iqbal*), and to "raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The Court need not . . assume the truth of conclusory allegations." *Eritrean Ass'n of Greater Seattle v. Gebrekidan*, 2025

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

WL 306181, at *3 (W.D. Wash. Jan. 27, 2025); *Dahlstrom v. Life Care Centers of Am.*, Inc., 2023 WL 4893491, at *3 (W.D. Wash. Aug. 1, 2023) ("[C]onclusory allegations of law" and "unwarranted inferences are insufficient to defeat a motion to dismiss.") (citing *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)).

### B.    The CAN-SPAM Act Preempts CEMA

The Supremacy Clause of the U.S. Constitution provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. As the Supreme Court has stated, "state laws that conflict with federal law are without effect." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008). Congress may choose to "explicitly define[] the extent to which its enactments preempt state law." *Virtumundo*, 575 F.3d at 1060 (quoting *Indus. Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1309 (9th Cir. 1997)).

That is exactly what Congress did when it enacted the CAN-SPAM Act in 2003. Exercising its authority, Congress determined that the then-existing patchwork of inconsistent state laws regulating commercial email—which included CEMA—had created confusion and unworkable compliance burdens for businesses engaged in nationwide commerce:

> Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, **since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply**.

15 U.S.C. § 7701(a)(11). To solve this problem, Congress established "one national standard, applicable across jurisdictions," *Virtumundo*, 575 F.3d at 1062–63, designed to ensure that "legitimate businesses would not have to guess at the meaning of various state laws when their advertising campaigns ventured into cyberspace." *Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007). With the CAN-SPAM Act, Congress crafted a

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

1  regulatory framework for the use of commercial emails that struck a "careful balance between
2  preserving a potentially useful commercial tool and preventing its abuse."  *Omega World*
3  *Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006) ("*Omega*").[3]

4  Like CEMA, CAN-SPAM expressly regulates the subject lines of commercial emails.
5  But the CAN-SPAM Act only prohibits the sending of commercial emails with subject lines
6  that are "*likely to mislead* a recipient" about "a *material* fact regarding the contents or subject
7  matter of the message," and limits liability to only senders who have actual or constructive
8  knowledge that the subject line is misleading.  15 U.S.C. §§ 7704, 7701(a)(8).  Congress also
9  did not permit a private right of action for consumers; instead, enforcement of the CAN-SPAM
10  Act is reserved for designated government agencies and state officials, with only internet
11  service providers being allowed a limited private right of action.  15 U.S.C.A. § 7706.

12  To preserve CAN-SPAM's goal of establishing a single national framework, Congress
13  expressly barred states from imposing their own liability rules for commercial email.  The
14  CAN-SPAM Act states that it "supersedes any statute, regulation, or rule of a State" that
15  "expressly regulates the use of electronic mail to send commercial messages."  *Id*. § 7707(b).
16  By this expansive language, Congress sought to "broadly preempt state regulation of
17  commercial e-mail with *limited, narrow exception*."  *Virtumundo*, 575 F.3d at 1061.

18  CEMA—particularly the way Plaintiffs are trying to use it—falls squarely within this
19  express preemption provision.  *See Virtumundo*, 575 F.3d at 1057 (holding that CAN-SPAM
20  preempts CEMA claims); *see also Gordon v. First Premier Bank, Inc*., WL 5195897, at *1
21  (E.D. Wash. Dec. 21, 2009) (same).  Plaintiffs' CEMA claims thus are expressly preempted.

22
23
24  _____
25  [3]*See also Virtumundo*, 575 F.3d at 1049 ("[D]espite what . . . anti-spam enthusiasts might
    contend, the purpose of the CAN–SPAM Act was not to stamp spam out of existence"; "there
26  are beneficial aspects to commercial e-mail, even bulk messaging, that Congress wanted to
    preserve, if not promote").

DEFENDANT'S MOTION TO DISMISS - 9
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

**C.      CAN-SPAM's Limited, Narrow Exception to Preemption for "Traditional Tort Theories" Does Not Apply**

Plaintiffs likely will argue, however, that their claims survive because they fall within a preemption exception created by Congress for state law claims based on "traditional tort theories." *Virtumundo*, 575 F.3d at 1061–62 (citing 15 U.S.C. § 7707(b)(2)). They are wrong. First, Plaintiffs' CEMA claims are not based on traditional tort theories because they do not plead any of the requisite elements of such a theory. Plaintiffs do not plead materiality—an element identified by the Ninth Circuit as necessary to invoke CAN-SPAM's narrow preemption exception—nor do they plead any other elements of fraud or deceit claims, such as scienter, causation, or actual injury. Second, even if Plaintiffs attempted to reframe their CEMA claims as traditional fraud-based claims, the Amended Complaint fails to plead facts sufficient to support such claims under Federal Rule of Civil Procedure 9(b).

