The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

STEPHEN LISS and BONI MELCHOR, on their own behalf and on behalf of others similarly situated,

Plaintiffs,

vs.

SKECHERS U.S.A. INC.,

Defendant.

Case No.: 3:25-cv-05861-DGE

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

Washington's Commercial Electronic Mail Act (CEMA) and Consumer Protection Act (CPA) prohibit commercial emails containing "false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b); *see id.* § 19.190.030(1)(b) (CEMA violations are CPA violations). When faced with this clear prohibition, including a recent decision from the Washington Supreme Court, *see Brown v. Old Navy, LLC*, 567 P.3d 38 (Wash. 2025), Defendant Skechers, Inc., simply decided to ignore it.

Skechers relentlessly spams consumers' inboxes with email subject lines larded with caps and emoji that herald the beginning, middle, and merciful end of promotions—*falsely*. "Long Weekend Savings End Tonight," says Skechers—when they did not. Am. Compl. ¶ 43. An offer for 30 percent off "ENDS AT MIDNIGHT," says Skechers—when it did not. *Id.* ¶ 49. Another

OPPOSITION TO MOTION TO DISMISS
No. 3:25-cv-05861-DGE

1

Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
(360) 915-6952

offer for 30 percent off "Ends Tonight," says Skechers—when it did not end for another week. *Id.* ¶ 55. And so on. *See generally* Am. Compl. Ex. A.

Skechers seeks to reframe the question *away from* its deceptive subject headings, and the false urgency that they invoke, by asserting that Plaintiffs haven't alleged that any advertised sale or price was misrepresented—an assertion that plainly evades these demonstratively false representations. Nor can Skechers credibly assert that its deceptive subject headings are benign. These marketing tactics are referred to as false limited time messages, false time scarcity claims, or false urgency claims, *id.* ¶¶ 30–31, and are one "common way online marketers manipulate consumer choice by inducing false beliefs." *Id.* ¶ 30 (internal quotation marks omitted). That is, marketers use them because they *work*. *See id.* ¶¶ 30, 32. They cause consumers to pay less attention to and think less carefully about their purchasing decisions than they otherwise would, leaving them worse off. *See id.* ¶¶ 32–36. As deployed by Skechers here, these tactics are straightforward violations of CEMA and thus the CPA.

At its core, Skechers's motion to dismiss presents one likewise straightforward question of statutory interpretation: Does a federal statute preempting state-law claims "except to the extent" that the state law relied on "prohibits falsity or deception" require Plaintiffs to plead and prove the elements of common law fraud to avoid preemption? The obvious answer is no, as the leading decision in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009), confirms. Skechers's remaining arguments fare no better. The Court should deny its motion.

**STANDARD OF DECISION**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint's well pleaded factual allegations are taken as true and all reasonable inferences are drawn in plaintiff's favor. *Littlejohn v. Kaiser Fdn. Health Plan of Wash.*, 2024 WL 4451955, at *3 (W.D. Wash. Oct. 9, 2024). The motion must be denied if the complaint states a claim to relief that is "plausible on its face." *Id.* Where, as here, defendant seeks Rule 12(b)(6) dismissal based on an

OPPOSITION TO MOTION TO DISMISS
No. 3:25-cv-05861-DGE

2

Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
(360) 915-6952

affirmative defense, it must show that "the "allegations in the complaint suffice to establish the defense" and that the defense is "apparent from the face" of the complaint. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (internal quotation marks omitted). Finally, when "alleging fraud," the complaint must additionally "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

## ARGUMENT

**I.    Plaintiffs' CEMA claims are not preempted.**

Skechers's chief argument for dismissal is that Plaintiffs' CEMA claims are preempted by the federal CAN-SPAM Act, 15 U.S.C. §§ 7701–7713 ("Act"). Neither the Act's plain text, its legislative history, the Ninth Circuit's decision in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009), nor cases decided before or after *Gordon* support preemption here.

**A.    The Act's exception from preemption is not limited to common law fraud.**

The Act's preemption provision provides in relevant part as follows:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, *except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto*.

