THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEPHEN LISS and BONI MELCHOR, on their own behalf and on behalf of others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>SKECHERS U.S.A. INC.,<br><br>*Defendant.* | Case No. 3:25-cv-05861-DGE<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: December 16, 2025<br><br>ORAL ARGUMENT REQUESTED |

DEFENDANT'S REPLY ISO MOTION TO DISMISS
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  PLAINTIFFS' CEMA CLAIMS ARE PREEMPTED. ............................................ 2

    A.   Plaintiffs' Argument Rests on a Fundamental Misreading of CAN-SPAM and *Virtumundo*. ....................................................................................... 2

    B.   Plaintiffs' Reliance on California-Based Authorities Is Misplaced .................. 4

III. PLAINTIFFS' ARGUMENTS ON RULE (9) CONFIRM WHY THEIR CLAIMS ARE PREEMPTED .......................................................................................... 5

IV.  PLAINTIFFS' FAIL TO SUFFICIENTLY PLEAD MATERIALITY. ...................... 6

    A.   Plaintiffs Fail to Identify Any Misstatement Material to Plaintiffs. .................. 6

    B.   Plaintiffs Fail to Allege Facts Indicating That The Subject Lines Would Be Material to a Reasonable Consumer. .............................................................. 7

        1.   Plaintiffs' Cannot Establish Materiality Through Generalized Third-Party Commentary. ....................................................................... 8

        2.   Plaintiffs Materiality Theory Conflicts with Settled Law. ..................... 9

        3.   Plaintiffs' "Common Sense" Argument Fails. ..................................... 11

        4.   Plaintiffs' Failure to Sufficiently Plead Materiality Warrants Dismissal at The Pleading Stage. ....................................................... 11

V.   PLAINTIFFS' CLAIM ALSO FAILS BECAUSE THEY DO NOT ADEQUATELY ALLEGE SCIENTER. ............................................................ 12

VI.  PLAINTIFFS DO NOT ALLEGE RELIANCE OR DAMAGES. ........................... 13

VII. CONCLUSION ................................................................................................ 13

DEFENDANT'S REPLY ISO MOTION TO DISMISS - i
CASE NO. 3:25-CV-05861-DGE

**O'MELVENY & MYERS, LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Asis Internet Servs. v. Subscriberbase Inc.*,
    2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) ..................................................................... 4, 5

*Beckendorf v. Beckendorf*,
    76 Wash. 2d 457 (1969) ........................................................................................................ 2

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
    777 F.3d 712 (4th Cir. 2015) ................................................................................................ 5

*Brown v. Old Navy, LLC*,
    567 P.3d 38 (Wash. 2025) ..................................................................................................... 5

*Brummett v Washington's Lottery*,
    288 P.3d 48 (Wash. App. 2012) ......................................................................................... 10

*Clegg v. Cult Awareness Network*,
    18 F.3d 752 (9th Cir. 1994) .................................................................................................. 8

*Easton v. Chaffee*,
    8 Wash. 2d 509 P.2d 31 (1941) ............................................................................................ 4

*Fed. Home Loan Bank of Seattle v. Credit Suisse Sec. (USA) LLC*,
    449 P.3d 1019 (Wash. 2019) .............................................................................................. 10

*Fletcher v. Olmstead*,
    84 Wash. App. 1044 (1996) .................................................................................................. 3

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) ..................................................................................... passim

*In re Cloudera, Inc.*,
    121 F.4th 1180 (9th Cir. 2024) ............................................................................................. 6

*In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*,
    764 F. Supp. 3d 1026 (W.D. Wash. 2025) ......................................................................... 11

*Joseph v. Amazon.com, Inc.*,
    46 F. Supp. 3d 1095 (W.D. Wash. 2014) ........................................................................... 11

*Kamath v. Robert Bosch LLC*,
    2014 WL 2916570 (C.D. Cal. June 26, 2014) ...................................................................... 7

*Kleffman v. Vonage Holdings Corp.*,
    2007 WL 1518650 (C.D. Cal. May 23, 2007) ...................................................................... 2

*Martin v. Miller*,
    600 P.2d 698 (Wash. App. 1979) ...................................................................................... 6, 9

