THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEPHEN LISS and BONI MELCHOR, on their own behalf and on behalf of others similarly situated,

*Plaintiffs,*

v.

SKECHERS U.S.A. INC.,

*Defendant.*

Case No. 3:25-cv-05861-DGE

**DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE (ECF 35)**

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................................... 1

II.   PLAINTIFFS HAVE ALLEGED A CONCRETE INJURY SUFFICIENT TO
      ESTABLISH ARTICLE III STANDING ................................................................ 2

      A.    Legal Standard ........................................................................................... 2

      B.    Receipt of an Alleged Spam Communication Is a Concrete Injury
            Sufficient for Article III Standing. ........................................................... 3

      C.    Plaintiffs Allege a Concrete Injury for Standing Purposes. ...................... 6

      D.    Skechers' Motion to Dismiss Does Not Indicate a Lack of Standing. ...... 9

III.  THE AMOUNT IN CONTROVERSY SUFFICES FOR CAFA
      JURISDICTION ..................................................................................................... 10

IV.   THE AMOUNT IN CONTROVERSY SUFFICES FOR DIVERSITY
      JURISDICTION ..................................................................................................... 13

V.    CONCLUSION ...................................................................................................... 14

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE -i
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

# TABLE OF AUTHORITIES

**Page**

## CASES

*Arias v. Residence Inn by Marriott*,
936 F.3d 920 (9th Cir. 2019).................................................................................11

*Booth v. Appstack, Inc.*,
2016 WL 3030256 (W.D. Wash. May 25, 2016)...................................................... 6

*Brinton v. Vivint Inc.*,
2024 WL 3688589 (W.D. Wash. Aug. 7, 2024) ...........................................2, 4, 8

*Certification from United States Dist. Ct. for W. Dist. of Washington in Brown*
*v. Old Navy, LLC*,
4 Wash. 3d 580 (2025) .............................................................................................4

*Chavez v. JPMorgan Chase & Co.*,
888 F.3d 413 (9th Cir. 2018)...................................................................................11

*Chennette v. Porch.com, Inc.*,
50 F.4th 1217 (9th Cir. 2022)..............................................................................5, 8

*Chin v. Evergreen Freedom Found.*,
764 F. Supp. 3d 924 (C.D. Cal. 2025).................................................................4, 8

*City of Oakland v. Oakland Raiders*,
20 F.4th 441 (9th Cir. 2021)....................................................................................10

*Coe v. Philips Oral Healthcare Inc.*,
2014 WL 722501 (W.D. Wash. Feb. 24, 2014) .......................................................2

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014).................................................................................................10

*Dawsey v. Travelers Indem. Co.*,
2015 WL 4394545 (W.D. Wash. July 16, 2015) ...................................................12

*Devivo v. Sheex Inc.*,
Case No. 3:25-cv-05807-DGE (J. Estudillo) ........................................................12

*Dickson v. Direct Energy, LP*,
69 F.4th 338 (6th Cir. 2023)...................................................................................... 6

*Doe v. Chao*,
540 U.S. 614 (2004).................................................................................................9

*Drazen v. Pinto*,
74 F.4th 1336 (11th Cir. 2023)................................................................................. 6

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ...........................................................9

*Eric B. Fromer Chiropractic, Inc. v. Inovalon Holdings, Inc.*,
329 F. Supp. 3d 146 (D. Md. 2018) ......................................................................... 6

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE -ii
CASE NO. 3:25-CV-05861-DGE

**O'MELVENY & MYERS, LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

**TABLE OF AUTHORITIES**

**Page**

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
899 F.3d 785 (9th Cir. 2018)................................................................................12

*Gadelhak v. AT&T Servs., Inc.*,
950 F.3d 458 (7th Cir. 2020)..................................................................................6

*Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*,
599 F.3d 1102 (9th Cir. 2010)..............................................................................11

*Gordon v. Virtumundo*,
575 F.3d 1040 (9th Cir. 2009).......................................................................5, 8, 9

*Guglielmino v. McKee Fods Corp.*,
506 F.3d 696 (9th Cir. 2007)................................................................................12

*Hall v. Smosh Dot Com, Inc.*,
72 F.4th 983 (9th Cir. 2023).............................................................................5, 8

*Harbers v. Eddie Bauer, LLC*,
415 F. Supp. 3d 999 (W.D. Wash. 2016)...............................................3, 4, 7, 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)................................................................................10

*In re Toyota Motor Corp.*,
790 F. Supp. 2d 1152 (C.D. Cal. 2011)..................................................................9

