UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEPHEN LISS et al., | CASE NO. 3:25-cv-05861-DGE |
| Plaintiffs, | ORDER ON MOTION TO DISMISS (DKT. NO. 30) |
| v. | |
| SKECHERS USA INC., | |
| Defendant. | |

This matter comes before the Court on Defendant's motion to dismiss Plaintiffs' Amended Complaint.  (Dkt. No. 30.)  The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the record.  For the reasons set forth below, Defendant's motion is DENIED.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On September 22, 2025, Defendant Skechers USA Inc. ("Skechers") filed a notice of removal, removing Plaintiffs' complaint, originally filed in the Thurston County Superior Court, to federal court.  (Dkt. No. 1.)  On November 4, 2025, Plaintiffs Stephen Liss and Boni Melchor

ORDER ON MOTION TO DISMISS (DKT. NO. 30) - 1

filed an Amended Complaint asserting causes of action against Defendant for violations of Washington's Commercial Electronic Mail Act ("CEMA") and Consumer Protection Act ("CPA").  (Dkt. No. 28.)

Plaintiffs' Amended Complaint alleges Defendant "blasts" Washington consumers with commercial emails whose subject lines employ various tactics to create a false sense of urgency. (*Id.* at 2.)  Citing research conducted by the Federal Trade Commission ("FTC") and the United Kingdom's Competition and Markets Authority, Plaintiffs argue these tactics are psychologically effective because consumers "react to scarcity and divert their attention to information where they might miss opportunities" thereby allowing marketers to narrow the field of competitive products and deals.  (*Id.* at 5–6.)  Plaintiffs allege that any "consumer consent" in reality 'is a fiction' because consumers "receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest."  (*Id*. at 3–4.)  As Plaintiffs assert, consumers receive "unanticipated and unwanted volumes of commercial email."  (*Id*. at 4.)

Plaintiffs cite as an example the "False Limited Time Message," whereby marketers create pressure to buy immediately "by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached."  (*Id.* at 5.)  Plaintiffs argue Defendant often utilizes this tactic, luring in consumers with urgent sounding subject headings in emails that do not reflect the true availability of the deal.  (*Id.* at 6–7.)  Plaintiffs cite numerous marketing emails[1] sent by Defendant advertising

---

[1] Plaintiffs note these emails are "simply examples" of emails Skechers has sent over the years. (Dkt. No. 28 at 7.)  According to the Amended Complaint, both Plaintiffs received an email dated May 26, 2025, while Plaintiff Liss also received an email dated April 9, 2025.  (*Id.* at 12.) The number of emails Plaintiffs received from Defendant is a factual question the Court will not address at this stage.

ORDER ON MOTION TO DISMISS (DKT. NO. 30) - 2

deals as being available for a limited time, only for Defendant to extend the deal for another day or sometimes several days. (*Id.* at 7–10.) According to Plaintiffs, Defendant "spammed" Plaintiffs "with commercial emails who subject lines contain false or misleading statements." (*Id.* at 12.)

On November 18, 2025, Defendant filed the instant motion to dismiss Plaintiffs' Amended Complaint, arguing Plaintiff's cause of action under CEMA is pre-empted by a federal statute, the Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act. (Dkt. No. 30.) On December 8, 2025, Plaintiffs responded to Defendant's motion. (Dkt. No. 31.)

On March 16, 2026, the Court issued an order directing Defendant to show cause why this case should not be remanded to the Thurston County Superior Court for lack of subject matter jurisdiction. (Dkt. No. 35.) The Court asked Defendant whether Plaintiffs: (1) had suffered a concrete harm for purposes of Article III standing; and (2) whether the amount in controversy was sufficient for the Court to maintain either diversity jurisdiction or jurisdiction under the Class Action Fairness Act ("CAFA"). (Dkt. No. 35.) On April 16, 2026, Defendant responded, asserting that (1) receipt of an email that allegedly violates CEMA is a concrete injury for purposes of Article III standing, and (2) the amount in controversy meets the threshold for both diversity and CAFA jurisdiction. (Dkt. No. 36.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston*

ORDER ON MOTION TO DISMISS (DKT. NO. 30) - 3

*v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–555 (2007) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true [even if doubtful in fact]." *Id*. at 555.  The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547.  "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (internal citation omitted).