**1.      Only Claims Involving Traditional Fraud or Deceit Survive Preemption.**

CAN-SPAM preempts state laws like CEMA except to the extent those laws "prohibit[] falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). The scope of this exception has been outlined by the Ninth and Fourth Circuits in *Virtumundo* and *Omega*, respectively. *See, e.g., Virtumundo*, 575 F.3d at 1063. Both Circuits concluded that only claims based on "traditionally tortious" conduct fall within the exception and survive preemption. *Id.* at 1062.

In *Omega*, the Fourth Circuit considered whether the CAN-SPAM Act preempted claims brought under Oklahoma's counterpart to CEMA. 469 F.3d at 354. Like CEMA, the Oklahoma statute "reach[ed] beyond common law fraud or deceit," and was "not limited to inaccuracies in transmission information that were material, led to detrimental reliance by the recipient, and were made by a sender who intended that the misstatements be acted upon and either knew them to be inaccurate or was reckless about their truth." *Id.* at 353.

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

The Fourth Circuit held that the Plaintiff's claims there were predicated on "immaterial errors" and therefore preempted, and that CAN-SPAM's preemption exception for claims based on "falsity or deception" should be narrowly construed to cover only traditional tort principles grounded in the elements of fraud and deceit:

> The pre-emption clause links "falsity" with "deception"—**one of the several tort actions based upon misrepresentations**. Keeton et al., Prosser and Keeton on the Law of Torts § 105, at 726–27 (5th ed. 1984) (defining deceit as species of false- statement tort); Restatement (Second) of Torts § 525 (describing elements of deceit). **This pairing suggests that Congress was operating in the vein of tort when it drafted the pre-emption clause's exceptions, and intended falsity to refer to other torts involving misrepresentations, rather than to sweep up errors that do not sound in tort.**

*Id.* at 354. Such "torts involving misrepresentations"—in particular, common law fraud and deceit—require pleading and proof of materiality, reliance, actual injury, and deceptive intent. *Id.* (citing *Rogers v. Meiser*, 68 P.3d 967, 977 (Okla. 2003)); Restatement (Second) of Torts § 525 (stating that claim for "deceit," *i.e.*, "fraudulent misrepresentation," requires deceptive intent, "justifiable reliance upon the misrepresentation," and "pecuniary loss"); *accord Elcon Const., Inc. v. E. Washington Univ.*, 273 P.3d 965, 970 (Wash. 2012) (summarizing "nine essential elements of fraud").

The Fourth Circuit noted that this narrow interpretation of the exception was reinforced by "[o]ther sections of the CAN-SPAM Act," which also contain a materiality component, *Omega*, 469 F.3d at 354. The court emphasized that allowing claims based on "bare error" to survive preemption would "upset the Act's careful balance between preserving a potentially useful commercial tool and preventing its abuse." *Id.* at 354. Broadening the exception to cover "strict liability" claims premised on "insignificant inaccuracies" would "undermine[] to the point of near-irrelevancy" the "national standard" that Congress created, as well as Congress's "plain intent." *Id.* at 355. Indeed, "[t]he strict liability standard imposed by a state such as Oklahoma would become a de facto national standard, with all the burdens that imposed [on companies], even though the CAN–SPAM Act indicates that Congress believed

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

a less demanding standard would best balance the competing interests at stake." *Id*. By contrast, limiting the exception to "more narrowly tailored causes of action" based on traditional fraud or deceit would "effectively respond to the obstacles to convenience and efficiency that unsolicited messages present." *Id*. at 355.

Three years later in *Virtumundo*, the Ninth Circuit "independently analyzed the CAN–SPAM Act's text, structure, and legislative purpose" in connection with claims being brought under CEMA itself, and "reach[ed] the same conclusion as the district court and the Fourth Circuit." 575 F.3d at 1061. Agreeing that the preemption exception is "narrow" and must be "limited" to claims involving "*traditionally tortious* or wrongful conduct," the Ninth Circuit held that only claims akin to a "*tort action based on misrepresentations*" survive preemption. *Id*. at 1062. The Ninth Circuit observed that construing the exception narrowly was supported by the "statutory text," which "counsels against any interpretation that preempts laws relating to 'acts of fraud,'" as well as "[f]urther scrutiny of congressional intent." *Id*. The Ninth Circuit also agreed that a "contrary reading" of the CAN-SPAM Act would "turn an exception to a preemption provision into a loophole so broad that it would virtually swallow the preemption clause itself." *Virtumundo*, 575 F.3d at 1061 (citing *Omega*, 469 F.3d at 355).