15 U.S.C. § 7707(b)(1) (emphasis added).

The application of the Act's plain text to Plaintiffs' claims is straightforward. CEMA prohibits sending commercial email that "[c]ontains false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). By prohibiting "false or misleading" subject lines in commercial emails, *id.*, CEMA "prohibits falsity or deception" in some part of or information attached to commercial emails. 15 U.S.C. § 7707(b)(1). By its plain terms, therefore, the Act does

OPPOSITION TO MOTION TO DISMISS
No. 3:25-cv-05861-DGE

3

Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
(360) 915-6952

not preempt Plaintiffs' CEMA claims.

Dissatisfied with the statute Congress passed and the President signed, Skechers invites the Court to write a new one. It argues that when Congress used the words "falsity or deception," it *really* meant "common law fraud." *See* Mot. 11, 13. But Congress is presumed to choose its words carefully and courts are bound to apply them. *See Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818 (9th Cir. 2004) ("[W]e must presume that Congress said what it meant and meant what it said."). If Congress had intended to provide an exception to preemption only for common law fraud, it could have said so. It did not.

The context of the preemption provision reinforces its plain text. *See Cazarez-Guiterrez v. Ashcroft*, 382 F3d 905, 912 (9th Cir. 2004) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme"). In the immediately following paragraph, the Act further exempts from preemption claims based on "State … tort law" and state laws relating to "acts of fraud." 15 U.S.C. § 7707(b)(2). Thus, Congress in drafting the Act clearly understood how to refer to common law fraud when it wanted to. *See Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009) ("Congress … is certainly familiar with the word 'fraud' and choose not to use it; the words 'falsity or deception' suggest broader application. In fact, … Congress utilized the word 'fraud' in the very next subsection."). Congress made a clear choice not to so limit the preemption exception in paragraph (b)(1), and that choice must be respected. *See id.*

Legislative history points to the same conclusion. The Report of the Senate Committee on Commerce, Science, and Transportation described the effect of the Act's preemption provision as follows: "[A] State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted. By contrast, a State law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted." S. Rep. No. 108-102, at 21. The Senate Report makes clear that Congress

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05861-DGE

4

Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
(360) 915-6952

did not intend § 7707(b)(1) preemption to reach everything short of common law fraud, and indeed expressly endorses the very claims brought here: claims based on "a State law prohibiting … deceptive … subject lines … in commercial email." *Id.*

Court after court, both federal and state, both before and after the Ninth Circuit's decision in *Gordon*, has concluded likewise: statutory and common law claims that attack "falsity and deception" broadly in commercial email are not preempted; pleading and proving the elements of common law fraud or any other tort is not required. 15 U.S.C. § 7707(b)(1). Even before *Gordon* permanently foreclosed Skechers's contrary argument, courts correctly perceived its lack of merit. *See Asis Internet Servs. v. Subscriberbase Inc.*, 2009 WL 4723338, at *3 (N.D. Cal. Dec. 4, 2009) (not discussing *Gordon* though decided subsequently) ("Plaintiffs … do not need to plead reliance and damages in order to avoid preemption of their claims."); *Asis Internet Servs. v. Vistaprint USA, Inc.*, 617 F. Supp. 2d 989, 993 (N.D. Cal. 2009) ("[T]he Court declines to restrict the term 'falsity or deception' to encompass only common-law fraud claims."); *Consumerbargaingiveaways*, 622 F. Supp. 2d at 942, 944 ("'[F]alsity or deception' is not limited *just* to common-law fraud and other similar torts. … Plaintiffs' claims are not preempted merely because the complaint fails to plead, or [the applicable state statute] fails to require, reliance and/or damages."); *Ferguson v. Quinstreet, Inc.*, 2008 WL 3166307, at *9 (W.D. Wash. Aug. 5, 2008) ("[W]hile claims actually alleging falsity or deception under CEMA would not be preempted, … claims … for at best incomplete or less than comprehensive information … are for immaterial errors that may not be litigated under state law.").