*Mazal Grp., LLC v. Espana*,
    2017 WL 6001721 (C.D. Cal. Dec. 4, 2017) ........................................................................ 6

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
    469 F.3d 348 (4th Cir. 2006) ........................................................................................... 5, 12

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

## TABLE OF AUTHORITIES
### (continued)

Page

*Robertson v. GMAC Mortg. LLC*,
2013 WL 12175088 (W.D. Wash. Feb. 6, 2013), *aff'd*, 702 F. App'x 595
(9th Cir. 2017) ........................................................................................................... 11

*Smith v. Anastasia Inc.*,
2014 WL 12577598 (S.D. Cal. Sept. 15, 2014) ........................................................ 4

*Stone v. Robie*,
29 A. 257 (Vt. 1894) ............................................................................................... 10

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .................................................................................... 8

*Universal Health Servs., Inc. v. United States*,
579 U.S. 176 (2016) .............................................................................................. 6, 9

*Zander v. Blumenthal*,
198 N.E.2d 93 (Ohio Ct. App. 1964) ...................................................................... 10

*Zunum Aero, Inc. v. Boeing Co.*,
2022 WL 2116678 (W.D. Wash. June 13, 2022) ..................................................... 11

### STATUTES

15 U.S.C. § 7701(a)(8) ................................................................................................. 2

15 U.S.C. § 7704 .......................................................................................................... 2

15 U.S.C. § 7707(b)(1) ................................................................................................. 2

Cal. Bus. & Prof. Code § 17529.5 ............................................................................... 4

### OTHER AUTHORITIES

16A Wash. Prac., Tort Law And Practice § 19:2 (5th ed.) ...................................... 2, 4

16A Wash. Prac., Tort Law And Practice § 19:3 ......................................................... 9

Black's Law Dictionary 1717 (10th ed. 2014) ............................................................. 3

https://perma.cc/V848-7TVV/ ...................................................................................... 8

DEFENDANT'S REPLY ISO MOTION TO DISMISS - iii
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

## I.    **INTRODUCTION**[1]

Plaintiffs accuse Skechers of misreading CAN-SPAM and mischaracterizing Ninth Circuit precedent.   The opposite is true.   Congress enacted CAN-SPAM to eliminate a patchwork of state laws regulating commercial email and replace it with a uniform, predictable national standard, excepting only state claims based on "*traditional tort* theories such as claims arising from *fraud or deception*."   *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1063 (9th Cir. 2009).   Plaintiffs essentially concede that their CEMA claims are not based on traditional fraud or deceit theories, which require scienter, materiality, reliance, and damages.   Specifically, Plaintiffs continue to argue that, under CEMA, the mere act of pressing "send" on an email advertising a time-limited sale in its subject line that is later extended exposes the sender to automatic statutory damages, even if no Washington resident ever read the subject line, relied (actually or reasonably) on it, or made a purchase decision because of it.   That is precisely the type of state law Congress expressly sought to preempt with CAN-SPAM.

Plaintiffs also fail adequately to plead the single element they concede is essential to surviving CAN-SPAM preemption: materiality.   Plaintiffs do not allege that the challenged subject lines were even material to *them* or influenced their behavior in any way.   Nor have they pled basic facts necessary to establish materiality, i.e., that they—or *anyone*—actually made a purchase because of an advertised sale deadline (and would not have done so had they known the sale might be extended by a day or two).   Instead, Plaintiffs rely on generalized behavioral-economics theories about markedly different marketing practices, untethered to their own experience and incapable of substituting for well-pleaded facts.   That is not enough under *Iqbal/Twombley* and Rule 9(b).   Accordingly, Plaintiffs' claims are preempted in their entirety and should be dismissed.

---

[1] Unless otherwise indicated, all emphasis is added and all quotations and citations are omitted.

DEFENDANT'S REPLY ISO MOTION TO DISMISS - 1
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

## II.   PLAINTIFFS' CEMA CLAIMS ARE PREEMPTED.

### A.   Plaintiffs' Argument Rests on a Fundamental Misreading of CAN-SPAM and *Virtumundo.*

Congress enacted the CAN-SPAM Act to establish a uniform, nationwide framework for regulating commercial email, ***including email subject lines***,[2] and specifically to preempt state statutes like CEMA that seek to "regulate[] the use of electronic mail to send commercial messages." 15 U.S.C. § 7707(b)(1).  The goal was to create "one national standard, applicable across jurisdictions," *Virtumundo*, 575 F.3d at 1062-63, designed to ensure that "legitimate businesses would not have to guess at the meaning of various state laws when their advertising campaigns ventured into cyberspace." *Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007).