*Lewis v. Verizon Commc'ns, Inc.*,
627 F.3d 395 (9th Cir. 2010)................................................................................11

*Lupia v. Medicredit, Inc.*,
8 F.4th 1184 (10th Cir. 2021)................................................................................6

*Lynch v. AML Network Ltd.*,
2021 WL 4453470 (C.D. Cal. Sept. 27, 2021)....................................................4, 8

*Montes v. Catalyst Brands LLC*,
2025 WL 3485827 (E.D. Wash. Dec. 4, 2025) (Rice, J.) .............................8, 9

*Park-Kim v. Daikin Indus., Ltd.*,
2016 WL 1069035 (C.D. Cal. Mar. 17, 2016) ...................................................9

*Robins v. Spokeo, Inc.*,
867 F.3d 1108 (9th Cir. 2017)................................................................................2

*Rodgers v. Cent. Locating Serv., Ltd.*,
412 F. Supp. 2d 1171 (W.D. Wash. 2006)..........................................................13

*Silverstein v. Keynetics, Inc.*,
2018 WL 5795776 (C.D. Cal. Nov. 5, 2018)........................................................6

*Silverstein v. Keynetics, Inc.*,
727 F. App'x 244 (9th Cir. Mar. 6, 2018).......................................................5, 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)................................................................................................2

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE -iii
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

**TABLE OF AUTHORITIES**

**Page**

*Stand. Fire Ins. Co. v. Knowles*,
568 U.S. 588 (2013)................................................................................................................10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...................................................................................................2, 3, 4, 5

*Trepanier v. Progressive Direct Ins. Co.*,
2012 WL 12882865 (W.D. Wash. Sept. 19, 2012)............................................................13

*U.S. v. Students Challenging Reg. Agency Procs.*,
412 U.S. 669 (1973)....................................................................................................................2

*Vampire Fam. Brands, LLC v. MPL Brands, Inc.*,
2021 WL 4134841 (C.D. Cal. Aug. 6, 2021)........................................................................2

*Van Patten v. Vertical Fitness Group, LLC*,
847 F.3d 1037 (9th Cir. 2017)..................................................................................................3

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022)........................................................................................2, 5, 8

**RULES**

Fed. R. Civ. P. 12(b)(6)..............................................................................................................2

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE -iv
CASE NO. 3:25-CV-05861-DGE

**O'MELVENY & MYERS, LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

Defendant Skechers U.S.A., Inc. ("Skechers"), without waiver of any of its rights (including its right to compel arbitration), respectfully submits this response to the Court's March 16, 2026 Order to Show Cause (ECF 35) directing Skechers to address whether this action should be remanded to state court for lack of subject-matter jurisdiction.

## I.    **INTRODUCTION**

This action was properly removed to federal court.  Plaintiffs claim that Skechers sent them allegedly deceptive commercial emails in violation of Washington's Commercial Electronic Mail Act ("CEMA") and, in doing so, "spammed Plaintiffs" in "violation of their right to be free from such annoyance and harassment." 8/19/26 Class Action Complaint ("Compl.") ¶ 64 (Ex. A to Decl. of Angelo J. Calfo in Support of Defendant's Notice of Removal (ECF 2) at 16); *see also* 11/4/25 Amended Complaint (ECF 28) ¶ 76 ("Am. Compl."). Those allegations assert an injury the Washington Legislature sought to prevent with CEMA. Although Plaintiffs fail to allege materiality, scienter, reliance, or actual damages (as required to avoid CAN-SPAM preemption), they do allege the type of concrete, intangible harm CEMA was enacted to address.  Courts in this District have previously found the receipt of emails allegedly in violation of CEMA sufficient to establish Article III standing.  Receipt of alleged spam emails also comports with extensive Ninth Circuit authority recognizing standing to exist based on alleged injury to statutory rights.

The amount in controversy for subject matter jurisdiction is also satisfied.  Plaintiffs seek statutory damages (trebled), attorneys' fees, and injunctive relief on behalf of a putative class they allege numbers at least in the thousands.  To the extent the Court questions whether CEMA damages are measured per recipient or per email, that issue is itself disputed and remains part of the amount "in controversy."  Unless and until the Court resolves that question as a matter of law, the jurisdictional threshold is met based on Plaintiffs' theory of the case.

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE - 1
CASE NO. 3:25-CV-05861-DGE

**O'MELVENY & MYERS, LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

To be clear, Skechers maintains that Plaintiffs' claims are meritless, preempted by federal law, and should be dismissed under Fed. R. Civ. P. 12(b)(6). But the bases upon which this matter was removed are sufficient, and this Court properly has jurisdiction over this action.