## III.    DISCUSSION

### A.  Article III Standing

"[B]oth the Supreme Court and [the Ninth Circuit] have held that whether or not the parties raise the issue, federal courts are *required* sua sponte to examine jurisdictional issues such as standing." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (citation modified).  Standing is a threshold inquiry in every federal case, and it involves an inquiry into whether a "plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Warth v. Seldin*, 422 U.S. 490, 498–499 (1975) (citations and quotation marks omitted).  To establish standing, a plaintiff must show they

suffered an injury in fact that is concrete, particularized, and actual or imminent; fairly traceable to the challenged conduct of the defendant; and likely redressable by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992).

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).  Therefore, the statutory violation must have "caused [a plaintiff] to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo v. Robins*, 578 U.S. at 338) ("*Spokeo II*"). "[A] plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* (citation modified).  Put another way, for standing purposes, "an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of [state] law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of [state] law." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–427 (2021).  To answer the question of whether there is standing, courts must "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 424 (citing *Spokeo*, 578 U.S. at 341).  Notably, "[t]he Ninth Circuit has held that an alleged violation of a statutory provision that protects a substantive right is sufficient to establish concrete injury." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1005 (W.D. Wash. 2019) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017).)

While some statutory violations alone do not establish a concrete harm, *Spokeo II*, 867 F.3d at 1112–1113, the Court concludes a violation of CEMA confers Article III standing.  As

ORDER ON MOTION TO DISMISS (DKT. NO. 30) - 5

both parties pointed out in their briefing, the Washington Legislature enacted CEMA with the intention of "address[ing] unwanted e-mail messages." *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1151 (Wash. 2017) (en banc); *see also* Engrossed Substitute H.B. 2752, 55th Leg., Reg. Sess. (Wash. 1998) ("The legislature seeks to provide some immediate relief . . . by prohibiting the sending of commercial [e-mails] that . . . contain untrue or misleading information in the subject line."). The Washington Supreme Court has found that the deceptive emails targeted by CEMA "harm[] businesses and individual internet users because [they] take[] up time, cause[] frustration . . . and make[] it 'virtually impossible to distinguish spam from legitimate personal or business messages.'" *Harbers*, 415 F. Supp. 3d at 10076 (quoting *State v. Heckel*, 24 P.3d 404, 410 (Wash. 2001) (en banc) (internal alterations and quotation marks omitted)).  The Court concurs that "[t]he harms resulting from deceptive commercial e-mails resemble the type of harms remedied by nuisance or fraud actions[,]" which courts routinely preside over.  *Id.* at 1008; *see also Ramirez*, 594 U.S. at 424 ("courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts").  Unmistakably, CEMA was enacted to protect concrete interests that have traditionally provided a basis for relief in the courts.  *Id.* at 1008.

Here, Plaintiffs allege Defendant "blasts" Washington consumers, and "spammed" Plaintiffs specifically, with commercial emails whose subject lines employ various tactics to create a false sense of urgency. (Dkt. No. 28 at 2, 12.)  Plaintiffs contend the emails violated CEMA because they misrepresented the timing of various sales Defendant was holding and contained false information about the availability of the promotions advertised.  (*Id.* at 6–7.)  Plaintiffs argue Defendant's emails contained false or misleading statements in violation of their right to be free from such annoyance and harassment under CEMA.  (*Id.* at 12.)  Consequently,

the alleged CEMA violation is "necessarily an allegation" that Defendant caused Plaintiff "the kind of concrete injury that the Washington Legislature sought to prevent in enacting CEMA." *Harbers*, 415 F. Supp. 3d at 1009. The Court concludes Plaintiffs "ha[ve] suffered injury in precisely the form the statute was intended to guard against[.]" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982). Therefore, Plaintiffs have established a concrete injury for purposes of Article III.

The Court briefly digresses to distinguish this finding with the opposite conclusion reached by U.S. District Judge Lauren King in *Nuri v. True Religion Apparel et al.*, Case No. 2:25-cv-00690-LK. There, Judge King concluded True Religion had not met its burden to establish standing because there was "no allegation that any of the relevant emails were unsolicited; to the contrary, Nuri provided her email address to True Religion and 'would like to continue receiving truthful information from True Religion regarding its products.'" *Nuri*, Case No. 2:25-cv-00690-LK, Dkt. No. 56 at 6 (quoting Dkt. No. 1-1 at 14). And because Nuri's complaint stemmed from the *content* of True Religion's emails, rather than the *volume* of emails itself, True Religion's argument about wasted email inbox space as an Article III injury was unpersuasive. *Id.* at 6–7. Because True Religion could not show that the solicited emails caused Nuri a real and appreciable injury, Judge King remanded the case to state court. *Id.* at 7–8.