Accordingly, the Ninth Circuit found that claims based on "*immaterial* inaccuracies or omissions" in emails are preempted. *Id.* at 1062; *see also id*. at 1065 (requiring misrepresentation of "something of *material importance*" (emphasis in original)); *id*. at 1061 (stressing that "*materiality component* comported with the policy pursued by the federal legislation as a whole"). In doing so, the Ninth Circuit underscored that the plaintiff's own admission there that "he was not in any way misled or deceived"—*i.e.*, that he did not rely on any alleged misstatement—was a missing element required to establish a fraud-based claim. *Id*. at 1063. *Virtumundo*'s conclusion that Section 7701(b)(1) creates only a "limited, narrow exception," 575 F.3d at 1061, also disposes of a few erroneous district court decisions that had interpreted the exception broadly. *See, e.g., Asis Internet Servs. v.*

DEFENDANT'S MOTION TO DISMISS - 12
CASE NO. 3:25-CV-05861-DGE

**O'MELVENY & MYERS, LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

1  *Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009); *Asis Internet*

2  *Servs. v. Vistaprint USA, Inc*., 617 F. Supp. 2d 989, 993 (N.D. Cal. 2009).

3         **2.     Plaintiffs' Claims Are Not Predicated on Traditional Tort**
4                 **Principles.**

5         The claims alleged in the Amended Complaint are predicated on a strict liability view

6  of CEMA, in that Plaintiffs seek to impose liability based solely on alleged inaccuracies, no

7  matter how small.  This is not surprising, given the text of CEMA.  When CEMA was enacted,

8  the central concern the statute sought to address was the "added cost consumers faced" from

9  spam in a time when "[i]nternet access was comparatively slow and expensive" and

10  "[c]onsumers often paid for access 'by the minute or hour.'"  *Brown v. Old Navy, LLC*, 567

11  P.3d 38, 41 (Wash. 2025).  Consistent with its goal to reduce email clutter, CEMA did not

12  purport to require a showing of any traditional elements of fraud or deceit.  *See Isomedia, Inc.*

13  *v. Spectrum Direct, Inc*., 2009 WL 10676391, at *3 (W.D. Wash. May 27, 2009) (finding

14  CEMA does not "include all the elements of common law fraud").  Instead, on its face, the

15  statute "purport[s] to regulate a vast array of non-deceptive acts and practices."  *Virtumundo*,

16  575 F.3d at 1059 (noting that CEMA liability includes "unintentional" errors or "imperfect

17  representations").

18         CEMA therefore is not consistent with, and is preempted by, federal law.  Congress

19  has adopted national standards for regulating commercial email (including subject lines) and

20  expressly preempted any state laws that seek to regulate commercial email, preserving only

21  limited claims based on traditionally tortious conduct.  As a result, the only claims under

22  CEMA that might survive mandatory preemption by CAN-SPAM are those that also

23  sufficiently plead all required elements for traditional tort liability sounding in fraud.  But, as

24  discussed below, that is not how Plaintiffs use CEMA—and they plead none of those elements.

25

26

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

1

### 3.    Plaintiffs Fail to Allege a Material Misrepresentation.

To avoid preemption, Plaintiffs' CEMA claims must include allegations establishing that the challenged emails contain *materially* false or misleading subject lines. *Virtumundo*, 575 F.3d at 1061-62, 1065; 15 U.S.C. § 7707(b)(1). Claims that target only "immaterial inaccuracies or omissions" do not survive. *Virtumundo, Inc.*, 575 F.3d at 1061–62; *id* at 1065 (requiring "something of *material* importance"). Plaintiffs fall far short of this requirement.