After *Gordon*, this picture is even clearer. *See, e.g.*, *Smith v. Anastasia Inc.*, 2014 WL 12577598, at *2–3 (S.D. Cal. Sept. 15, 2014) (agreeing that "a showing of reliance and damages is not necessary" to avoid preemption); *Wagner v. Spire Vision*, 2014 WL 889483, at *3–4 (N.D. Cal. Mar. 3, 2014) ("The great weight of district court and state court decisions have agreed that a showing of reliance and damages is not necessary."); *Asis Internet Servs. v. Member Source Media,*

OPPOSITION TO MOTION TO DISMISS
No. 3:25-cv-05861-DGE

5

Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
(360) 915-6952

*LLC*, 2010 WL 1610066, at *3 (N.D. Cal. Apr. 20, 2010) ("[T]he Court concludes reliance and damages need not be demonstrated to save a lawsuit from preemption."); *Balsam v. Trancos, Inc.*, 138 Cal. Rptr. 3d 108, 122 (Cal. Ct. App. 2012) ("adopt[ing]" reasoning that "Congress must have intended the phrase 'falsity or deception' to encompass fraudulent or deceptive conduct that would not satisfy all elements of common law fraud."); *Hypertouch, Inc. v. ValueClick, Inc.*, 123 Cal. Rptr. 3d 8, 27 (Cal. Ct. App. 2011) ("[D]efendants may be subject to suit for deceptive subject lines … without regard to their knowledge or mental state, and regardless of whether anyone was actually deceived."). Indeed, one district court *reversed* its prior decision in light of *Gordon*. *See Hoang v. Reunion.com, Inc.*, 2010 WL 1340535, at *4  (N.D. Cal. Mar. 31, 2010) (vacating prior pre-*Gordon* decision to the contrary) (Plaintiff was "not required" to "additionally allege he relied to his detriment" on false or misleading statement to avoid preemption.).

Careful attention to *Gordon*'s actual reasoning and holding, rather than loose citation to its dicta, reveals why. The question in *Gordon* was "[w]hether the exception language of § 7707(b) permits states to prohibit e-mail activity that is *not* unfair or deceptive." 575 F.3d at 1062 n.21. Unsurprisingly, the court's answer was no. As relevant here, *Gordon* involved CEMA's "point of origin" provision, which prohibits "misrepresent[ing] or obscur[ing] any information in identifying the point of origin or the transmission path" of commercial email. Wash. Rev. Code § 19.190.020(1)(a); *see Gordon*, 575 F.3d at 1058. The defendant allegedly violated this prohibition by sending emails with "from" fields that did not "clearly identify" defendant as the sender. *Id.* at 1063. The "from" fields included "CriminalJustice [at] vm-mail.com," "PublicSafetyDegrees [at] vmadmin.com," and "TradeIn [at] vm-mail.com." *Id.*

As construed by the court, CEMA's point-of-origin provision reaches "a vast array of nondeceptive acts and practices," including "unintentional clerical errors, imperfect representations, or immaterial misstatements." *Id.* at 1059 (internal quotation marks, citation omitted). The CAN-SPAM Act, by contrast, as interpreted in light of its text, structure, and

OPPORTUNITY TO MOTION
TO DISMISS
No. 3:25-cv-05861-DGE

6

Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
(360) 915-6952

purpose, *see id.* at 1061, does not authorize liability for "bare immaterial error," *id.* (quoting *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 359 (4th Cir. 2006)), or "immaterial inaccuracies or omissions." *Id.* at 1062. Rather, the Act restricts state regulation to the field of "traditionally tortious or wrongful conduct." *Id.* (quoting *Omega*, 469 F.3d at 354).

Under this standard, Gordon's claims were preempted. The Ninth Circuit found "nothing inherently deceptive" about the use of "fanciful" domain names. *Id.* The domains from which defendant's emails were sent were "properly registered" to it and permitted anyone to "accurately identif[y]" defendant as the registrant. *Id.* at 1064. The fields had not been "altered to impair a recipient's ability to identify, locate, or respond" to the sender and were not "aimed at misleading recipients" as to the sender's identity. *Id.* The plaintiff's arguments against preemption boiled down to a requirement that defendant's or a client's full name "expressly appear" in "from" fields. *Id.* If CEMA imposed such a "labeling requirement," the Ninth Circuit explained, it "clearly" fell outside the federal statute's exception from preemption. *Id.*

In short, the plaintiff's CEMA claims sought relief for "non-deceptive statements or omissions" or for violations of a "heightened content or labeling requirement." *Id.*; *see also id.* (Plaintiff's "technical allegations" about "from" fields "find no basis in traditional tort theories."). Those claims were not within the federal statute's exception and were, therefore, preempted. *Id.*