The statute includes only a "narrow exception" preserving state laws that prohibit "falsity or deception." *Virtumundo*, 575 F.3d at 1061–63.  Both the legislative history and binding Ninth Circuit precedent confirm that this exception does ***not*** extend to laws targeting emails that are merely inaccurate.  Rather, the exception is limited to statutes predicated on traditional tort theories of fraud and deceit—a category of claims that require pleading and proof of materiality, scienter, reliance, and damages.[3]  As Congress explained, CAN-SPAM "supersede[s] State and local statutes … that expressly regulate the use of email to send commercial messages except for statutes ... that target ***fraud or deception***."  S. Rep. No. 108–102, at 21–22.

In *Virtumundo*, the Ninth Circuit directly confronted whether CEMA claims fall within this narrow exception.  Examining CEMA itself and Congress's intent, the court concluded that the "falsity and deception" exception must be limited to "***traditional tort theories*** such as

---

[2] 15 U.S.C. §§ 7704, 7701(a)(8).

[3] *See, e.g., Beckendorf v. Beckendorf,* 76 Wash. 2d 457, 462 (1969) (listing elements of fraud); 16A Wash. Prac., Tort Law And Practice § 19:2 (5th ed.) ("The terms 'fraud' and 'deceit' are often used interchangeably.").

DEFENDANT'S REPLY ISO MOTION TO DISMISS - 2
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

claims arising from ***fraud or deception***." *Virtumundo, at* 1063. As the court explained, reading the terms "falsity" and "deception" together "connotes a type of ***tort*** action based on ***misrepresentations***."[4] *Id.* at 1062. Such a claim therefore cannot be based on "mere error" or "insignificant inaccuracies," *id.* at 1061, and must be based on "practice[s] … aimed at misleading." *Id.* at 1064. Applying that framework, the Ninth Circuit concluded that CEMA claims failed to meet the requirements for exception.

Plaintiffs attempt to cabin *Virtumundo* by casting it as a narrow, fact-bound decision about technical violations in email headers, and dismiss the court's discussion of CAN-SPAM preemption as mere dicta. Opp. 6–7. That characterization is indefensible. The scope of CAN-SPAM's preemption exception was a central issue in the case, *see, e.g., Virtumundo*, 575 F.3d at 1058-59 (rejecting amicus arguments that the court should not reach CAN-SPAM preemption), and the court's analysis of the "falsity or deception" exception was central to its holding. Indeed, *Virtumundo* held that CEMA claims were preempted precisely because they had "no basis in traditional tort theories and therefore fall beyond the ambit of the exception language in the CAN–SPAM Act's express preemption clause." *Id.* at 1064.

Plaintiffs also attribute to *Virtumundo* a rule the decision does not contain. According to Plaintiffs, to warrant preemption, the defendant has an affirmative burden to demonstrate that "it didn't do anything wrong" in light of what has been "traditionally considered wrongful." Opp. at 8. *Virtumundo* imposes no such burden. And Plaintiffs' own formulation undermines their position. Any claim that turns on whether the defendant committed a civil wrong necessarily sounds in tort[5] and must be pleaded as such, with all requisite elements.

The actual rule from *Virtumundo* is clear: CEMA claims are preempted unless they are grounded in traditional tort theories of fraud or deception. Fraud-based theories, in turn,

---

[4] Misrepresentation, like deceit, is another species of fraud. *Fletcher v. Olmstead*, 84 Wash. App. 1044 at * 3 (1996).

[5] Black's Law Dictionary 1717 (10th ed. 2014) (a tort is a "civil wrong . . . for which a remedy may be obtained").

DEFENDANT'S REPLY ISO MOTION TO DISMISS - 3
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

require the pleading of specific elements, including materiality, scienter, reliance, and damages.[6] Because Plaintiffs concede that their CEMA claims do not allege these elements, Opp. at 8, those claims are preempted.