## II.   PLAINTIFFS HAVE ALLEGED A CONCRETE INJURY SUFFICIENT TO ESTABLISH ARTICLE III STANDING

### A.   Legal Standard[1]

To have Article III standing, a plaintiff must allege an injury-in-fact that is concrete. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). At the pleading stage, the proponent of Article III standing need only establish that the plaintiff has "allege[d] facts that, when accepted as true, show that [the elements of standing] are satisfied." *Id*. This is not a high bar. *See Coe v. Philips Oral Healthcare Inc*., 2014 WL 722501, at *4 (W.D. Wash. Feb. 24, 2014) ("[A]t the pleading stage, the bar is low for standing."); *Vampire Fam. Brands, LLC v. MPL Brands, Inc*., 2021 WL 4134841, at *7 (C.D. Cal. Aug. 6, 2021) ("Article III's injury-in-fact requirement needs only 'an identifiable trifle' of harm," which is a "low bar.") (quoting *U.S. v. Students Challenging Reg. Agency Procs.*, 412 U.S. 669, 689 n. 14 (1973)).

Although a concrete injury-in-fact is not established "merely by pointing to a statutory cause of action, the Supreme Court also [has] recognized that some statutory violations, alone, do establish concrete harm." *Robins v. Spokeo, Inc*., 867 F.3d 1108, 1113 (9th Cir. 2017); *see also Brinton v. Vivint Inc*., 2024 WL 3688589, at *2 (W.D. Wash. Aug. 7, 2024) ("[M]any statutory violations, even 'intangible' ones, are also concrete injuries."). As the Ninth Circuit has held, "an intangible injury is sufficiently 'concrete' when (1) [the legislature] created a statutory cause of action for the injury, and (2) the injury has a close historical or common-law analog." *Wakefield v. ViSalus, Inc*., 51 F.4th 1109, 1118 (9th Cir. 2022) ("In *TransUnion*, the Supreme Court reaffirmed the preexisting rule that an intangible injury qualifies as 'concrete' when that injury bears a 'close relationship to harms traditionally recognized as providing a

---

[1] Unless otherwise indicated, all emphasis is added and all quotations and citations are omitted.

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE - 2
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

basis for lawsuits in American courts.'")).  The Ninth Circuit has further recognized that actions to remedy "invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts."  *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017).

## B.    Receipt of an Alleged Spam Communication Is a Concrete Injury Sufficient for Article III Standing.

Applying these principles, federal courts, including those in this District, consistently hold that the receipt of alleged spam communications regulated by statutes such as CEMA constitutes a concrete injury sufficient to confer Article III standing.  They regularly find that the harms targeted by these statutes—nuisance, wasted time, and intrusion upon privacy—are concrete and, for standing purposes, felt upon the mere receipt of the communication.

The case of *Harbers v. Eddie Bauer, LLC,* 415 F. Supp. 3d 999 (W.D. Wash. 2016), is directly on point.  In *Harbers*, as here, the plaintiff brought a putative class action against a retailer, alleging violations of CEMA's prohibition on false and misleading email subject lines.  *Id*. at 1001–02.  After removal to federal court, the plaintiff moved for remand, arguing that she deliberately had not alleged reliance, pecuniary loss, or any individualized harm, and therefore had not pled a sufficiently concrete injury to support Article III standing.  *Id*. at 1009. The court squarely rejected this argument and denied remand.  *Id*. at 1006–11.

Applying the same framework later reaffirmed U.S. Supreme Court in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the *Harbers* court held that CEMA "was enacted to protect concrete interests," specifically the "right to be free from deceptive commercial emails."  415 F. Supp. 3d at 1006.  The court found that this right is injured by the mere receipt of a prohibited email.  *Id*. at 1009.  Citing to the Washington Legislature's findings, the *Harbers* court noted that deceptive spam emails impose real burdens on recipients: they "take[] up time, cause[] frustration," and shift costs from deceptive senders onto email users.  *Id*. at 1007–08.  The court further explained that these harms "resemble the type of harms remedied

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE - 3
CASE NO. 3:25-CV-05861-DGE

by nuisance or fraud actions," placing them squarely within the type of injuries traditionally recognized as concrete for Article III purposes. *Id*. at 1008. The court expressly held that the plaintiff's alleged receipt of marketing emails in violation of CEMA "satisfie[d] the concrete requirement, *even absent additional allegations of harm*." *Id*. at 1009.