By contrast here, Plaintiffs at no point allege they consented to receive emails from Defendant. (*See generally* Dkt. No. 28.) Instead, they assert they were "spammed" and that consumers such as them are exposed to "unanticipated and unwanted volumes of commercial email" (*id.* at 4, 12); thus their allegations appear to be based on the "annoyance and harassment" caused by emails with subject lines that contain false or misleading statements. These allegations are distinct from those in *Nuri*, where Judge King found Nuri "'[did] not explain at

ORDER ON MOTION TO DISMISS (DKT. NO. 30) - 7

any point how True Religion's email subject lines led to any harm whatsoever.'" *Nuri*, Case No. 2:25-cv-00690-LK, Dkt. No. 56 at 7.  Here, taking Plaintiffs' allegations as true, they have alleged an "invasion of privacy or [a] similar injury to constitute a concrete harm[]" by virtue of receiving *unsolicited* and harassing emails containing false and misleading subject lines from Defendant, which satisfies the injury-in-fact requirement for purposes of standing.  *Montes v. Catalyst Brands LLC*, Case No. 2:25-CV-0281-TOR, 2025 WL 3485827, at *3 (E.D. Wash. Dec. 4, 2025).

## B.  CAFA Jurisdiction

Defendant asserts the amount in controversy has been met under CAFA.  Federal jurisdiction under CAFA is proper if the amount in controversy exceeds $5 million in the aggregate.  28 U.S.C. § 1332(d)(2), (d)(6).  "For cases removed under CAFA, 'where it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled,' defendants need only show by a preponderance of the evidence that the action meets that requirement."  *Huckleby v. Manpower, Inc.*, Case No. CV 10–5486 DSF (FFMx), 2010 WL 11552970, at *1 (C.D. Cal. Sept. 7, 2010) (quoting *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007)).  The defendant is permitted to rely on "a chain of reasoning" that includes reasonable assumptions, which can be established if the assumption is "founded on the allegations of the complaint."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (citing *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198–1199 (9th Cir. 2015)) (internal citation and quotation marks omitted).

Here, the parties agree the amount in controversy exceeds $5 million.  (Dkt. Nos. 28 at 2; 38 at 15–18.)  Plaintiffs seek statutory damages for each message sent in violation of CEMA, as well as treble damages.  (Dkt. No. 28 at 15–16.)  Defendant argues the proper measurement of

ORDER ON MOTION TO DISMISS (DKT. NO. 30) - 8

statutory damages under CEMA is a disputed merits issue, and therefore the amount Plaintiffs contend is at issue under the statute defines the amount in controversy, "regardless of whether they are (or are not) ultimately right about such matters." (Dkt. No. 36 at 15.)  In its notice of removal, Defendant calculated the amount in controversy as follows: (1) $1,500 (treble CEMA's statutory damage amount of $500 per violation), (2) the estimated number of class members (2,000) and (3) the number of emails received (at least two).  (Dkt. No. 1 at 9.)

Defendant's assumptions as to how the amount in controversy is satisfied do not appear unreasonable.  Without deciding at this stage, CEMA appears to contemplate $500 for each violative email, rather than for each injured party: "Damages to the recipient of *a* commercial electronic mail message . . . are five hundred dollars."  Wash. Rev. Code § 19.190.040(1) (emphasis added).  "Where a removing defendant has shown potential recovery '*could* exceed $5 million and the [p]laintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less,' the defendant 'has borne its burden to show the amount in controversy exceeds $5 million.'"  *Arias*, 936 F.3d at 927 (citation omitted).

Here, Defendant has shown through "reasonable assumptions" that Plaintiffs seek damages of at least $5 million.  *Id.* at 925.  Whether Plaintiffs' ultimate recovery is more or less is not the applicable standard.  *Accord. Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").  Accordingly, Defendant has sufficiently shown the amount in controversy for CAFA jurisdiction has been met.[2]

---

[2] As a final note, "[e]ven when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial." *Ibarra*, 775 F.3d at 1198 n.1.