*First*, the facts alleged in the Amended Complaint do not plead a material misstatement or omission. As to the group of emails in which sales were subsequently extended by a day, *see, e.g.,* Compl. ¶¶ 43–44, 47–56, 60–64, extending a sale by one day does not mean the original subject line promoting the sale was "false." Plaintiffs do not allege the advertised sales failed to occur, that the discounts offered were different than advertised, or that Plaintiffs themselves (or anyone else) were denied the benefit of the promotion. Even if a one-day extension later made the original subject line inaccurate, the meager facts pled in the Amended Complaint do not allow a reasonable inference that a one-day versus a two-day sale would have made a difference to anyone—even to Plaintiffs themselves. Likewise, for the second group of emails that are alleged to be false because other sales occurred days, weeks or months afterwards, *see, e.g.,* Compl. ¶¶ 57–61, subsequent sales likewise do not give rise to a reasonable inference that the subject lines of earlier emails were "false" in any material way. Again, Plaintiffs do not allege that either the prior or subsequent sales did not occur, that any customers were denied the benefit of the sales, or that it would have mattered to anyone had they known that another sale might occur later (or that the original sale might be extended).

*Second*, Plaintiffs fail to allege that either of them (or anyone else in the putative class) was induced to make a purchase or actually did make a purchase as a result of allegedly inaccurate information in the subject lines. To establish materiality, Plaintiffs must plead facts demonstrating that the challenged subject lines were significant to *their purchase decision*, as required by the traditional tort concepts discussed in *Virtumundo* and *Omega*. Plaintiffs cannot

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

1    simply assert in a conclusory manner that a subject line *could* be material to a hypothetical

2    recipient's sense of urgency to make a purchase. *See Elcon*, 273 P.3d at 970 (materiality absent

3    because alleged misstatements were not material to the plaintiff); *Martin v. Miller*, 24 Wash.

4    App. 306, 309 (1979) (analyzing whether "representations were material to the plaintiffs'

5    decision to enter into a purchase and marketing agreement with the defendant"); *Hendrix ex*

6    *rel. United States v. J-M Mfg. Co., Inc*., 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023) (alleged

7    misstatement must be "material to [plaintiff's] decision-making"); *Brummett v. Washington's*

8    *Lottery*, 171 Wash. App. 664, 678 (2012) (advertisement claiming tickets were "going fast"

9    was not "something of material importance").

10          Here, Plaintiffs do not allege that they or anyone else in the putative class ever read the

11   subject lines at issue, much less that any allegedly inaccurate information influenced their or

12   anyone else's purchase decisions.  Plaintiffs instead seek to impose strict liability for any

13   supposed inaccuracies, regardless of whether that information was seen or played a significant

14   role in an actual purchase decision.  If accepted, Plaintiffs' strict liability theory would

15   effectively nullify the materiality requirement required for application of CAN-SPAM's

16   preemption exception. *See Omega*, 469 F.3d at 355 (concluding that interpreting the CAN-

17   SPAM Act's preemption clause to permit "strict liability for insignificant inaccuracies" would

18   undermine the Act's "national standard . . . to the point of near-irrelevancy.").

19          *Third*, the Amended Complaint fails for the independent reason that it fails to allege

20   facts plausibly establishing that the asserted inaccuracies would be material to a *reasonable*

21   *consumer*.  Plaintiffs rely entirely on conclusory assertions that the subject lines "create a false

22   sense of urgency" without pleading any "facts to support such inferences"—which is not

23   permissible. *Window World Int'l, LLC v. O'Toole*, 2020 WL 7041814, at *4 (E.D. Mo. 2020);

24   *Ross v. Sioux Honey Ass'n, Co-op*., 2013 WL 146367, at *18 n.9 (N.D. Cal. 2013) (rejecting

25   "conclusory statements" regarding materiality under *Iqbal*).  Presumably, Plaintiffs want the

26   Court to infer materiality simply by pleading the existence of a document from the Federal

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

Trade Commission's (FTC) staff memorializing a public discussion about ways marketers *might* create a "false sense of urgency" and a discussion paper from a U.K. agency observing the unremarkable fact that consumers may respond to scarcity. Compl. ¶¶ 30–40.

Both documents contain only generalized conclusions, however, and neither presents legally cognizable facts upon which materiality can be inferred *in this case*. The FTC staff document, for example, merely "discuss[es] key topics" from a "workshop and academic literature" and then describes "consumer protection concerns and recommendations for companies." *See* https://perma.cc/847M-EY69/ at 1 (cited in Compl. ¶ 30).[4] The document does not reflect any findings or rulemaking by the FTC itself and, as such, recitations about what might have been "discussed" at the workshops have no legal significance. *See, e.g., Syed v. M-I, LLC*, 853 F.3d 492, 504 n.6 (9th Cir. 2017) (noting that even informal opinions of the FTC staff "do not constitute authoritative guidance" and "[t]herefore, we do not rely on them"). Moreover, even if the FTC staff's summary document had evidentiary value (which it does not), it speaks only to advertised sales "*without a deadline* or *with a meaningless deadline that just resets when reached*." *See* Compl. ¶ 31. Plaintiffs have not alleged either of those situations here—instead, they allege sales that ended a mere day later than advertised and sales that, on the face of the Amended Complaint, are separated by days, weeks or months from prior sales. And, more importantly, Plaintiffs *fail* to plead that they or anyone else saw the subject lines at issue or, if they did, that any minor inaccuracies had an effect on purchasing decisions.