Decisions applying *Gordon* have correctly refused to overread it. Rather, district courts apply *Gordon* according to its terms: where plaintiffs plead only "nondeceptive statements or omissions," then their claims are preempted. *See, e.g.*, *Andrews v. Conversion Squared Corp.*, 2020 WL 3978063, at *2–3 (C.D. Cal. May 8, 2020) ("Plaintiffs do not really allege deception, period, instead taking issue with a variety of missing information" in "from" fields.). Put differently, plaintiffs seeking to avoid preemption need only show some degree of materiality. *See Silverstein v. Keynetics Inc.*, 2016 WL 7475616, at *3–4 (N.D. Cal. Dec. 29, 2016) ("Although Plaintiff alleges that the email headers include false 'from' names," that is, fictitious names like "Liana

OPPOSITION TO MOTION TO DISMISS
No. 3:25-cv-05861-DGE

7

Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
(360) 915-6952

Christian," "those names are not materially deceptive."), *aff'd*, 727 F. App'x 244, 246 (9th Cir. Mar. 6, 2018) ("The e-mails' use of the LinkedIn.com domain name is not materially false or misleading within the meaning of the CAN-SPAM Act.").

*Gordon* and the cases applying it thus simultaneously explain the import of "traditionally tortious or wrongful conduct," *Gordon*, at 575 F.3d at 1062, in the preemption analysis, and give the lie to Skechers's repeated characterizations of Plaintiffs' CEMA claims as attempts to impose "strict liability." *See* Mot. 8, 17, 19, 21, 27. To merit preemption, a defendant under *Gordon* has to show it didn't do anything *wrong*, in light of the state standard applied to be applied to its conduct viewed against the backdrop of what has traditionally been considered wrongful. Skechers has not and cannot make that showing here. Skechers does precisely what CEMA prohibits: it spams Washington residents with commercial emails containing "false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). As shown below, Skechers does this by misrepresenting what is perhaps the single most important fact to consumers—price—in a way exploits well documented features of consumer psychology and distorts markets' proper functioning. Skechers does not even attempt to argue that such conduct has been traditionally understood as beyond the reach of prohibitions on falsity and deception in commerce. Skechers may take a dim view of the significant statutory damages imposed by CEMA for its conduct, but that does not make CEMA a strict liability statute, or its own deceptions mere immaterial errors.

**B.    Skechers's deceptions are more than bare immaterial errors.**

The only question, therefore, is whether it is "apparent from the face" of Plaintiffs' Amended Complaint, *Sams*, 713 F.3d at 1179, that the misrepresentations they complain of are merely "bare immaterial error[s]." *Gordon*, 575 F.3d at 1061 (quoting *Omega World*, 469 F.3d at 359). It is not. Plaintiffs are not complaining of "fanciful" domain names or "from" fields that fail an invented "labeling requirement." *Id.* at 1063–64. To the contrary, Plaintiffs complain of Skechers's barrage of emails laden with false subject lines—*i.e.*, its false time-scarcity tactics.

OPPOSITION TO MOTION TO DISMISS
No. 3:25-cv-05861-DGE

8

Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
(360) 915-6952

Those tactics are plainly material to the behavior of ordinary consumers.

As alleged, "[f]alse time scarcity claims harm consumers by manipulatively distorting their decision-making to their detriment." Am. Compl. ¶ 37. As one report cited in the Amended Complaint concludes, "[f]alse or misleading scarcity claims can change the behaviour of consumers." U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 27 (2022), https://perma.cc/V848-7TVV/ (cited at Am. Compl. ¶¶ 30, 32, 34–36, 38–39). Specifically, "[f]alse scarcity claims are psychologically effective because, as 'considerable evidence' suggests, 'consumers react to scarcity and divert their attention to information where they might miss opportunities.'" Am. Compl. ¶ 32 (quoting *Online Choice Architecture*, *supra*, at 26). One study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* ¶ 38 (quoting *Online Choice Architecture*, *supra*, at 27). Moreover, consumers learn to alter their behavior in the face of false scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.* ¶ 39 (quoting *Online Choice Architecture*, *supra*, at 27). And at this stage, the Court must accept facts pleaded in the Amended Complaint as true.