### B.    Plaintiffs' Reliance on California-Based Authorities Is Misplaced

To avoid preemption, Plaintiffs' cite several California cases holding that plaintiffs bringing claims under *California's* anti-spam law need not plead reliance and damages. Opp. at 5–6. Plaintiffs' reliance on these cases is misplaced.

*First*, those cases interpret an entirely different statute with different requirements. As the court explained in *Asis Internet Servs. v. Subscriberbase Inc.*, California's anti-spam statute is "quite distinct from the Washington statute in *Virtumundo* [i.e., CEMA]." 2010 WL 1267763 at *11 (N.D. Cal. Apr. 1, 2010); *see also Smith v. Anastasia Inc.*, 2014 WL 12577598 at *3 (S.D. Cal. Sept. 15, 2014) ("[*Virtumundo*] did not address Section 17529.5; it determined that CAN-SPAM preempted a Washington state law."). Unlike CEMA, California's statute incorporates certain distinct tort concepts directly into its language. The statute prohibits e-mail advertisements with "subject line[s] that a person **knows** would be **likely to mislead** a recipient, acting reasonably under the circumstances, about a **material** fact regarding the contents or subject matter of the message." Cal. Bus. & Prof. Code § 17529.5. As the *Asis Internet* court explained, unlike CEMA, the California statute prohibits "what might be termed 'attempted' or 'potential' deception, i.e., subject lines that are only 'likely to mislead.'" *Asis Internet Servs.* 2010 WL 1267763, at *11. The court reasoned that, since "attempted fraud" does not require any proof of actual harm, such a claim could proceed under the statute as a type of "deception without reliance and damages." *Id*.

---

[6] Plaintiffs try to distinguish "deception" from "common law fraud," Opp. at 4, but courts use the terms interchangeably and require that parties plead traditional fraud elements for either. *See Easton v. Chaffee*, 8 Wash. 2d 509, 113 P.2d 31 (1941) ("[B]asic elements for an action grounded in fraud . . . may form the basis of an action for deceit."); 16A Wash. Prac., Tort Law And Practice § 19:2 (5th ed.) ("The terms 'fraud' and 'deceit' are often used interchangeably.").

DEFENDANT'S REPLY ISO MOTION TO DISMISS - 4
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

By contrast, courts confronting state anti-spam statutes that *are* worded like CEMA— i.e., that likewise fail to require elements of a traditional fraud-based tort or the "attempted fraud" language of California's statute—routinely apply a tort standard to such claims. *See Omega World Travel, Inc. v. Mummagraphics, Inc*., 469 F.3d 348, 354 (4th Cir. 2006) (requiring claims under Oklahoma's anti-spam law "sound in tort" to avoid preemption); *Beyond Sys., Inc. v. Kraft Foods, Inc*., 777 F.3d 712, 717 (4th Cir. 2015) (requiring claims under Maryland's anti-spam statute be "in the vein of tort" to avoid preemption).

*Second*, these California cases expressly hold that scienter and materiality are essential elements to avoid preemption. *See e.g., Asis Internet Servs*., 2010 WL 1267763, at *13 (concluding that claim would survive preemption "[a]s long as Plaintiffs can establish that Defendants were responsible for making **knowing** and **material** misrepresentations). As discussed *infra*, Plaintiffs fail to plead facts supporting the existence of either scienter or materiality.

*Third*, to the extent the California decisions suggest that state laws regulating commercial email need not be based "traditional tort theories such as claims arising from fraud or deception," they directly contradict *Virtumudo* and may be disregarded.[7]

### III.    PLAINTIFFS' ARGUMENTS ON RULE (9) CONFIRM WHY THEIR CLAIMS ARE PREEMPTED

In trying to avoid application of Rule 9(b), Plaintiffs effectively concede that their claims do not fit within CAN-SPAM's limited, narrow exception to preemption. Plaintiffs argue that their claims are not grounded in "fraud," but are instead based on "falsity" or "deception." Opp. at 12. *Virtumundo* and *Omega*, however, expressly reject the notion that claims predicated on mere falsity survive preemption. *See Virtumundo*, 575 F.3d at 1061-62.