Courts in this District have reaffirmed *Harbers* in the wake of *TransUnion*. In *Brinton v. Vivint, Inc*., for example, Judge Cartwright noted her "agree[ment] with the other district courts that have found receipt of spam emails to be a concrete injury that establishes Article III standing." 2024 WL 3688589, at *3 (W.D. Wash. Aug. 7, 2024) (citing, *e.g., Harbers,* 415 F. Supp. 3d at 1007–11), *appeal dismissed*, No. 24-5240, 2025 WL 2472999 (9th Cir. Mar. 7, 2025). In passing CEMA, the *Brinton* court explained, the Washington Legislature recognized that spam emails cause harm, including "lost productivity and resources, annoyance, consumption of valuable digital storage space and financial costs, in addition to the foundational injuries to privacy and freedom from nuisance." *Id.* Thus, under the Supreme Court's guidance in *TransUnion*, *Harbers* and *Brinton* are the prevailing rule in this District. *Id.* at *3 ("The detailed analysis of concrete injury under CEMA by this district in *Harbers* remains persuasive after *TransUnion*.").[2]

Federal courts in other states addressing analogous state anti-spam statutes likewise hold that the receipt of unlawful commercial email is a sufficiently concrete injury to provide Article III standing. *See, e.g., Lynch v. AML Network Ltd*., 2021 WL 4453470, at *5 (C.D. Cal. Sept. 27, 2021) (denying remand of claims brought under California's CEMA analogue and concluding that plaintiff alleged concrete injury sufficient to invoke Article III standing); *Chin v. Evergreen Freedom Found*., 764 F. Supp. 3d 924, 934 (C.D. Cal. 2025) ("Plaintiffs' allegations of [California's Anti-Spam Law] statutory violations are injuries in fact sufficient to confer Article III standing.").

---

[2] Moreover, as the Washington Supreme Court recently observed, "injury under CEMA occurs when a recipient receives an email that violates the statute." *Certification from United States Dist. Ct. for W. Dist. of Washington in Brown v. Old Navy, LLC*, 4 Wash. 3d 580, 592 (2025).

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE - 4
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

In post-*TransUnion* decisions, the Ninth Circuit has routinely found a sufficiently concrete injury to exist based on alleged violations of statutes that regulate commercial communications through means such as telephone calls, voicemail, and text messages. In *Wakefield v. ViSalus, Inc*., 51 F.4th 1109, 1118 (9th Cir. 2022), for example, the court held that the alleged receipt of unsolicited telemarketing calls in violation of the Telephone Consumer Protection Act ("TCPA") constitutes a concrete injury sufficient to confer Article III standing. The court reasoned that, because such harms closely resemble "traditional claims for invasions of privacy, intrusion upon seclusion, and nuisance," the mere receipt of an unlawful telemarketing call, without any additional allegations of harm, is enough to establish a concrete injury-in-fact. *Id*. A year later, in *Hall v. Smosh Dot Com, Inc*., 72 F.4th 983 (9th Cir. 2023), the Ninth Circuit reaffirmed this principle in holding that a plaintiff's ownership of a phone number that received unsolicited text messages in violation of the TCPA was sufficient to establish Article III standing, even if the plaintiff was not the actual recipient of the messages. *Id*. at 988–91; *see also Chennette v. Porch.com, Inc*., 50 F.4th 1217, 1222 (9th Cir. 2022) (concluding that the receipt of "even one unconsented message" in violation of the TCPA is sufficient injury to convey Article III standing.).

These rulings are consistent with the Ninth Circuit's approach to CEMA claims in *Gordon v. Virtumundo*, 575 F.3d 1040, 1062-64 (9th Cir. 2009). As this Court recognized, "federal courts are required sua sponte to examine jurisdictional issues such as standing." *See* ECF 35 at 2-3. In *Virtumundo*, as here, the Ninth Circuit was evaluating the sufficiency of asserted claims under CEMA involving allegedly deceptive email subject lines, and found those claims to be preempted under CAN-SPAM. *See* 575 F.3d at 1062-64. Although the Ninth Circuit did not expressly consider whether the plaintiff there had Article III standing, it clearly had no concerns about standing based on an asserted CEMA claim—or else it could have (and should have) raised those concerns. *See also, e.g., Silverstein v. Keynetics, Inc*., 727 F. App'x 244, 245-46 (9th Cir. Mar. 6, 2018) (affirming dismissal of claims brought under

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE - 5
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

California's anti-spam law without raising standing concerns); *Silverstein v. Keynetics, Inc.*, 2018 WL 5795776, at *10 (C.D. Cal. Nov. 5, 2018) ("Because the district court and the Ninth Circuit reached decisions on the merits of Plaintiff's claim, each made an implicit finding of standing under Article III.").