ORDER ON MOTION TO DISMISS (DKT. NO. 30) - 9

## C. CAN-SPAM Pre-emption

The CAN-SPAM Act was enacted "in response to mounting concerns associated with the rapid growth of spam e-mails." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047 (9th Cir. 2009). With the CAN-SPAM Act, Congress sought to replace an ineffective patchwork of state laws with a national standard applicable across jurisdictions. *Id.* at 1062–1063. The Act was designed to ensure that "legitimate businesses would not have to guess at the meaning of various state laws when their advertising campaigns ventured into cyberspace." *Kleffman v. Vonage Holdings Corp.*, Case No. 07–2406, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007).

The Act does not ban spam outright, but instead provides a code of conduct to regulate commercial e-mail messaging practices, prohibiting such practices as transmitting messages with "deceptive subject headings" or "header information that is materially false or materially misleading." *Virtumudo*, 575 F.3d at 1047–1048 (citing 15 U.S.C. § 7704(a)(1), (2)). The CAN-SPAM Act contains an express preemption clause which provides the statute supersedes:

> [A]ny statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, **except to the extent that any such statute, regulation, or rule prohibits falsity or deception** in any portion of a commercial electronic mail message or information attached thereto.

15 U.S.C. § 7707(b)(1) (emphasis added). The language of § 7707(b) demonstrates Congress' intent to broadly preempt state regulation of commercial e-mail with the "limited, narrow exception" of state laws that proscribe "falsity or deception" in commercial e-mail communications. *Virtumundo*, 575 F.3d at 1061. The Ninth Circuit has held the Act's exception from preemption for laws prohibiting falsity and deception applies to "traditionally tortious or wrongful conduct." *Id.* at 1062 (citing *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006).

ORDER ON MOTION TO DISMISS (DKT. NO. 30) - 10

CEMA prohibits marketers from sending commercial e-mails containing "false or misleading information in the subject line" to Washington residents. Wash. Rev. Code § 19.190.020(1)(b). More precisely, CEMA prohibits sending Washington residents commercial e-mails "that contain *any* false or misleading information in the subject lines of such e-mails." *Brown v. Old Navy, LLC,* 567 P.3d 38, 47 (Wash. 2025) (emphasis in original). The Ninth Circuit has interpreted CEMA to permit this type of regulation. *See Virtumundo*, 575 F.3d at 1063 ("The CAN-SPAM Act established a national standard, but left the individual states free to extend traditional tort theories such as claims arising from fraud or deception to commercial e-mail communication.").

The Court concludes CEMA's subject-line provision "falls squarely within this area reserved to the States; it imposes liability for initiating (within Washington or to one of its residents) 'a commercial electronic mail message' that '[c]ontains false or misleading information in the subject line.'" *Harrington v. Vineyard Vines, LLC*, Case No. C25-1115TSZ, 2025 WL 3677479, at *1 (W.D. Wash. Dec. 18, 2025). While mere puffery is not prohibited under CEMA, representations of fact, such as the "duration or availability of a promotion, its terms and nature, the cost of goods, and other facts Washington residents would depend on in making their consumer decisions" are subject to CEMA's subject-line provision. *Id.* (quoting *Brown*, 567 P.3d at 47). Here, Plaintiffs' Amended Complaint alleges Skechers sent Washington residents commercial e-mails with subject lines containing false or misleading statements concerning the duration or availability of sales promotions, "falling directly under CEMA's subject-line provision which fits under the rights reserved to states within the CAN-SPAM Act's savings clause." *Ma v. Nike, Inc.*, 816 F. Supp. 3d 1227, 1231 (W.D. Wash. Jan. 14, 2026).

Defendant relies heavily on the Ninth Circuit's decision in *Virtumundo* and the Fourth Circuit's decision in *Omega* for the proposition that CEMA "is not consistent with, and is preempted by, federal law." (Dkt. No. 30 at 16–19.) Defendant argues Plaintiffs' CEMA claims are pre-empted by CAN-SPAM because they assert, at most, "insignificant inaccuracies" in Defendant's marketing emails and do not allege the kind of traditionally tortious or wrongful conduct that would fall within CAN-SPAM's narrow exception from preemption. (Dkt. No. 30 at 9.) Defendant contends Plaintiffs' Amended Complaint presents Skechers' commercial emails, which utilize common marketing practices and benefit consumers, in an unfairly sinister light. (*Id.* at 7–8.) Defendant argues Plaintiffs' theory would result in marketers being held strictly liable for "false and misleading" assertions any time a sale is extended beyond the time period originally advertised. (*Id.* at 8.)