Nor can Plaintiffs manufacture materiality through conclusory allegations about the subject lines of the emails being part of "tricks" or "schemes." Again, Plaintiffs do not claim that the advertised sales did not occur, that anyone failed to get the benefit advertised, or that anyone read or actually made a purchase based on the alleged inaccuracies in the subject lines.

---

[4] In ruling on a motion to dismiss, the Court can consider the full content of documents that a complaint incorporates by reference. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

DEFENDANT'S MOTION TO DISMISS - 16
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

1    Simply intoning that the original timing of the sales were extended, or that one sale was later

2    followed by other sales, does not establish materiality.  As a result, Plaintiffs' speculation about

3    Skechers' alleged motives are nothing more than "an unadorned, the-defendant-unlawfully-

4    harmed-me accusation"—which is not proper pleading.  *Iqbal*, 556 U.S. at 678.

5            Indeed, at best, Plaintiffs' allegations amount to a claim that Skechers should have

6    included *additional* information in the subject lines—i.e., disclosing the possibility that a sale

7    might be extended or that more sales (albeit for different reasons, on different products, or with

8    different terms) might occur in the future.  But such claims premised on "incomplete" or "less

9    than comprehensive information" are not actionable and are likewise preempted by the CAN-

10   SPAM Act.  *See, e.g., Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000, 1008 (N.D. Ill. 2011)

11   (granting  motion to dismiss claim under Illinois anti-spam law—which similarly prohibited

12   "false or misleading" information in an email subject line—because plaintiff's allegations that

13   the subject lines were incomplete and contained a "half-truth" did "not rise to the level of

14   traditionally tortious conduct," and thus the claim was preempted).

15                   **4.        Plaintiffs Do Not Adequately Allege Scienter.**

16           To state a non-preempted claim under CEMA, Plaintiffs also must plausibly allege that

17   Skechers *knew* the challenged subject lines were false or misleading when sent.  *See, e.g.*,

18   *Virtumundo*, 575 F.3d at 1061–1063 (requiring "traditionally tortious or wrongful conduct,"

19   which includes scienter); *Omega*, 469 F.3d at 353-54 (fraud or deceit tort requires sender

20   "knew" statements were false); *see also Emp. Painters' Tr. v. Asencio*, 2021 WL 228892, at

21   *3 (W.D. Wash. Jan. 22, 2021) ("Claims of fraud and fraudulent misrepresentation require an

22   intent to deceive.").  To satisfy that requirement, Plaintiffs must allege sufficient facts from

23   which scienter can be reasonably inferred.  *Gray v. Twitter, Inc.*, 2021 WL 11086642, at *6

24   (W.D. Wash. 2021).  Allegations based on "mere speculation" are insufficient.  *Adomitis ex.*

25   *rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64, 66 (9th

26   Cir. 2020); *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018)

DEFENDANT'S MOTION TO DISMISS - 17
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

("[S]peculation stops short of the line between possibility and plausibility of entitlement to relief."). Again, Plaintiffs do not meet this burden.

For example, nowhere do Plaintiffs allege facts from which it can be inferred that Skechers intended for the subject lines of its emails to be (or that Skechers knew they were) false or misleading; indeed, as noted above, Plaintiffs do not even allege that the subject lines were false or misleading *when sent*. S*ee supra* at 14–16. Instead, they offer only conclusory allegations that Skechers had a "scheme to corral consumers to purchase its products," and sent "emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds." Compl. ¶¶ 4, 40. Such conclusions are not reasonable inferences from their allegations of a mere handful of emails being sent over a four-year period in which sales occasionally were extended by a day or subsequently followed by another sale. *Id*. ¶¶ 43–64.