All of this accords with the well worn federal law of materiality, not to mention common sense. "Whether in tort or contract law," materiality focuses on "the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Kousisis v. United States*, 145 S. Ct. 1382, 1396 (2025) (applying wire fraud statute). A fact is material "if a reasonable person would attach importance to it in deciding how to proceed, or if the defendant knew (or should have known) that the recipient would likely deem it important." *Id.* (citing *inter alia* Restatement (Second) of Torts § 538 (Am. Law Inst. 1977)). Representations about the timing and duration of sales, discounts, and other special offers are, at bottom, representations about prices. If a 50 percent discount on a $20 product "ends tonight," that product costs $10 today and $20 tomorrow. And

OPPOSITION TO MOTION TO DISMISS
No. 3:25-cv-05861-DGE

9

Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
(360) 915-6952

1  price is obviously a material fact—perhaps *the* material fact—affecting the behavior of ordinary
2  consumers. *See* Am. Compl. ¶ 33. If a consumer is in the market for a product she believes will
3  cost $20 tomorrow, she will naturally "attach importance," *Kousisis*, 145 S. Ct. at 1396, to the fact
4  that it will cost only $10 if she buys it today.

5         As for common sense, Skechers's argument flies in its face. Skechers is a "sophisticated
6  commercial enterprise" that has "engaged in persistent marketing through mass email campaigns
7  across the United States." Am. Compl. ¶ 66. Its email marketing platform enables it to, among
8  other things, track how many recipients engage with its marketing materials and to what extent.
9  *See id.* ¶ 70. And email subject lines offer limited space within which Skechers can communicate
10 "above the fold" messages that come to consumer attention even if the emails are immediately
11 deleted or their contents ignored. Why, then, would Skechers choke its consumers' inboxes like
12 coffee grounds in a sink with email after email announcing that an offer "End[s] Tonight" or "ends
13 in 3...2...1 🕐"? Am. Compl. ¶¶ 43, 47. Why would Skechers expend all this time and effort
14 broadcasting mere immaterialities? A plausible answer (indeed, the only plausible answer) is, of
15 course it would not. Skechers would not waste valuable marketing dollars or consumer attention
16 on marketing messages unless they *worked*. And Skechers's false-urgency tactics work because
17 they exploit well documented features of consumer psychology and behavior. *See id.* ¶¶ 30–38. In
18 other words, Skechers's tactics work because they misrepresent facts to which consumers "attach
19 importance." *Kousisis*, 145 S. Ct. at 1396. Nothing in the text of the CAN-SPAM Act or *Gordon*
20 requires more to avoid preemption.

21        Skechers cites one decision from the Washington Court of Appeals holding, without
22 analysis, that representations about raffle tickets "going fast" did not misrepresent "something of
23 material importance." *Brummet v. Washington's Lottery*, 288 P.3d 48, 55 (Wash. Ct. App. 2012).
24 *Brummet* is readily distinguishable. To represent nonspecifically that certain widgets are "going
25 fast" does not in itself say anything about how many widgets remain, or for how long consumers
26
27

OPPOSITION TO MOTION TO DISMISS
No. 3:25-cv-05861-DGE

10

Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
(360) 915-6952

can expect those widgets to remain available for sale. Indeed, *Brummet* does not even clarify whether the plaintiff's "going fast" claim failed for lack of materiality or for lack of a misrepresentation, and it is difficult to imagine a definite standard under which a vague statement like "going fast" could be found false. If, by contrast, the *Brummet* defendant had used Skechers's tactics and represented that the raffle "ENDS AT MIDNIGHT," Am. Compl. ¶ 49 when it did not, that would be representing urgency "when in fact there is no urgency," making it actionably deceptive. *Stephens v. Omni Ins. Co.*, 159 P.3d 10, 19 (Wash. Ct. App. 2007) ("The increasingly urgent tone ('ATTENTION!') and message ('ACTIVITY PENDING TEN (10) days') [of defendant's dunning letters] suggests that the recipient's situation is becoming worse with each passing day when in fact there is no urgency.").