---

[7] Plaintiffs' passing reference to *Brown v. Old Navy*, LLC, 567 P.3d 38 (Wash. 2025) is also misplaced. *Brown* did not address preemption, materiality, or any of the other elements at issue here. Instead, the *Brown* decision only addressed *falsity*, a separate element of a CEMA claim. *Id*. at 47. As such, *Brown* has no applicability here.

DEFENDANT'S REPLY ISO MOTION TO DISMISS - 5
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

And Rule 9(b) indisputably applies to any claim "grounded in fraud." *In re Cloudera, Inc.*, 121 F.4th 1180, 1186 (9th Cir. 2024). Thus, because only claims based on misrepresentation torts like fraud and deceit survive preemption, *Virtumundo,* 575 F.3d at 1061–64; Mot. 10–13, Rule 9(b) necessarily applies here—and requires that Plaintiffs plead all elements of their claims with particularity.

Plaintiffs' fallback argument—that they have satisfied Rule 9(b) because they have pled "who, what, when, where, and how" facts—misconstrues Rule 9(b). "According to Rule 9(b), a plaintiff must plead ***each element of a fraud claim*** with particularity." *Mazal Grp., LLC v. Espana*, 2017 WL 6001721, at \*5 (C.D. Cal. Dec. 4, 2017). The sophistic "who, what, when, where, how" argument Plaintiffs make misses the point—because they have not pled sufficient, specific facts to satisfy all essential elements of a fraud claim—including materiality, scienter, reliance and damages—they have not complied with Rule 9(b).

## IV.    PLAINTIFFS' FAIL TO SUFFICIENTLY PLEAD MATERIALITY.

Plaintiffs concede that their CEMA claim, at a minimum, must include *material* misrepresentations to survive preemption. Opp. 7–8. Yet, Plaintiffs fail to plead that the alleged false statements at issue were material even to *them*—much less to reasonable consumers. This is inadequate.

### A.    Plaintiffs Fail to Identify Any Misstatement Material to Plaintiffs.

A statement is material if it is "likely to influence the purchasing decision"[8] and goes to "the very essence of the bargain."[9] As the Supreme Court explained, "[u]nder any understanding of the concept, materiality looks to the effect on the likely or actual behavior *of the recipient* of the alleged misrepresentation." *Universal Health Servs., Inc. v. United States,* 579 U.S. 176, 193 (2016). Plaintiffs' claim fails at the outset because they do not allege that

---

[8] *Martin v. Miller*, 600 P.2d 698, 700–01 (Wash. App. 1979).

[9] *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 193 n.5 (2016).

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

the subject lines had *any* influence—let alone a material one—on anyone's purchasing decisions.

The Opposition first attempts to manufacture materiality by suggesting Plaintiffs were subject to a "barrage of emails laded with false subject lines" from Skechers. Opp. at 8. That is simply a conclusion, not a fact. Directly contradicting this unsupported conclusion, the FAC alleges that Plaintiffs collectively received only *two* emails with objectionable subject lines. FAC ¶¶ 76–78. Plaintiff Liss allegedly received an email dated April 9, 2025 from Skechers with the subject, "Flash Sale Alert! Don't Miss Today-Only Savings," and Plaintiffs Liss and Melchor each allegedly received a May 26, 2025 email with the subject "Long Weekend Savings End Tonight."[10] According to Plaintiffs, each of these subject lines were "materially false" because the sales they advertised were extended for a day or so via follow-up emails.

Yet, Plaintiffs make no allegation, nor do they argue in their Opposition, that the April 9 or the May 26 subject lines influenced them in *any* way. Neither Plaintiff alleges having even read the subject lines, let alone making a purchase based on them. When the alleged misstatements had *zero* impact on the very plaintiffs bringing the lawsuit, materiality is absent. Holding otherwise would effectively extinguish a materiality requirement. *See* Mot. 14–15.