Finally, other Circuit courts likewise consistently find that the receipt of an unwanted message in violation of a consumer protection statute, alone and without other alleged harm, to be a sufficient injury-in-fact for Article III standing. *See Dickson v. Direct Energy, LP*, 69 F.4th 338, 346–48 (6th Cir. 2023) (holding that receipt of one silently delivered voicemail in violation of the TCPA was concrete injury); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191–93 (10th Cir. 2021) (unwanted call and voicemail in violation of Fair Debt Collection Practices Act was concrete injury); *Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023) (receipt of single unwanted text message in violation of TCPA was sufficient for Article III standing); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020) ("We . . . agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact for Article III purposes."); *see also Booth v. Appstack, Inc.,* 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016) ("[W]ast[ed] time answering or otherwise addressing widespread robocalls," in violation of Washington's Dialing and Announcing Device Act and TCPA, constitutes concrete injury); *Eric B. Fromer Chiropractic, Inc. v. Inovalon Holdings, Inc.,* 329 F. Supp. 3d 146, 153 (D. Md. 2018) ("[T]he mere receipt of an unsolicited fax in violation of the TCPA constitutes a concrete injury sufficient to satisfy Article III's injury in fact requirement."). The reasoning of these cases applies with equal force to CEMA, which likewise regulates unwanted commercial communications.

### C.    Plaintiffs Allege a Concrete Injury for Standing Purposes.

Here, although Plaintiffs' claims are preempted, they nonetheless allege injuries of the type recognized by courts as sufficient for Article III standing purposes. At the outset, Plaintiffs describe the widespread harms associated with "deceptive spam," alleging that such

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE - 6
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

practices impose significant costs on "all internet users" and have led to an "increasing number of complaints," and shift the burden of deceptive spam from senders to recipients and service providers.  *See* Compl. (ECF 2) ¶¶ 13–18; Am. Compl. (ECF 28) ¶¶ 13–18.  Plaintiffs further allege that the Washington Legislature "intended CEMA to provide some immediate relief for these problems."  Compl. ¶ 23; Am. Compl. ¶ 23.  Plaintiffs even expressly invoke *Harbers*, stating that CEMA "protects Washington consumers against the harms resulting from deceptive commercial emails which resemble the type of harms remedied by nuisance or fraud actions."  Compl. ¶ 24; Am. Compl. ¶ 24.  That is precisely the formulation courts use to identify a concrete harm under Article III.

Consistent with that framing, Plaintiffs allege that Skechers' email practices cause these harms.  Plaintiff's allege that Skechers' email practices "waste[] consumers' time," "choke[] consumers' email inboxes," and impose costs associated with deceptive spam.  Compl. ¶ 5; Am. Compl. ¶ 5.  Plaintiffs further allege that they—and the putative class they seek to represent—received spam emails from Skechers, identifying nearly two dozen of purportedly violative messages.  Compl. ¶¶ 39–53; Am. Compl. ¶¶ 43–65, 76–79.  Specifically, Plaintiff allege that "*Skechers violated Plaintiff's right under CEMA to be free from deceptive commercial emails,*" Compl. at 9 §IV. D.; Am. Compl. at 12 §IV. D, and that Skechers "spammed" plaintiffs "*in violation of their right to be free from such annoyance and harassment under CEMA,*" Compl. ¶ 64; Am. Compl. ¶ 76.  Moreover, Plaintiffs seek "injunctive relief against such violations in the future." Compl. ¶ 7; Am. Compl. ¶ 7.

Taken together, these allegations assert more than a bare statutory violation.  Plaintiffs allege receipt of at least a subset of the challenged communications on their own behalf, and describe the allegedly resulting harms in terms that courts generally recognize as being sufficiently concrete for purposes of Article III.