This argument has been rejected in several similar cases in this district. *See Harrington*, 2025 WL 3677479, at *1 (noting that in *Virtumundo* the Ninth Circuit did not address whether CAN-SPAM preempts the subsection of CEMA at issue here because the plaintiff "failed to identify or describe any specific email or subject line text"); *Kempf v. Fullbeauty Brands Operations, LLC*, Case No. C25-1141-TSZ, 2026 WL 395677 at *4 (W.D. Wash. Feb. 12, 2026) (finding the same and noting the Fourth Circuit's decision in *Omega* concerned an Oklahoma statute that "reach[ed] beyond common law fraud and deceit," and prohibited e-mails that contain "malicious," as opposed to false or misleading, information).

Defendant also asserts that to prevail on their CEMA claim, Plaintiffs must allege the elements of a traditional fraud or deceit claim including: (1) a material misrepresentation; (2) scienter; and (3) reliance and damages. (Dkt. No. 30 at 20–28.) However, Courts in this district have similarly rejected this argument. *See Kempf*, 2026 WL 395677 at *4 (Plaintiffs asserting

ORDER ON MOTION TO DISMISS (DKT. NO. 30) - 12

CEMA claims need not plead these elements because CEMA claims do not sound in fraud); *Ma*, 816 F. Supp. 3d at 1231–1232 ("'[B]y their plain terms 'falsity' and 'deception' do not equate to common law fraud and Congress would have explicitly used the language of fraud in the CAN-SPAM Act if it intended to limit the [pre-emption] exception to fraud alone.'"); *Isomedia, Inc. v. Spectrum Direct, Inc.*, Case No. C08-1733JLR, 2009 WL 10676391, at *3 (W.D. Wash. May 27, 2009) ("Neither the required elements of a claim under the CAN-SPAM Act, nor the required elements of a claim under CEMA, include all the elements of common law fraud.").

Accordingly, the Court finds CEMA is not pre-empted by the CAN-SPAM Act.

### D.  Rule 9(b) Heighted Pleading Standard

Defendant argues that even if Plaintiffs re-framed their CEMA claim as a traditional fraud-based tort claim, they would fall short of the pleading requirements set forth in Federal Rule of Civil Procedure 9(b), which requires that a party alleging fraud to do so with particularity.  (Dkt. No. 30 at 28–29.)  As discussed above, CEMA claims do not sound in fraud.  However, even if Plaintiffs were required to plead fraud with particularity, the Court finds they have done so sufficiently for the purposes of Rule 9(b).

Under Rule 9(b), allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).  "'Averments of fraud must be accompanied by 'the who, what, when, where, and how" of the misconduct charged.'"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citation omitted).  "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim."

ORDER ON MOTION TO DISMISS (DKT. NO. 30) - 13

*Id.* at 1103.  "In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."  *Id.* at 1103–1104.

Even if the heighted pleading standard of Rule 9(b) applied, Plaintiffs met this standard by pleading the "who, what, when, where, and how" of Defendants' alleged misconduct.  Plaintiffs, Washington residents, allege that between 2022 and 2025, Defendant "blast[ed]" them with commercial emails whose misleading subject lines created a false sense of urgency.  (Dkt. No. 28 at 2, 7–10.)  Taking these allegations as true, they are sufficient to "give [Defendant] notice of the particular misconduct which is alleged to constitute the fraud charged[.]"  *Bly-Magee*, 236 F.3d at 1019.  Accordingly, the Court finds Plaintiffs have satisfied Rule 9(b)'s particularity requirement.

**E.  CPA Claim**

Defendant argues that because Plaintiffs' CEMA claims fail as a matter of law, their CPA claims, which are grounded in CEMA violations, necessarily fail.  (Dkt. No. 30 at 30.)  However, because Plaintiffs CEMA claims survive, their CPA claims do as well.

**IV.   ORDER**

For the reasons discussed above, the Court DENIES Defendant's motion to dismiss (Dkt. No. 30.)

Dated this 19th day of May, 2026.



David G. Estudillo
United States District Judge

ORDER ON MOTION TO DISMISS (DKT. NO. 30) - 14