In assessing plausibility under Rule 8(a)(2), "courts must also consider an 'obvious alternative explanation.'" *Integra Med Analytics LLC v. Providence Health & Servs*., 854 F. App'x 840, 844 (9th Cir. 2021). The Court "need not accept the conclusion" that Skechers supposedly defrauded Plaintiffs "when its actions are in line with lawful rational and competitive business strategy." *Id*.; *see also Eclectic Props. E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 998 (9th Cir. 2014). Indeed, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability," the Ninth Circuit has held that "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Prudencio v. Midway Importing, Inc*., 831 F. App'x 808, 810 (9th Cir. 2020).

Here, Plaintiffs allege that Skechers "has been blasting out marketing emails at a rate averaging (at least) 388 per year, 32 per month, and 1 per day." Compl. ¶ 67. Assuming the truth of those facts, there would be 1,552 (4 years x 388 emails/year) marketing emails during the relevant time period. Yet Plaintiffs identify only *eleven* instances where Skechers extended a sale for a day, and *ten* instances where Skechers advertised a new sale within days, weeks or

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

months of concluding a prior one.  From these facts, Plaintiffs want the Court to infer that Skechers is knowingly and deliberately defrauding Washington consumers. That is not a plausible inference, let alone a reasonably plausible one.

There are, of course, numerous lawful and practical business reasons why a retailer might decide to extend a sale for a day (or offer multiple sales in a given year), such as clearing out excess inventory, responding to unexpected demand, marking the occasion of a holiday or other event, or simply providing customers with a grace period in which to place orders.  In fact, Plaintiffs allege no facts to suggest that Skechers intended to mislead anyone when it sent the original emails claimed to have inaccurate subject lines, let alone that Skechers did so to fulfill some malicious plan or scheme to dupe consumers into making purchases they would not otherwise make.  The far more logical conclusion for the emails alleged in the Amended Complaint is that Skechers occasionally extended a sale (or offered a new sale) in order to make its products more attractive to consumers, and to provide customers with *more* opportunities to take advantage of lower prices on certain goods.

Abundant lawful reasons also exist for Skechers to offer multiple sales on different terms (or for different products) each year.  This is readily apparent on the face of the emails alleged in the Amended Complaint, where, for example, a sale in August 2023 for "25% off" certain goods is next followed in time by a "Cyber Monday" sale a month later for "30% off." *See* Compl. ¶¶ 47-48, 49-50.  Those are different discounts being offered for different reasons. Other sales are clearly only for limited categories of goods, such as "select styles," "boots" or "slip-ins."  *See id.* ¶¶ 54, 60(d), 61(e). Yet another example is when Plaintiffs seek to aggregate an email from August 2024 with a subject line touting a "25% off" sale, followed by a September 2024 email with a subject line refencing a "40% off" sale, followed by emails in November 2024 with subject lines about "30% off" sales, including one for "Black Friday Early Access."  *See id.* ¶¶ 51-57.  These sales clearly are all different and separated by weeks

DEFENDANT'S MOTION TO DISMISS - 19
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

or months.[5]  Retailers commonly have different sales like these to mark holidays or seasonal events such as back-to-school, "daylight savings," or "summer savings." *Id.* ¶¶ 49-50, 56, 60(c), 60(e), 60(g), 60(i).   Particularly ridiculous is Plaintiffs' effort to imply falsity through a November 21, 2024 email with the subject line "Black Friday Early Access 30% Off Starts Now!," where the sale at issue actually "lasted through November 28." *See* Compl. ¶¶ 55-57. Plaintiffs claim that the November 21 email extended an implied one-day sale of "Up to 30% off" from the day before but, on its face, the November 21 email stands alone.  *Id.* ¶ 56.  And the fact that the "Black Friday Early Access" sale started on November 21 and went through November 28 would hardly have been a surprise to anyone given that there was no time limitation (the subject line says only "Starts Now!"), and "the fine print of the very same email" disclosed that the sale would run through November 28—which *was* Black Friday that year.[6] No reasonable consumer would have been "deceived" by any of this.

Major online retailers routinely run multiple, sometimes overlapping promotions that may use similar percentage-off language but differ in scope, duration, and product mix.  Those ordinary marketing practices of offering different types of sales over time supply an obvious alternative explanation, and Plaintiffs' factual allegations do not supply plausible basis for inferring any intent to deceive or mislead customers.  *See, e.g., In re Amazon Serv. Fee Litig.*, 2024 WL 3460939, at *8 (W.D. Wash. 2024); *accord Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358, 363 (9th Cir. 2016).