Skechers faults the studies cited in support of Plaintiffs' fact allegations as lacking "evidentiary value." Mot. 16. Of course pleading allegations have no "evidentiary value." *Evidence* comes later. *See, e.g.*, *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). Indeed, materiality is a complex mixed question of law and fact "typically … resolved by juries." *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995). Skechers itself demonstrates this by dressing up its jury arguments in the borrowed robes of Rule 12(b)(6). *See* Mot. 15–17. Any doubts as to the materiality of Skechers's misrepresentations are therefore to be doubly resolved against Skechers: once because it is not Plaintiffs' burden to plead materiality, but *Skechers's* burden to show Plaintiffs have pleaded themselves out of court with immaterialities, *see Sams*, 713 F.3d at 1179; and twice because Plaintiffs should be afforded the benefit of fact and expert discovery to demonstrate the plausible inference that Skechers sends its misleading email subject lines precisely to impact consumer behavior. Indeed, at this stage, the Court must draw reasonable inferences in Plaintiffs' favor. *See Littlejohn*, 2024 WL 4451955, at *3. Skechers is not entitled to dismissal on the basis of CAN-SPAM Act preemption.

OPPOSITION TO MOTION TO DISMISS
No. 3:25-cv-05861-DGE

11

Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
(360) 915-6952

### C. To the extent it applies, Plaintiffs' allegations satisfy Rule 9(b).

The familiar particularity provision of Rule 9(b) requires plaintiffs to plead "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). As an initial matter, it is doubtful that Rule 9(b) applies to Plaintiffs' claims at all. This is not a complex healthcare fraud matter under the False Claims Act. The rule applies when "alleging fraud" to "the circumstances constituting fraud." Fed. R. Civ. P. 9(b). But, as explained above, Plaintiffs need not and do not allege fraud. Instead, Plaintiffs merely have to allege "falsity" or "deception."

Even presuming that Rule 9 applied here (it does not), then the Amended Complaint readily clears Rule 9(b)'s bar because it sufficiently alleges the necessary particulars:

*Who*: Defendant Skechers, Inc. *See, e.g.*, *id.* ¶ 76.

*What*: Created false senses of urgency and time pressure to induce Plaintiffs and others to buy its products immediately. *See, e.g.*, *id.* ¶¶ 4–6, 30–31, 77–78.

*When*: On May 26, 2025 and April 9, 2025, at least. *Id.* ¶¶ 77–78.

*Where*: At Plaintiffs' email accounts. *Id.*

*How*: By email subject lines containing identified false statements of fact as to the duration and availability of a promotion. *Id.* ¶¶ 43–44, 56–59, 79.

In any event, Skechers nowhere argues that, stripped of any suggestion of intentional deception, Plaintiffs' allegations fail to state a claim under CEMA or the CPA, which do not require intent. *See Wright v. Lyft, Inc.*, 406 P.3d 1149, 1153–55 (Wash. 2017) (delineating elements of CPA and CEMA claims, none requiring intent). In short, Rule 9(b) doesn't apply to Plaintiffs' claims. If it does, it is satisfied. If it isn't satisfied, Plaintiffs' claims survive anyway. Rule 9(b) affords Skechers no relief.

OPPOSITION TO MOTION
TO DISMISS
No. 3:25-cv-05861-DGE

12

Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
(360) 915-6952

II. **Plaintiffs' CPA claims likewise survive.**

Skechers's only argument for dismissal of Plaintiffs' CPA claims are that they stand or fall with Plaintiffs' CEMA claims. *See* Mot. 24. As Plaintiffs' CEMA claims survive for the reasons given above, so too do their CPA claims.

## CONCLUSION

The Court should deny Skechers's motion to dismiss.

*I certify that this memorandum contains no more than 4,633 words, in compliance with the Local Civil Rules.*

DATE: December 9, 2025                     Respectfully submitted,

/s/ Walter Smith
Walter M. Smith
**Smith & Dietrich Law Offices, PLLC**
1226 State Avenue NE, Suite 205
Olympia, WA 98506
Tel.: (360) 915-6952
walter@smithdietrich.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**CohenMalad, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

OPPOSITION TO MOTION TO DISMISS
No. 3:25-cv-05861-DGE

13

Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
(360) 915-6952

Michael Charles Tackeff
**Stranch, Jennings & Garvey, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
mtackeff@stranchlaw.com

Samuel J. Strauss
**Strauss Borrelli, LLP**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com

*Attorneys for Plaintiffs*
\* Admitted *pro hac vice*

OPPOSITION TO MOTION TO DISMISS
No. 3:25-cv-05861-DGE

14

Smith & Dietrich Law Offices, PLLC
1226 State Avenue NE, Suite 205
Olympia, WA 98506
(360) 915-6952