**B.** **Plaintiffs Fail to Allege Facts Indicating That The Subject Lines Would Be Material to a Reasonable Consumer.**

Plaintiffs allege no facts showing that any of the emails at issue influenced anyone's behavior in the real world, nor do they cite any case holding that an advertised sale becomes materially false or misleading simply because it is later extended. Plaintiffs' materiality theory

---

[10] Because "at the motion to dismiss stage, the Court only considers allegations pertaining to the named plaintiff(s)," the Court's analysis must focus exclusively on these two subject lines. *Kamath v. Robert Bosch LLC*, 2014 WL 2916570, at *5 (C.D. Cal. June 26, 2014). Arguments or allegations about a supposed broader "scheme," "campaign," or "barrage," or claims that Skechers was "choking" inboxes, must, therefore, be disregarded.

DEFENDANT'S REPLY ISO MOTION TO DISMISS - 7
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

instead rests on indirect, conclusory arguments, none of which supplant the need for them to plead sufficient facts showing materiality.

### 1. Plaintiffs' Cannot Establish Materiality Through Generalized Third-Party Commentary.

First, Plaintiffs rely on generalized behavioral-economics *theories* to argue that Skechers' "tactics" theoretically *could* harm consumers. Plaintiffs selectively quote from a U.K. discussion paper, stating that "false or misleading scarcity claims" can alter consumer behavior because "consumers react to scarcity." Opp. at 9. Plaintiffs contend that Skechers' email practices, which they characterize as "false time-scarcity tactics," are therefore material. *Id*. Plaintiffs assert that, because they copied these quotes into the Amended Complaint, the Court must accept them as facts at this stage. *Id*.

This argument fails. First, the Court need not accept conclusory, cherry-picked quotes from third-party publications as well-pleaded facts at the motion to dismiss stage.[11] Indeed, the discussion paper itself cautions that it is intended solely to "provoke discussion and debate, exploring hypotheses," and "is not intended to act as guidance for businesses." [12] It further warns that "the examples set out in th[e] paper **should not be read as statements of the law**." *See* https://perma.cc/V848-7TVV/ at 9. The other FTC staff document likewise merely summarizes what was "discussed" at a workshop, involves alleged practices that are different because they involve no actual deadline (as opposed to short extensions of actual deadlines to allow consumers more time to take advantage of sales), and, again, is of no legal significance. *See* Mot. at 16.

---

[11] *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.")

[12] In ruling on a motion to dismiss, the Court can consider the full content of documents that a complaint incorporates by reference. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

DEFENDANT'S REPLY ISO MOTION TO DISMISS - 8
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

Such thought-pieces are neither facts nor evidence. The cited passages offer only unremarkable, high-level observations about how consumers may respond to scarcity cues in general, and do not address email subject lines or the significance of a sale lasting 48 hours instead of 24 hours (or lasting a few days beyond a stated deadline). These are all relatively short time periods and there is no reason to infer that any reasonable person would not have made a purchase had she or he known that a sale might last *a day or so longer* than advertised *in an email's subject matter line*. Here, where Plaintiffs have not (and presumably cannot, after having already amended their Complaint once) plead that the original time period or short extension even mattered to *them*, no basis exists to infer materiality for anyone else.

### 2.    Plaintiffs' Materiality Theory Conflicts with Settled Law.

Next, Plaintiffs turn to "well worn federal law of materiality," claiming Skechers' statements about sale timing or duration are equivalent to price representations, which are inherently material. Opp. at 9–10. Not so. Plaintiffs do not allege that Skechers misrepresented prices, overcharged anyone, or failed to honor the advertised discounts. The FAC alleges only that Plaintiffs received two emails for sales that were later briefly extended—and neither claims to have bought anything based on the original email's stated sales duration. What is typically material to a consumer—a product they want being offered at a particular price—was delivered. Plaintiffs cite no case that has ever found it deceptive to *anyone* that a sale might last *longer* than advertised.

Rather, the caselaw on materiality cuts against Plaintiffs. To be material, a statement must be one that "[a] reasonable [person] would clearly attach importance to the existence of" when deciding whether "to enter into the transaction." *Martin,* 600 P.2d 700–01. To clear this high bar, the misrepresentation must impact "the very essence of the bargain.'" *Universal Health Servs., Inc.,* 579 U.S. at 193 n.5. By contrast, representations about facts "collateral to the subject transaction" are not material. 16A Wash. Prac., Tort Law And Practice § 19:3.