As far as counsel has been able to determine, there is only one decision in which a court has concluded that a CEMA claim, standing alone, may be insufficient to establish Article III

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE - 7
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

standing.  *See Montes v. Catalyst Brands LLC*, 2025 WL 3485827 (E.D. Wash. Dec. 4, 2025) (Rice, J.).  *Montes* is an outlier, though, and should not be persuasive.  To begin, the plaintiff in *Montes* expressly "welcomed defendants' marketing emails and even wishe[d] to continue to receive Defendants' emails," and did "not allege that these emails were unsolicited or unwanted."  *Id*. at *3.  As a result, Judge Rice concluded there was "not an invasion of privacy or any similar injury to constitute a concrete harm."  *Id*.  This is in stark contrast to what Plaintiffs allege here, which is that Skechers "spammed" them "in violation of their right to be free from such annoyance and harassment under CEMA."  Compl. ¶ 64; Am. Compl. ¶ 76.  They further allege that any purported consent "is a fiction," and that retailers like Skechers send emails consumers "did not meaningfully request and in which they have no genuine interest." Compl. ¶¶ 19–20; Am. Compl. *Id*. ¶¶ 20–21.  Clearly, unlike the *Montes* plaintiff, Plaintiffs allege an invasion of privacy or similar harm here.[3]

Further, the record in *Montes* indicates that Judge Rice may not have had the benefit of full briefing when he rendered his decision.  *See Montes v. Catalyst*, No. 2:25-cv-00281, ECF Nos. 16, 18, 20, 22 (briefing and order regarding defendants' motion for reconsideration).  At a minimum, he was apparently unaware of Judge Cartwright's decision in *Brinton*, did not consider the decisions of other district courts regarding standing existing based on alleged violations of similar anti-spam statutes (e.g., *Lynch* and *Chin*), the Ninth Circuit's decisions in *Wakefield, Hall* and *Chennette* regarding standing based on alleged violations of similar statutory rights, the implications of the Ninth Circuit's lack of any standing concerns in *Virtumundo* and *Silverstein*, or the many other Circuit decisions affirming that texts or emails allegedly violating statutory anti-spam provisions constitute a sufficiently concrete injury for

---

[3] In any event, within this District, the *Harbers* court previously rejected the position taken in *Montes* that a CEMA plaintiff lacks a concrete injury for standing purposes merely because they may have consented to receive emails.  As the *Harbers* court explained, any desire by such a plaintiff to continue receiving emails is necessarily "contingent upon such emails not containing false or misleading information in the subject line," and thus alleging receipt of misleading emails itself establishes concrete injury.  *See Harbers*, 415 F. Supp. 3d at 1011.

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE - 8
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

standing purposes.  Finally, it is unclear what Judge Rice ultimately concluded in *Montes,* given that he only dismissed the plaintiff's claims there and refused to remand the matter.  *See* 2025 WL 3485827 at *4; *see generally Montes v. Catalyst*, No. 2:25-cv-00281, ECF Nos. 16, 18, 20, 22 (reconsideration briefing and order).

### D.       Skechers' Motion to Dismiss Does Not Indicate a Lack of Standing.

The arguments made in Skechers' pending Motion to Dismiss do not indicate a lack of Article III standing.  As noted above, the requirements for alleging an injury-in-fact sufficient for standing are low.  Skechers' motion addresses a different question:  whether Plaintiffs have pled a claim under CEMA that is preempted by the CAN-SPAM Act.  Under *Virtumundo,* the only state-law claims that survive preemption are those involving "traditionally tortious or wrongful conduct."  575 F.3d at 1062–63.  To avoid preemption, Plaintiffs must plead not just an invasion of a statutory interest, but "a type of tort action based on misrepresentations."  *Id.* at 1062.  That requires more than the mere receipt of an email with an allegedly deceptive subject line, but also proof of other traditional elements, including "materiality," "scienter," "reliance" on the alleged misstatement, and damages.  Skechers' motion to dismiss argues that Plaintiffs' have failed to allege those specific elements of a traditional misrepresentation tort.

That analysis, however, is distinct from whether Plaintiffs' have Article III standing.[4] Courts routinely recognize that "[a] holding that a plaintiff has pled an injury in fact for purposes of Article III standing does not establish that he adequately pled his cause of action." *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *10 (S.D. Cal. Nov. 3, 2016); *see also Doe v. Chao*, 540 U.S. 614, 624–25 (2004) (explaining that an individual may suffer Article III injury and yet fail to plead a proper cause of action); *City of*

---

[4] *See Park-Kim v. Daikin Indus., Ltd*., 2016 WL 1069035, at *4 (C.D. Cal. Mar. 17, 2016) ("the Court must distinguish between two separate inquiries: first, whether plaintiff has sufficiently alleged a particularized injury-in-fact for standing purposes; and second, whether plaintiff's theory of recovery is viable."); *In re Toyota Motor Corp*., 790 F. Supp. 2d 1152, 1160 (C.D. Cal. 2011) ("the inquiry into whether Plaintiffs sufficiently allege an "injury in fact" for standing purposes is conceptually distinct from whether "damages" are sufficiently alleged under a particular theory of liability.").