---

[5] Plaintiffs also take issue with emails to members of Skechers' opt-in loyalty program (called Skechers Plus) in which several discounts were offered over the course of years.  *See id.* ¶¶ 61(c)-(d), 62-64.  Again, it is a common (and totally lawful and consumer-favorable) practice for retailers or other businesses to offer discounts or exclusive options to members of their loyalty programs.  Falsity cannot be presumed from such multiple sales because, on their face, the members-only sales have differing terms and purposes (and, importantly, there is no allegation that the sales covered the same products and continued the same terms).

[6] *See, e.g.,* 89 Fed. Reg. 96087 (Proclamation 10865 dated Nov. 27, 2024 for Thanksgiving Day, which makes Nov. 28, 2024 Black Friday).

DEFENDANT'S MOTION TO DISMISS - 20
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

**5.      Plaintiffs Do Not Allege Reliance or Damages.**

As discussed, Plaintiffs' CEMA claim must be based on traditional tort theories grounded in fraud or deceit to survive preemption. *Virtumundo*, 575 F.3d at 1062 (only claims akin to a "tort action *based on misrepresentations*" survive); *id*. ("Congress's intended . . . to save from preemption only statutes, regulations, or rules that target *fraud and deception*.") (emphasis in original); *Omega*, 469 F. 3d at 354 ("Congress was operating in the vein of tort when it drafted the pre-emption clause's exceptions, and intended falsity to refer to other torts *involving misrepresentations*, rather than to sweep up errors that do not sound in tort.").

The most accurate reading of *Virtumundo* and other authorities interpreting the CAN-SPAM Act is that, in addition to materiality and scienter, a plaintiff asserting a non-preempted claim must also sufficiently plead reliance and damages—two other cornerstone elements of a traditional fraud or deceit claim. *See* Restatement (Second) of Torts § 525 (stating that claim for "deceit," i.e., "fraudulent misrepresentation," requires deceptive intent, "justifiable reliance upon the misrepresentation," and "pecuniary loss"); *see also Beyond Sys., Inc. v. Kraft Foods, Inc*., 777 F. 3d 712, 717 (4th Cir. 2015) (holding that California and Maryland's anti-spam statutes implicitly incorporate "common law principles," including "causation" and other elements "necessary to compose a complete regime of tort liability," and thus avoid preemption); *Kleffman*, 2007 WL 1518650 at *3 (finding that plaintiff's claims were "clearly preempted" because the complaint "does not allege a traditionally tort theory at all, or even that he was at any point mislead by any of the . . . emails").

Plaintiffs make no attempt to plead either of these elements. Because Plaintiffs advance a strict liability theory under CEMA, "there is no allegation of 'reliance' to be found anywhere in the [Complaint]." *Isomedia, Inc. v. Spectrum Direct, Inc*., 2009 WL 10676391, at *4 (W.D. Wash. May 27, 2009). Rather, Plaintiffs allege only that they "received" two of the allegedly offending emails. Compl ¶¶ 77–78. But this "is not the same as an allegation that anyone acted in reliance upon the information contained in [the emails]." *Isomedia*, 2009 WL

10676391, at *4.  As discussed, neither Plaintiff alleges that they even *read*—let alone relied on and suffered an actual injury as a result of their reliance on—any purported misstatements. More fundamentally, it is wholly implausible that Plaintiffs (or anyone else) suffered any actual injury because a sale was extended by a day or more, as this only gives consumers *more time*—not less—to take advantage of the savings.

Based on arguments Plaintiffs' counsel have made in other cases, Skechers anticipates that they may rely on decisions from the Northern District of California holding that California consumers need not plead reliance or damages to state a non-preempted claim under California's anti-spam law, and argue that the same rule should apply here.  *See, e.g., Wagner v. Spire Vision*, 2014 WL 5140288, at *2-4 (N.D. Cal. Mar. 3, 2014); *Asis Internet Servs. v. Member Source Media, LLC*, 2010 WL 1610066, at *3 (N.D. Cal. Apr. 20, 2010).  Such decisions are inapposite, however.  First, they are out of district and not binding on this Court. Second, they interpret a California statute that differs from CEMA in material respects.[7]  Third, to the extent those cases suggest that reliance and injury are unnecessary elements of a non-preempted claim, they conflict with the Ninth Circuit's decision in *Virtumundo* and must be disregarded.[8]  *See Virtumundo*, 575 F.3d at 1061–62; *Omega*, 469 F.3d at 354.