DEFENDANT'S REPLY ISO MOTION TO DISMISS - 9
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

Plaintiffs allege no misrepresentation going to the essence of the bargain. They do not allege that Skechers misrepresented the nature of a product, its price, or value, nor do they claim that anyone made a purchase they otherwise would not have made.  At most, Plaintiffs speculate Skechers' promotion may have shifted the *timing* of a purchase by a day or so, but this does not change the substance of the transaction: the customer received the same goods at the same price.[13]

Indeed, Plaintiffs' theory—that representations creating a sense of urgency are inherently material—is inconsistent with established Washington law.  In *Brummett v Washington's Lottery*, for example, the plaintiff similarly alleged that a defendant's advertisements created a false sense of urgency by misrepresenting the speed at which lottery tickets with "early bird" prizes were selling.  288 P.3d 48, 50–52, 55 (Wash. App. 2012).  However, the court found such representations not to be material because they did not go to the essence of the underlying transaction—i.e., the sale of a specific good at a specific price.  *See id*. at 54.  As the court explained, plaintiff "did not attempt to show that these advertisements made any claims about either the scheduled raffle prizes or the 'early bird' prizes or that these advertisements misled him about the total number of prizes, the odds of winning, or the amount of money at stake." *Id*.  Hence, mere "representations about the speed of sale"—and the sense of urgency they allegedly created—"even if false, were not material." *Id*.

Plaintiffs attempt to distinguish *Brummet* by characterizing the statements there as "vague," in contrast to Skechers' supposedly more definite subject lines.  But that is a

---

[13] *Zander v. Blumenthal*, 198 N.E.2d 93, 95 (Ohio Ct. App. 1964) (to be material misrepresentation must "affect[] the identity, value, or character of the subject matter of the contract"); *Stone v. Robie*, 29 A. 257, 257 (Vt. 1894) (misrepresentations not material where they "did not relate to the quantity, quality, or value of the articles sold."); *see also* Fed. *Home Loan Bank of Seattle v. Credit Suisse Sec. (USA) LLC*, 449 P.3d 1019, 1028 (Wash. 2019) (materiality inquiry "is not one taken lightly"; "a minor misstatement that is not of actual import" is insufficient).

DEFENDANT'S REPLY ISO MOTION TO DISMISS - 10
CASE NO. 3:25-CV-05861-DGE

distinction without a difference. The court's decision in *Brummet* did not turn on the precision (or lack thereof) of the advertising language used; it turned on the nature of the alleged misrepresentation. *Brummet* makes clear that mere representations about scarcity or urgency do not go to the essence of the bargain and therefore are not material.

### 3.    Plaintiffs' "Common Sense" Argument Fails.

Next, Plaintiffs argue that the materiality of Skechers' subject lines can be inferred as a matter of "common sense." Opp. at 10. Plaintiffs posit that Skechers, as a sophisticated enterprise, would not "expend all this time and effort" sending marketing emails "unless they worked," and because the emails "worked," they must have "misrepresent[ed] facts to which consumers attach importance." Opp. at 10. This is circular logic, and is predicated on false assumptions (not facts). If one were to accept this syllogism, the mere act of sending marketing emails would itself establish materiality for any marketing email, eliminating the materiality requirement entirely. That is not the law.

### 4.    Plaintiffs' Failure to Sufficiently Plead Materiality Warrants Dismissal at The Pleading Stage.

Plaintiffs argue that materiality should not be resolved at the pleading stage for three reasons, none of which withstand scrutiny. First, Plaintiffs say materiality is a mixed question of fact for the jury. Opp. at 11. This argument misapprehends Rule 12(b)(6). While factual disputes may be resolved later in the case, Plaintiffs must first plead sufficient, specific facts to plausibly state a claim. Courts regularly dismiss claims at the pleading stage where, as here, a plaintiff fails to plead sufficient facts to establish materiality.[14]

---

[14] *See, e.g.*, *In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1050 (W.D. Wash. 2025); *Zunum Aero, Inc. v. Boeing Co.*, 2022 WL 2116678, at *15 (W.D. Wash. June 13, 2022); *Robertson v. GMAC Mortg. LLC*, 2013 WL 12175088, at *4 (W.D. Wash. Feb. 6, 2013), *aff'd*, 702 F. App'x 595 (9th Cir. 2017); *Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1109 (W.D. Wash. 2014).