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

*Oakland v. Oakland Raiders*, 20 F.4th 441 (9th Cir. 2021) (finding plaintiff's alleged injury satisfied Article III standing requirements, but that plaintiff failed to plead causal connection sufficient to support antitrust claim); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (affirming dismissal of various statutory claims despite finding that privacy violations constituted injury-in-fact for Article III standing purposes).

Here, Plaintiffs' allegations that they and others were sent emails with false or misleading subject lines in violation of CEMA, which was designed to address harms of spam emails, are sufficient to satisfy Article III's low bar for asserting an injury-in-fact. But Plaintiffs' theory of liability—in which they expressly disclaim the need to allege materiality, scienter, reliance, or damages—falls outside the narrow category of state-law claims that Congress allowed to exist after the passage of CAN-SPAM. That is the basis for Skechers' Motion to Dismiss, and such arguments do not suggest a lack of Article III standing.

## III.    THE AMOUNT IN CONTROVERSY SUFFICES FOR CAFA JURISDICTION

The Court's Order to Show Cause also questions whether the amount in controversy alleged in the Complaint satisfies the requirements for CAFA jurisdiction under 28 U.S.C. § 1332(d)(2) because CEMA's statutory-damages scheme may only authorize recovery on a per-recipient basis rather than a per-email basis. *See* Order at 4–5. If that is the case, the Court suggests, the aggregate amount of damages would be lower than the $5 million threshold required for CAFA removal. *Id*. But the proper measurement of statutory damages under CEMA is a disputed merits issue—and, therefore, the amount Plaintiffs *contend* is at issue under the statute defines the amount in controversy, regardless of whether they are (or are not) ultimately right about such matters.

Unlike other civil actions, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 81 (2014)*; see also Stand. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) ("CAFA's primary objective" is to

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE - 10
CASE NO. 3:25-CV-05861-DGE

**O'MELVENY & MYERS, LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

"ensur[e] 'Federal court consideration of interstate cases of national importance.'" (quoting § 2(b)(2), Pub. L. No. 119 Stat. 5)); S. Rep. No. 109–14, p. 43 (2005) (noting that CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant"). Even if a court "is uncertain about whether all matters in controversy in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case." Senate Report on the Class Action Fairness Act of 2005 Dates of Consideration and Passage, S. Rep. 109-14.

The Ninth Circuit repeatedly has held that the amount in controversy is measured by the relief *sought* in the operative complaint, assuming the plaintiff prevails—not the recovery the Court ultimately concludes is available. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-18 (9th Cir. 2018) (explaining that amount in controversy includes all amounts "at stake" in the litigation, "whatever the likelihood that [the plaintiff] will actually recover them"); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (stating that amount in controversy is "simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) ("[T]he amount in controversy reflects the maximum recovery the plaintiff could reasonably recover."). And the Ninth Circuit has cautioned that a court should not reduce the amount in controversy by deciding merits questions or potential defenses, because doing so would require the court "to decide the merits of the case before it could determine if it had subject matter jurisdiction." *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) ("[J]ust because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense.").

That principle resolves the issue here. Skechers agrees that the Court's reading of CEMA's statutory damages provisions is reasonable and may ultimately control, but the Court

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE - 11
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

cannot assume such a narrower interpretation to defeat jurisdiction. Plaintiffs have chosen to plead and pursue a theory that treats each email as a separate violation, and that is sufficient to establish jurisdiction for the Court to hear this matter and decide whether they are correct. Specifically, the original Complaint identified at least nine—and the Amended Complaint identifies nearly two dozen—individual "examples" of Skechers emails that allegedly violate CEMA, assert that Skechers sends an average of at least 388 emails per year to its customers (including Plaintiffs), define the class to include recipients of those emails, and seek statutory damages "for each violation," trebled. Compl. ¶¶ 39–53, 55, Ex. A; Am. Compl. ¶¶ 43–65, 67, Ex. A. Under both the Complaint and the Amended Complaint, Plaintiffs include such allegations for the purpose of arguing that each allegedly violative email is a separate violation warranting statutory damages.[5] At this stage, that theory defines the amount in controversy.

Based on Plaintiffs' asserted damages theory, the amount in controversy readily exceeds CAFA's $5 million threshold. As Skechers pled in its Notice of Removal, even under a conservative reading of Plaintiff's original Complaint—assuming only 2,000 class members, only two allegedly violative emails per class member, and $1,500 ($500 trebled) in statutory damages per email—the amount in controversy would be $6 million, *even before accounting for attorneys' fees and the cost of complying with Plaintiff's sought injunction*. *See* ECF 1 (Notice of Removal) ¶¶ 30–34.