### 6.    Plaintiffs Cannot Satisfy the Rule 9(b) Pleading Requirements for Fraud Claims.

Even if Plaintiffs attempted to reframe their CEMA claim as a traditional fraud-based tort claim (which they cannot, given the allegations of the Amended Complaint), they would still fall far short of Rule 9(b)'s pleading requirements.  Rule 9(b) requires claims sounding in

---

[7] Most notably, the most relevant California statute provides that liability attaches only if "[t]he e-mail advertisement has a subject line that a person knows would be *likely to mislead* a recipient, *acting reasonably under the circumstance*s, about a *material fact* regarding the contents or subject matter of the message."  Cal. Bus. & Prof. Code § 17529.5(a)(3).

[8] Even if the Court were to conclude that reliance and damages are not required, *Virtumundo* and *Omega* leave no doubt that materiality is a required element.  As explained above, Plaintiffs have not plausibly alleged materiality, which compels dismissal of their claims.

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

fraud to be pleaded with particularly. *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007); *Mostowfi v. i2 Telecom Int'l, Inc*., 269 F. App'x 621, 623 (9th Cir. 2008) ("Rule 9(b) may apply to claims—that although lacking fraud as an element—are 'grounded' or 'sound' in fraud."). Plaintiffs do not come close to satisfying this standard.

Although the Amended Complaint identifies 21 promotional emails that allegedly violate CEMA, it alleges that the Plaintiffs themselves received only two. *See* Compl. ¶¶ 77–78. And even as to those two, the Amended Complaint does not plausibly allege a material falsity. For the remaining emails, the Amended Complaint does not allege that either Plaintiff—or any Washington resident, for that matter—ever received them or that the subject lines of those emails were materially false either. *See supra* at 14–16.

Further, as also discussed above, neither Plaintiff alleges anything—let alone facts with the required particularity—about if and how they relied on any purported misstatement in an email subject line or suffered any actual harm as a result of such reliance. *See Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (finding plaintiff "failed to plead her fraud claims with particularity as required by Rule 9(b)" by not alleging detrimental reliance); *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 782 (9th Cir. 2018) (holding complaint "failed to plead reliance with particularity"). And neither Plaintiff pleads specific facts demonstrating that any alleged misstatement was material to them or anyone else, *supra* at § III(C)(3), or that Skechers knew that the subject lines at issue were false or misleading when sent, *supra* at § III(C)(4). The Amended Complaint, thus, fails to meet Rule 9(b)'s heightened pleading requirements and must be dismissed for that reason as well. *See Joseph v. Amazon.com, Inc*., 46 F. Supp. 3d 1095, 1109 (W.D. Wash. 2014) (granting judgment on the pleadings because plaintiff did not plead with sufficient particularly any "material representation to him that he had right to and did rely upon to his detriment"); *Khan Air, LLC v. U.S. Aircraft Ins. Grp*., 2005 WL 2739167, at *1 (W.D. Wash. Oct. 24, 2005) (dismissing counterclaim that failed to "adequately ple[a]d materiality of the omission" or "the nature of

its damages," which "must be plead with particularity").

## IV.     PLAINTIFFS' CPA CLAIMS FAILS BECAUSE THEY ARE PREDICATED ON THEIR FAILED CEMA CLAIM.

Because Plaintiffs' "CEMA claims fail as a matter of law," their CPA claims, which are "grounded in CEMA violations, are likewise inadequate and [a]re properly dismissed." *Virtumundo*, 575 F.3d at 1065; *Gordon v. First Premier Bank, Inc*., 2009 WL 5195897 at *2 (dismissing CPA claim because it was "dependent on his pre-empted CEMA claim.").

## V.     CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

*I certify that this memorandum contains 8,131 words, in compliance with the Local Civil Rules.*

Dated this 18th day of November, 2025.

ANGELI & CALFO LLC

By: s/ Angelo J. Calfo
Angelo J. Calfo (WSBA #27079)
Tyler S. Weaver (WSBA #29413)
angelo@angelicalfo.com
tylerw@angelicalfo.com

O'MELVENY & MYERS LLP

By: s/ Jeffrey A. Barker
Daniel M. Petrocelli (CA Bar #97802)
(*Pro Hac Vice*)
Jeffrey A. Barker (CA Bar #166327)
(*Pro Hac Vice*)
Daniel Cooper (CA Bar # 329607)
(*Pro Hac Vice*)
dpetrocelli@omm.com
jbarker@omm.com
dcooper@omm.com

*Attorneys for Defendant Skechers U.S.A., Inc.*

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700