DEFENDANT'S REPLY ISO MOTION TO DISMISS - 11
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

Second, Plaintiffs incorrectly assert that Skechers has the burden to show "Plaintiffs have pleaded themselves out of court with immaterialities." Opp. at 11. Not true. Under *Virtumundo*, materiality is an essential element *Plaintiffs* must plead to avoid preemption. *Virtumundo*, 575 F.3d at 1061–62. It is Plaintiffs' burden—not Skechers'—to allege facts plausibly establishing that Skechers' sent a material misrepresentation.

Third, Plaintiffs argue that discovery is needed to demonstrate Skechers sent its "subject lines precisely to impact consumer behavior." Opp. at 11. But this argument confuses intent with materiality. Materiality turns on whether the statements in the subject lines impact consumer behavior, not on what the sender hoped to accomplish. Discovery into Skechers' motivations cannot cure Plaintiffs' failure to allege that these subject lines affected, or were likely to affect, any purchase decision in a material way.

## V.   PLAINTIFFS' CLAIM ALSO FAILS BECAUSE THEY DO NOT ADEQUATELY ALLEGE SCIENTER.

Under *Virtumundo* and related precedent, a CEMA claim survives preemption only if it alleges the traditional elements of a fraud or deceit claim, which includes scienter. *Virtumundo*, 575 F.3d at 1061–1063; *Omega*, 469 F.3d at 353-54. Plaintiffs refuse to address this requirement directly, though they repeatedly acknowledge *Virtumundo*'s conclusion that CEMA claims based on "nondeceptive" statements are preempted. *See* Opp. 6–7. And deception necessarily implies that the speaker intended the statement to be false when made, i.e., scienter.

In any event, Plaintiffs' own theory requires scienter. As alleged, the email subject lines were not inherently false when sent—but instead became false when Skechers later extended the promotions. This implies Skechers knew the sales would be extended at the time it sent the initial emails, but the FAC does not ever allege such knowledge. As Skechers explained in its opening motion, Plaintiffs offer no facts showing Skechers intended to mislead, and the far more plausible explanation for the sporadic emails with sale extensions was that

DEFENDANT'S REPLY ISO MOTION TO DISMISS - 12
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

they were ordinary, good-faith business decisions. Plaintiffs' failure to plead scienter is fatal to their claim. Mot. 17–20.

## VI.    PLAINTIFFS DO NOT ALLEGE RELIANCE OR DAMAGES.

Plaintiffs' claims independently fail because they do not allege reliance or damages. Plaintiffs do not allege that they or anyone else relied on the challenged subject lines (either actually or reasonably) or suffered any resulting injury, and they make no attempt in their Opposition to argue otherwise.

Instead, Plaintiffs ask the Court to adopt a strict liability regime under which any business that sends a marketing email advertising a time-limed sale—later extended for any period or any reason—would be subject to statutory damages, regardless of whether any Washington resident ever read the subject line, opened the email, relied on it, or made a purchase decision because of it. This is precisely the sort a state-law liability trap CAN-SPAM preemption was designed to eliminate. Plaintiffs' failure to allege reliance or damages is fatal to their claim.

## VII.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

*I certify that this memorandum contains 4,197 words, in compliance with the Local Civil Rules.*

/ / /

/ / /

/ / /

DEFENDANT'S REPLY ISO MOTION TO DISMISS - 13
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

Dated this 16th day of December, 2025.

ANGELI & CALFO LLC

By: s/ Angelo J. Calfo
Angelo J. Calfo (WSBA #27079)
Tyler S. Weaver (WSBA #29413)
angelo@angelicalfo.com
tylerw@angelicalfo.com

O'MELVENY & MYERS LLP

By: s/ Daniel Cooper
Daniel M. Petrocelli (CA Bar #97802)
(*Pro Hac Vice*)
Jeffrey A. Barker (CA Bar #166327)
(*Pro Hac Vice*)
Daniel Cooper (CA Bar # 329607)
(*Pro Hac Vice*)
dpetrocelli@omm.com
jbarker@omm.com
dcooper@omm.com

***Attorneys for Defendant Skechers U.S.A., Inc.***

DEFENDANT'S REPLY ISO MOTION TO DISMISS - 14
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700