Moreover, as noted, the amount in controversy also includes additional amounts, such as claimed attorneys' fees. *See, e.g., Dawsey v. Travelers Indem. Co.*, 2015 WL 4394545, at *3 (W.D. Wash. July 16, 2015) (attorneys' fees of 25% of claimed damages included for purposes of CAFA amount-in-controversy calculation); *see generally Guglielmino v. McKee Fods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007); *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 788 (9th Cir. 2018). Here, both the Complaint and Amended Complaint allege

---

[5] Plaintiffs' counsel have recently expressly argued in a similar CEMA case before this Court that CEMA's statutory damages should be accessed on a per-email rather than per-recipient basis. *See Devivo v. Sheex Inc.*, Case No. 3:25-cv-05807-DGE (J. Estudillo) ECF 29 at 6–12.

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE - 12
CASE NO. 3:25-CV-05861-DGE

that Plaintiffs are entitled to such fees.  *See* Compl. § VIII.D; Am. Compl. § VIII.D.  Further, in calculating the amount in controversy, the Court also includes the cost of complying with Plaintiff's sought injunction, *see Rodgers v. Cent. Locating Serv., Ltd*., 412 F. Supp. 2d 1171, 1179 (W.D. Wash. 2006), which in this case could be substantial.  Based on Plaintiff's damages theories and requests for relief, the amount in controversy here far exceeds the $5 million threshold for removal under CAFA.

## IV.    THE AMOUNT IN CONTROVERSY SUFFICES FOR DIVERSITY JURISDICTION

Separate and apart from jurisdiction under CAFA, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a).  As set forth in Skechers' Notice of Removal, there is complete diversity here: Plaintiffs are citizens of Washington, while Skechers is a citizen of Delaware and California.  *See* ECF 1 ¶¶ 10–16.

The amount in controversy requirement for diversity jurisdiction ($75,000 per plaintiff) is also satisfied.  In assessing that requirement, the Court considers all relief placed in controversy, including statutory damages and recoverable attorneys' fees.  *See Trepanier v. Progressive Direct Ins. Co*., 2012 WL 12882865, at *2 (W.D. Wash. Sept. 19, 2012) ("[T]he amount in controversy includes not just actual damages, but also statutorily authorized attorneys' fees and treble damages.").  Here, Plaintiffs seek $1,500 per violation as well as attorneys' fees and an injunction under Washington's Consumer Protection Act.  *See* Am. Compl. ¶ 108.  As noted, Plaintiffs place at least nine and possibly two dozen violations at issue.  *See* Compl. ¶¶ 39–53, 55, Ex. A; Am. Compl. ¶¶ 43–65, 67, 85, Ex. A.

Even if the Court were to assume that the individual Plaintiffs received only two emails (or even that statutory damages under CEMA are per-recipient and not per-email), the amount-in-controversy for diversity jurisdiction would be easily met.  As demonstrated in Skechers' Notice of Removal, Plaintiffs' counsel command substantial hourly rates and this litigation would reasonably require sufficient attorney time well in excess of $75,000.  *See* ECF 1 ¶¶

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE - 13
CASE NO. 3:25-CV-05861-DGE

O'MELVENY & MYERS, LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700

24–25.   Accordingly, even if the Court were to conclude that CAFA jurisdiction is lacking (which would not be correct), diversity jurisdiction would still exist.

## V.   CONCLUSION

For the foregoing reasons, the Court should not remand this case to the Thurston Country Superior Court.

Dated this 16th day of April, 2026.

**ANGELI & CALFO LLC**

By: *s/ Angelo J. Calfo*
Angelo J. Calfo (WSBA #27079)
Tyler S. Weaver (WSBA #29413)
angelo@angelicalfo.com
tylerw@angelicalfo.com

**O'MELVENY & MYERS LLP**

By: *s/ Jeffrey A. Barker*
Daniel M. Petrocelli (CA Bar #97802)
(*Pro Hac Vice*)
Jeffrey A. Barker (CA Bar #166327)
(*Pro Hac Vice*)
Daniel Cooper (CA Bar # 329607)
(*Pro Hac Vice*)
dpetrocelli@omm.com
jbarker@omm.com
dcooper@omm.com

***Attorneys for Defendant Skechers U.S.A., Inc.***

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE - 14
CASE NO. 3:25-CV-05861-DGE

**O'MELVENY & MYERS, LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
TEL. 310.553.6700