UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHEN LISS and BONI MELCHOR, on their own behalf and on behalf of all others similarly situated, | No. 3:25-cv-05861-DGE |
| Plaintiffs, | Honorable Judge David G. Estudillo |
| v. | PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION |
| SKECHERS U.S.A. INC., | |
| Defendant. | |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION (No. 3:25-CV-05861-DGE) – i

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

## TABLE OF CONTENTS

I.     CONTENTS .......................................................................................................................2

II.    INTRODUCTION ...........................................................................................................1

III.   BACKGROUND .............................................................................................................1

    A.    Plaintiffs' Enrollment and Engagement in Skechers Plus .......................................2

    B.    2021 Loyalty Program Terms & Conditions ............................................................2

    C.    Skechers' 2025 Modification of Terms & Conditions .............................................3

    D.    2025 Loyalty Progam Terms & Conditions .............................................................5

IV.    ARGUMENT ...................................................................................................................6

    A.    Skechers Waived Any Right to Compel Arbitration. ...............................................6

    B.    There Is No Admissible Evidence of Any Contract to Arbitrate. ..........................10

    C.    There Is No Enforceable Contract Here ..................................................................12

        i.    Skechers' Notice of the 2021 Terms Was Insufficiently Conspicuous. ..................................................................................................13

        ii.    Skechers Did Not Provide Plaintiffs with Notice of the 2025 Terms ........17

    D.    Any Enforceable Contract Under the 2021 or 2025 Terms Does Not Reach Plaintiffs' Claims. ..................................................................................................22

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION (No. 3:25-CV-05861-DGE) – ii

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abu-Lughod v. Calis*,
2015 WL 12746198 (C.D. Cal. May 20, 2015) ...........................................................................11

*Apexxus LLC v. OptumRx, Inc.*,
2025 WL 3707249 (N.D. Cal. Dec. 22, 2025) .............................................................................20

*Armstrong v. Michaels Stores, Inc.*,
59 F.4th 1011 (9th Cir. 2023) .................................................................................6, 9, 10

*Ash v. Axos Bank*,
2024 WL 4195313 (S.D. Cal. Sept. 13, 2024) ...........................................................................18

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ...........................................................................14, 15, 16, 18

*Burnett v. Pagliacci Pizza, Inc.*,
196 Wn.2d 38 (2020) ...........................................................................................................14

*Cavlovic v. J.C. Penney Corp., Inc.*,
884 F.3d 1051 (10th Cir. 2018) .................................................................................................26

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) ...........................................................................14, 15, 16, 17

*Close v. Penney Opco LLC*,
787 F. Supp. 3d 1166 (W.D. Wash. 2025)...........................................................17, 25, 26

*Cooper v. Agrify Corp.*,
2022 WL 2374587 (W.D. Wash. June 2, 2022)...........................................................................14

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ...........................................................................17, 19

*Eiess v. USAA Fed. Sav. Bank*,
404 F. Supp. 3d 1240 (N.D. Cal. 2019) ...........................................................................23

*Franco v. Greystone Ridge Condo.*,
39 Cal. App. 5th 221 (Ct. App. 2019)...........................................................................18

*Golden Eagle Ins. Co. v. Foremost Ins. Co.*,
20 Cal.App.4th 1372 (1993) ...........................................................................................22

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION (No. 3:25-CV-05861-DGE) – iii

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*Goudarzi v. J.P. Morgan Chase Bank N.A.*,
  2025 WL 3187196 (W.D. Wash. Nov. 14, 2025) ....................................................................11

*Ingalls v. Spotify USA, Inc.*,
  2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) .......................................................................23

*Ireland-Gordy v. Tile, Inc.*,
  2026 WL 594859 (9th Cir. Mar. 3, 2026)..................................................................20, 21, 22

*Jackson v. Amazon.com, Inc.*,
  559 F. Supp. 3d 1132 (S.D. Cal. 2021).........................................................................11, 13

*Jackson v. Amazon.com, Inc.*,
  65 F.4th 1093 (9th Cir. 2023) ...................................................................................... *passim*

*Karpenski v. Am. Gen. Life Companies, LLC*,
  999 F. Supp. 2d 1218 (W.D. Wash. 2014)..............................................................................13

*Kater v. Churchill Downs Downs Inc.*,
  2018 WL 5734656 (W.D. Wash. Nov. 2, 2018) .......................................................................9

*Keebaugh v. Warner Bros. Ent. Inc.*,
  100 F.4th 1005 (9th Cir. 2024) .....................................................................................15, 17

*Kelly v. Pub. Util. Dist. No. 2 of Grant Cnty.*,
  552 F. App'x 663 (9th Cir. 2014) ......................................................................................7, 9

*Knutson v. Sirius XM Radio Inc.*,
  771 F.3d 559 (9th Cir. 2014) .........................................................................................13, 14

*Kuhk v. Playstudios Inc.*,
  2024 WL 4529263 (W.D. Wash. Oct. 18, 2024) ...................................................................16

*Lainer v. Uber Techs., Inc.*,
  2016 WL 7444925 (C.D. Cal. May 11, 2016) .......................................................................27

*Lampo v. Amedisys Holding, LLC*,
  445 S.C. 305 (2025)........................................................................................................22, 23

*Las Vegas Sands, LLC v. Nehme*,
  632 F.3d 526 (9th Cir. 2011) ................................................................................................12

*Leo Middle E. FZE v. Zhang*,
  2022 WL 207663 (N.D. Cal. Jan. 24, 2022) ...........................................................................9

*Magill v. Wells Fargo Bank*, N.A.
  2021 WL 6199649 (N.D. Cal. June 25, 2021) ......................................................................23

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION (No. 3:25-CV-05861-DGE) – iv

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*Martin v. Yasuda*,
   829 F.3d 1118 (9th Cir. 2016) ................................................................................ *passim*

*In Re Mirant Corp. v. Castex Energy, Inc.*,
   613 F.3d 584 (5th Cir. 2010) ............................................................................................7

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022) .........................................................................................................6

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ...................................................................................10, 13

*Norcia v. Samsung Telecommunications Am., LLC*,
   845 F.3d 1279 (9th Cir. 2017) ........................................................................................22

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) ...........................................................................................17

*Platt v. Sodexo, S.A.*,
   148 F.4th 709 (9th Cir. 2025) .........................................................................................20

*Rader v. Nw. Fed. Credit Union*,
   2024 WL 388097 (E.D. Va. Feb. 1, 2024)......................................................................21

*Ramos v. Super. Ct.*,
   239 Cal. Rptr. 3d 679 (2018) ..........................................................................................25

*Saeedy v. Microsoft Corp.*,
   757 F. Supp. 3d 1172 (W.D. Wash. 2024)......................................................................17

*Sapan v. Directv, LLC*,
   2023 WL 5505914 (C.D. Cal. June 9, 2023) .............................................................26, 27

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
   666 F. Supp. 3d 1089 (C.D. Cal. 2023) ..........................................................................17

*Sevier County Schools Federal Credit Union v. Branch Banking & Trust Co.*,
   990 F.3d 470 (6th Cir. 2021) ..........................................................................................23

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) .....................................................................................25, 27

*Specht v. Google Inc.*,
   747 F.3d 929 (7th Cir. 2014) .....................................................................................10, 12

*Trans-Tec Asia v. M/V Harmony Container*,
   518 F.3d 1120 (9th Cir. 2008) ........................................................................................11

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION (No. 3:25-CV-05861-DGE) – v

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*United States v. Bansal*,
663 F.3d 634 (3d Cir. 2011)............................................................................................11

*United States v. Gasperini*,
894 F.3d 482 (2d Cir. 2018)............................................................................................11

*United States v. Puerta*,
982 F.2d 1297 (9th Cir. 1992) .......................................................................................13

*Van Ness Townhouses v. Mar Indus. Corp.*,
862 F.2d 754 (9th Cir. 1988) ......................................................................................7, 8

*Victoria v. Super. Ct.*,
710 P.2d 833 (Cal. 1985) .........................................................................................10, 18

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022)........................................................................................................13

*Weinhoffer v. Davie Shoring, Inc.*,
23 F.4th 579 (5th Cir. 2022) .....................................................................................11, 12

*Whalen v. NBA Props., Inc.*,
2025 WL 1948591 (N.D. Cal. July 16, 2025)................................................................16

*White v. PayPal Holdings Inc.*,
821 F. Supp. 3d 1058 (N.D. Cal. 2026) .........................................................................15

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
25 Cal. App. 3d 987 (Ct. App. 1972)..............................................................................14

*Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*,
122 Wash.2d 371 (Wash. 1993).....................................................................................13

**Statutes**

Restatement (Second) of Contracts § 19(2) (Am. Law Inst. 1979) ..............................23

**Rules**

Fed. R. Evid. 901(a)........................................................................................................11

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION (No. 3:25-CV-05861-DGE) – vi

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

## I.    INTRODUCTION

This is a case about Defendant Skechers U.S.A. Inc.'s ("Skechers") persistent practice of spamming consumers, like Plaintiffs, with marketing emails that falsely or misleadingly misrepresent the availability of its promotions through subject headings designed to trigger the consumer's urge to take advantage of good pricing—and *ultimately*, to purchase its products. *See generally* Dkt. 28 (Am. Compl.").

This case is *not* about any loyalty program maintained by Skechers. There are no allegations about the operation of "Skechers Plus" (*i.e.* point accrual, rewards, tier status) or its Terms that allegedly govern membership. Plaintiffs do not raise a claim for breach of the Terms, or even, deceptive advertising of program benefits. Skechers' loyalty program is not part of this case.

Nonetheless, after nearly eight months of litigating in federal court, filing two motions to dismiss and losing its bid for Rule 12 dismissal, Skechers now seeks to roll up the Complaint and squeeze it into the square hole of its arbitration clauses that have nothing to do with this CEMA matter. But Skechers' efforts fail here too. Its evidence is flawed; there is no enforceable contract with Plaintiffs; and the 2021 and 2025 Terms do not encompass this case about its deceptive marketing emails. And anyway, Skechers' failure to bring the Motion until after it had "actively litigat[ed] [its] case to take advantage of being in federal court"—and *lost*—means it has waived any right to enforce those clauses in the first place. *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Its Motion should be denied.

## II.    BACKGROUND

In support of its Motion, Skechers proffers evidence of Plaintiffs' membership in its Loyalty Program ("Skechers Plus") as well as their alleged assent to associated contractual terms.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION (No. 3:25-CV-05861-DGE) – 1

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

Dkt. 46 ("Mot."), 2-7. Its evidence does not stand for the propositions it advances here.

### A. Plaintiffs' Enrollment and Engagement in Skechers Plus

To demonstrate notice and assent to the Terms of its Skechers Plus Program, Skechers submits two screenshots, "archived by the WayBack Machine," purportedly showing the Skechers Plus online "registration form" utilized in 2021 and 2023. Dkt. 47 ("Martinho Dec."), ¶¶ 5-6, Exs. 1-2. Its declarant, however, proffers no particularized knowledge regarding the forms that were used in those years, *see generally id.*, instead making a conclusory assertion that the pop-up forms "accurately depict[ ]" those that existed in March 2021 and October 2023. *Id.* at ¶¶ 5-6.

Next, Skechers offers evidence of Plaintiffs' purported engagement—evidence which shows, in fact, that they have not engaged in the program to any material degree. Outside of Plaintiff Melchor's enrollment on March 25, 2021 and Plaintiff Liss' enrollment on October 13, 2023. Declaration of Danny Tran (filed under seal, redacted at Dkt. 56) (hereafter, "Tran Decl."), ¶¶ 4, 11, Skechers offers no evidence that either Plaintiff has engaged regularly with the benefits of the Program. Plaintiff Liss appears to have not engaged in the Program beyond the initial action of checking a box to join. *See id.* at ¶¶ 11-16. And while Plaintiff Melchor did make two online purchases, Skechers puts forth no evidence that, for example: she logged into her Skechers Plus account, received points or rewards for the purchases, or used points to purchase. *Id.* at ¶ 10.

### B. 2021 Loyalty Program Terms & Conditions

Skechers applies its unilaterally drafted form agreement ("Terms & Conditions" or "Terms") to consumers who enroll in its Loyalty Program through an online pop-up notice. When Plaintiffs enrolled in the Program, the 2021 version of Skechers' Terms was in effect. Martinho Dec., ¶¶ 9-11; *see also* Dkt. 47-3 (Ex. 3) ("2021 Terms"). As made clear in the first paragraph of the 2021 Terms, the scope is limited to "participation in Skechers Plus":

> Welcome to the Skechers Plus loyalty program ("Skechers Plus"). Skechers Plus is organized by Skechers U.S.A., Inc. ("Skechers", "we" or "us") and these Terms and Conditions (the "Terms") govern your participation in Skechers Plus. Please read these Terms carefully. By participating in Skechers Plus, you agree to be bound by these Terms.

Ex. 3, SKECHERS17. Indeed, the entirety of the 2021 Terms regards matters directly emanating from a consumer's participation in the Loyalty Program. *See generally id.* (nine of 10 numbered subject matters regard the Program, *e.g.*, "Eligibility," "Joining Skechers Plus," "Expiration of Points," "Program Tiers," "Rewards and Benefits"). This same scope is incorporated into the cursory mention of dispute resolutions, in the provision titled "legal conditions":

> THESE TERMS AND SKECHERS PLUS ARE GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. ANY DISPUTE ARISING FROM THESE TERMS OR IN CONNECTION WITH SKECHERS PLUS SHALL BE RESOLVED BY BINDING ARBITRATION IN LOS ANGELES, CALIFORNIA. BY AGREEING TO BINDING ARBITRATION, EACH PARTY UNDERSTANDS THAT THEY EACH FOREVER GIVE UP AND WAIVE ANY RIGHT WHICH EACH PARTY MAY HAVE TO RESOLVE ANY SUCH DISPUTE BY COURT OR JURY TRIAL.

Ex. 3, SKECHERS22.

The 2021 Terms additionally include a change-of-terms provision, buried between several other topics, *e.g.*, membership cancellation, restarting membership, administration of Skechers Plus, and waiver. The unilateral modification language states:

> Skechers reserves the right to change or cancel any aspect of Skechers Plus, at any time. If we change these Terms, we will give you notice by posting the new Terms here. Those changes will go into effect on the Revision Date shown in the revised Terms. By continuing to participate in Skechers Plus, you are agreeing to the revised Terms.

Ex. 3, SKECHERS21.

### C. Skechers' 2025 Modification of Terms & Conditions

Skechers asserts that it changed its Loyalty Program Terms & Conditions "on or about January 14, 2025." Martinho Dec., ¶ 16; *see also* Dkt. 47-4 (Ex. 4) ("2025 Terms"). It notified

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 3

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

Program members through emails which contained messaging that "varied depending on a customer's loyalty tier status." *Id.* at ¶ 20. Of these form emails sent to Program members, it asserts that it sent an email titled "Important Update About Your Skechers Plus Benefits" to Plaintiff Melchor on or around January 26, 2025, evidenced by this form email:

Tran Dec., ¶¶ 8-9. Likewise, on or around February 9, 2025, Skechers purportedly sent an email to Plaintiff Liss, stating in the subject heading, "We've Updated Our Skechers Plus Terms and Conditions," evidenced by this form email:

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 4

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

### D. 2025 Loyalty Program Terms & Conditions

While the 2025 Loyalty Program Terms & Conditions ("2025 Terms") add language focused primarily on legal matters, the language limiting the scope of the purported agreement to participation in the Loyalty program is materially unchanged from the 2021 Terms:

> **Skechers Plus Terms and Conditions**
> **Revised: January 14, 2025**
> Welcome to the Skechers Plus loyalty program ("Skechers Plus" or the "Program"). Skechers Plus is organized by Skechers U.S.A., Inc. ("Skechers," "we," or "us") and these Terms and Conditions (the "Terms") govern your participation in Skechers Plus. Please read these Terms carefully. By participating in Skechers Plus, you agree to be bound by these Terms.

Ex. 4, SKECHERS23. As with the 2021 Terms, the vast majority of provisions in the 2025 Terms are limited to matters directly emanating from a consumer's participation in the Loyalty Program. There is more detail regarding legal matters, *i.e.* arbitration, venue, severability, etc. But the substance of the asserted contract remains centered on consumers' engagement in the Loyalty Program. *See generally id.* (listing the same nine Program-oriented topics, *e.g.*, "Eligibility," "Joining Skechers Plus," "Expiration of Points," "Program Tiers," "Rewards and Benefits"). This scope is incorporated into the updated language on arbitration and class waiver:

> **11.    MANDATORY ARBITRATION. NO CLASS ACTIONS.**
> You agree to submit any and all disputes, claims or controversies arising out of or relating to your Membership in Skechers Plus, or any related services or products purchased or received, to the American Arbitration Association ("AAA"), or its successor, for confidential mediation, except that you may assert claims or seek relief in small claims court if your claims qualify, and if the matter is not resolved through mediation, then to AAA, or its successor, for final and binding arbitration. All arbitrations must proceed on an individual basis, and you hereby waive the right to assert or participate in a class action arbitration, and to assert or participate in any joint or consolidated arbitration of any kind.

Ex. 4, SKECHERS27.

And again, nothing in the 2021 or 2025 Terms informs consumers that by joining a shoe retailer's rewards program they have surrendered their statutory right to pursue claims based on that retailer's future deceptive conduct.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 5

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

## III.    <u>ARGUMENT</u>

In this case about Defendant's deceptive marketing emails, where the Court issued a wholesale denial of Rule 12 dismissal, Skechers seeks to enforce a reward program contract against Plaintiffs that has nothing to do with their claims that its false-scarcity marketing messages violate CEMA. While Skechers wants its Motion to come under old presumptions regarding federal construction of contractual arbitration clauses, the Ninth Circuit and the Supreme Court recently made clear, "there is no 'strong federal policy favoring enforcement of arbitration agreements.' The federal policy is to treat arbitration agreements like other contracts." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023) (construing and quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 416 (2022)). And here, under ordinary principles of contract, Skechers' Motion fails.

### A.  Skechers Waived Any Right to Compel Arbitration.

To begin with, Skechers cannot seek a dispositive decision in this Court—holding its arbitration defense in abeyance—and then, after losing, attempt to exit through the arbitration door. Courts take a "dim view" of parties, like Skechers, who first try their chances with federal litigation, and after a loss, look for a different result in arbitration. Skechers has acted inconsistently with any known, existing right to pursue arbitration, and thereby waived that right.

While there is "no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate," the Ninth Circuit is clear that "a party's extended silence and delay in moving for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which would be inconsistent with a right to arbitrate." *Martin*, 829 F.3d at 1125 (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988)) (collecting cases). This "element [is] satisfied when a party chooses to

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION (No. 3:25-CV-05861-DGE) – 6

delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court." *Id. See, e.g.*, *Van Ness*, 862 F.2d at 759 (waiver where "Shearson acted inconsistently with its known existing right to arbitrate those claims," by "litigat[ing] actively the entire matter—including pleadings, motions, and approving a pre-trial conference order"); *Kelly v. Pub. Util. Dist. No. 2 of Grant Cnty.*, 552 F. App'x 663, 664 (9th Cir. 2014) ("PUD and Port waited eleven months after the lawsuit was filed to demand arbitration, actively litigating the case in district court. . . . inconsistent with preserving the right to compel arbitration."); *In Re Mirant Corp. v. Castex Energy, Inc.*, 613 F.3d 584, 591 (5th Cir. 2010) ("A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court.").

*The facts are clear*: Plaintiffs filed this case on August 19, 2025 in state court (Dkt. 1-2); Defendant removed on September 22, 2025 (Dkt. 1); Defendant filed a Motion to Dismiss the Complaint on October 14, 2025 (Dkt. 21); and again, after Plaintiffs filed the Amended Complaint, Defendant moved to dismiss, on November 18, 2025 (Dkt. 30), which the Court denied on May 19, 2026 (Dkt. 42). Only after Defendant had filed two motions to dismiss, the Joint Status Report (Dkt. 34) and a response to the Order to Show Cause (Dkt. 36) did it file the present Motion to Compel Arbitration on May 11, 2026, nearly eight months after it removed the case to this Court.

This conduct is precisely the sort that courts forbid, *i.e.* seeking advantage in federal court, through removal and motions on the pleadings, and, once defeated, turning to a different forum. It rather "indicate[s] a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which [is] inconsistent with a right to arbitrate." *Martin*, 829 F.3d at 1125. Skechers misunderstands waiver in this context, pointing to *mentions* of arbitration, in discovery conferrals and during a status conference, for the assertion that it has not acted inconsistently with

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 7

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

its purported right. Mot., 7-9, 22-24. But a handful of references to "arbitration" does not mitigate against its "conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims." *Martin*, 829 F.3d at 1125. The question is whether Skechers "acted inconsistently with its known existing right to arbitrate [the] claims," by "litigat[ing] actively the entire matter," *Van Ness*, 862 F.2d at 759, a question that its conduct answers in the affirmative.

Nor can Skechers rely on its own delay, till February 2026, in seeking Plaintiffs' email addresses as evidence of its lack of knowledge of its right to arbitrate. Mot., 7-9, 22-25. First, its own evidence demonstrates that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████. And of course, Skechers could have sought Plaintiffs' email addresses as early as September 2025, after it was well-aware of the allegations in the case; the two named Plaintiffs; and that it would attempting to litigate in federal court. *See* Declaration of Lynn A. Toops ("Toops Dec."), attached hereto, ¶¶ 3-4 (defendants often seek named plaintiffs' email addresses early in CEMA cases, prior to the start of discovery; it is the courtesy and practice of counsel to provide it). Instead, Skechers sought Plaintiffs' emails several months after it filed *two* motions to dismiss. Its actions do not comport with its excuses.

Rather, Skechers' conduct appears more like the prohibited conduct of "choos[ing] to delay [the] right to compel arbitration by actively litigating his case to take advantage of being in federal court." *Martin*, 829 F.3d at 1125. As the court discussed in *Leo Middle E. FZE v. Zhang*, 2022 WL 207663 (N.D. Cal. Jan. 24, 2022), "[l]itigating motions to dismiss instead of requesting that the matter go to an arbitrator is inconsistent with a desire to arbitrate." *Id.* at *4 (citing *Kelly*, 552 F. App'x at 664). Here, as in *Leo Middle*, the *two* motions to dismiss "did not contain any jurisdictional arguments or request that the matter move to arbitration," and "only after the court

denied dismissal did [Defendant] attempt[ ] to compel arbitration." *Id.* "Courts have long taken a dim view of [parties] who compel arbitration after receiving an unfavorable order." *Id.* (citation and quotations omitted). *See, e.g.*, *Kater v. Churchill Downs Downs Inc.*, 2018 WL 5734656, at *4 (W.D. Wash. Nov. 2, 2018) (citing *Martin*, 829 F.3d at 1125) (where defendant "made extensive use of the federal judicial system to determine its liability to [plaintiff]" it waived right to arbitrate).

Moreover, Skechers' begrudging engagement in discovery further demonstrates its willingness to engage in federal litigation until the point when it is no longer advantageous. Toops Dec., ¶¶ 5-6 (Defendant has solely produced 31 pages of documents and information, evidence submitted in support of this Motion to Compel). So, Skechers *wanted* to afford itself the advantages of federal litigation up to the point when it lost, and after that, it has sought to (again) remove this case to a different forum, while hoping it can indefinitely stay this case (Dkt. 40). This is the very engagement, "after receiving an unfavorable order," disfavored by courts. *Leo Middle*, 2022 WL 207663, at *4.

Nor is this case akin to *Armstrong*, cited by Skechers, where the defendant *pled* arbitration as a defense in its *answers* to "both the original complaint and amended complaint," while reiterating the *pled* defense in its case management statements and at the initial court conference, then moving for arbitration "promptly after" the Supreme Court issued a dispositive decision on the plaintiff's arbitrable claim. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). Skechers did not *answer* the Complaint or Amended Complaint; it litigated the complaints. Its conduct is more akin to *Martin*, where it has "litigated in federal court for" nearly a year, "filed a motion to dismiss 'on [several] key merits issue[s]" and received an adverse ruling before moving to compel arbitration." *Id.* at 1015-16 (quoting *Martin*, 829 F.3d at 1126).

Skechers delayed its known, asserted right to arbitrate until it lost in this forum. It has

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 9

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

waived any right to try its luck in arbitration.

### B.  There Is No Admissible Evidence of Any Contract to Arbitrate.

On this Motion which would deprive Plaintiffs of their chosen forum, Skechers' evidence of the notices by which it purports to prove their assent to its 2021 Terms is patently insufficient. *See Specht v. Google Inc.*, 747 F.3d 929, 933 (7th Cir. 2014) (upholding exclusion of "screenshots of certain client websites as they supposedly appeared in 2005," where court "required authentication by someone with personal knowledge of reliability of the archive service from which the screenshots were retrieved"). Indeed, the "onus must be on" Skechers as to its Notices— as the "website owner[ ] [required] to put users on notice of the terms to which they wish to bind consumers." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023) ("[B]urden is on Amazon as the party seeking arbitration to show that it provided notice [ ] and that there was mutual assent to the contractual agreement to arbitrate.") (citing *Victoria v. Super. Ct.*, 710 P.2d 833, 838 (Cal. 1985)); *see also Goudarzi v. J.P. Morgan Chase Bank N.A.*, 2025 WL 3187196, at *4 (W.D. Wash. Nov. 14, 2025) (same under Washington law).[1]

Here, Skechers has introduced two screenshots from the "WayBack Machine," and on that basis alone, it asserts the screenshots are "accurate depictions" of the Notices to which Plaintiffs' allegedly manifested assent to its 2021 Terms, specifically in the months of March 2021 and October 2023. *See supra* Section II(A). But WayBack Machine screenshots are neither within the affiant's personal knowledge nor taken from Skechers' business records. *Contra* Martinho Decl. ¶

---

[1] Skechers appears to rely on California law, in accordance with the choice-of-law provision in its Terms. *But see Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008) (court determines what law governs contract formation "as if there were no choice of law clause"). While Plaintiffs wholly disagree that they are bound by the Terms, including any choice-of-law clause, Plaintiffs acknowledge that "[t]he laws of contract formation of Washington [ ] and California law are materially the same." *Jackson v. Amazon.com, Inc.*, 559 F. Supp. 3d 1132, 1138 (S.D. Cal. 2021), *aff'd,* 65 F.4th 1093 (9th Cir. 2023).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 10

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

1 ("The statements set forth in this Declaration are based on either my personal knowledge or on my review of Skechers' business records."). They are therefore unauthenticated and inadmissible. *See, e.g.*, *United States v. Bansal*, 663 F.3d 634, 667–68 (3d Cir. 2011) (sufficient under Fed. R. Evid. 901(a) where witness *with personal knowledge* testified "about how the Wayback Machine website works and how reliable its contents are" and "also compared the screenshots with previously authenticated and admitted images from Bansal's website and concluded. . . the screenshots were authentic"); *United States v. Gasperini*, 894 F.3d 482, 490 (2d Cir. 2018) (crediting testimony from employee of "Internet Archive," *i.e.* Wayback Machine, who "compared the screenshots sought to be admitted with true and accurate copies of the same websites maintained in the Internet Archive, and testified that the screenshots were authentic and accurate copies of the Archive's records"); *Abu-Lughod v. Calis*, 2015 WL 12746198, at *2 (C.D. Cal. May 20, 2015) (authentication requires affiant with personal knowledge that Wayback Machine "operates to create an unaltered copy of a website as it appears on a given day"). *Cf. Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 584 (5th Cir. 2022) ("Our sister circuits' decisions that the Wayback Machine is not self-authenticating are persuasive in the context of judicial notice. In sum, the district court erred in taking judicial notice of the terms because a private internet archive falls short of being a source whose accuracy cannot reasonably be questioned[.]").

Nor is it sufficient that Ms. Martinho attested that the proffered pop-up notice screenshots are "accurate." Marinho Dec., ¶¶ 5-6. This is not an attestation to *personal knowledge* regarding the form and content of the online notices in March 2021 and October 2023. While Ms. Martinho attested to personal knowledge regarding the "visual appearance and content of our consumer-facing interface over time," *id.* at ¶ 2, this does not authenticate that the submitted notices "accurately depict" those purportedly shown to Plaintiffs at delineated moments in time—a

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 11

material matter on which Skechers' Motion turns. Rather, "[a] document authenticated through personal knowledge must be attached to an affidavit, and *the affiant must be a competent witness who wrote* [*the document*]*, signed it, used it, or saw others do so.*" *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532–33 (9th Cir. 2011) (citation omitted) (emphasis added). "[W]here exhibits are introduced by being attached to an affidavit [ ] a person [with] personal knowledge is essential to establish the document is what it purports to be—that it is authentic." *Id.*

Notably, in *Specht*, as here, the plaintiff asserted that unauthenticated screenshots were "admissible because the creators of the sites asserted from memory that the screenshots reflected how those sites appeared in 2005," but the Seventh Circuit admonished that "memory [ ] is fallible," and it was proper under Rule 901 to "require[ ] authentication by someone with personal knowledge of reliability of the archive service from which the screenshots were retrieved." 747 F.3d at 933. Likewise, Ms. Marinho's recollection regarding these pop-up notices—without which Skechers cannot enforce its 2021 Terms, or thereby, its 2025 Terms, against Plaintiffs—is not sufficient authentication, particularly where she *has not* attested to personal knowledge of how the pop-up notices appeared in March 2021 and October 2023,

Because the "onus" is on Skechers to demonstrate the terms of the purported agreement between itself and Plaintiffs, *Nguyen*, 763 F.3d at 1179, its failure to properly introduce evidence of the 2021 and 2023 online notices is alone fatal to its Motion.[2]

### C.  There Is No Enforceable Contract Here.

"The Supreme Court has emphasized the necessity of consent in the arbitration context, stating: 'parties cannot be coerced into arbitrating a claim, issue, or dispute absent an affirmative

---

[2] Nor should Skechers be permitted to correct its evidentiary errors on Reply. *See, e.g.*, *Karpenski v. Am. Gen. Life Companies, LLC*, 999 F. Supp. 2d 1218, 1226 (W.D. Wash. 2014) ("[A] movant may not raise new facts or arguments in his reply brief." (citation and quotations omitted)) (citing, *e.g.*, *United States v. Puerta*, 982 F.2d 1297, 1300 n.1 (9th Cir. 1992)).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 12

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

contractual basis for concluding that the party agreed to do so.'" *Jackson*, 65 F.4th at 1098–99 (quoting *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 660 (2022)). *See also Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

Mutual assent is required under both California and Washington law. *Jackson*, 559 F. Supp. 3d at 1139 (citing *Knutson*, 771 F.3d at 565); *see Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wash.2d 371, 388 (Wash. 1993)). It may be "manifested by written or spoken words," or "implied through action or inaction," thus, "[c]ourts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Knutson*, 771 F.3d at 565 (citations omitted) (California law).

However, "[a]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id*. at 566 (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (Ct. App. 1972)). "If a party wishes to bind in writing another to an agreement to arbitrate future disputes, such purpose should be accomplished in a way that each party to the arrangement will fully and clearly comprehend that the agreement to arbitrate exists and binds the parties thereto." *Id*. (citation omitted); *see also Cooper v. Agrify Corp.*, 2022 WL 2374587, at *2 (W.D. Wash. June 2, 2022) ("Under Washington law, the existence of mutual assent or a meeting of the minds is a question of fact which can be resolved by the court *only where the evidence permits only one reasonable conclusion*" (citing, *e.g., Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 48 (2020)) (emphasis added).

### i. Skechers' Notice of the 2021 Terms Was Insufficiently Conspicuous.

"Although we have experienced a technological revolution in the way parties communicate, technological innovation has not altered [the] fundamental principles of contract

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 13

formation." *Jackson*, 65 F.4th at 1099 (citation omitted). "[T]o hold [a party] to an arbitration clause [the court] must discern whether [they] entered into such a contract in the first place." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1153–54 (9th Cir. 2025) (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)). Here, that question turns on the sufficiency of Skechers' 2021 Notice.

"In the world of internet contracts, there are browsewrap, clickwrap, scrollwrap, and sign-in wrap agreements, each of which purport to bind users through different 'assent' mechanisms."[3] *Id.* at 1154 (citation omitted). As Defendant recognizes (Mot., 4), the unauthenticated pop-up notices attached to its Motion constitute sign-in wrap, which "lives somewhere in the middle" between unenforceable browsewrap and enforceable clickwrap, through notice that "provide[s] a link to terms of use and indicate[s] that some action may bind the user but does not require that the user actually review those terms." *Id. See also White v. PayPal Holdings Inc.*, 821 F. Supp. 3d 1058, 1066 (N.D. Cal. 2026) ("In a sign-in wrap agreement, a user is notified of the existence of the website's terms of use and advise[d] that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service." (citation omitted)). Put another way, sign-in wrap—unlike clickwrap—depends not only on the consumer to *see and comprehend* the purported notice of contractual terms; it requires further action to click and review those terms in the first place, as well as some other, not obviously contractual act (like signing in) to manifest the consumer's assent to those terms.

As the Ninth Circuit emphasizes, "[w]ebsite users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be

---

[3] Given the prevalence of contracts on the Internet, it is easy to get lost in the weeds of the innumerable varieties of "wraps" and the different means of deception employed by web designers to distract a consumer. But what is important here is the traditional notion in contract law of true assent and a meeting of the minds.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 14

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

prominently displayed, not buried in fine print." *Berman*, 30 F.4th at 857. So: "[l]ike all online contracts," "a sign-in wrap agreement may be an enforceable contract based on inquiry notice if (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that *unambiguously* manifests his or her assent to those terms." *White*, 821 F. Supp. 3d at 1065-66 (citation omitted) (emphasis added). "To be conspicuous," the notification of assent "'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Chabolla*, 129 F.4th at 1155 (quoting *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024)).

So, presentation matters. And of note here, courts look to "how [the] design elements appear on the page" to determine whether notice was sufficiently conspicuous. *Chabolla*, 129 F.4th at 1157. Here, the elements of Skechers' purported notices are clearly designed to *deemphasize* notice that clicking the button means assent to Skechers' Terms. Martinho Dec., ¶¶ 5-6. In both Notices, the consumer is presented with a pop-up titled, "Create Account" in bolded, large font. *Id.* Directly under this header are several boxes for taking action (*i.e.* inputting information) followed by further action-oriented check boxes (in large font) regarding text and email updates. *Id.* Then, as an afterthought, squeezed between the check boxes and the large blue button that says **JOIN NOW** (in white, bolded font), Skechers informs consumers in tiny font that, by clicking the button, they "agree" to the "terms & conditions" (without any capital letters). *Id.* Thus, Skechers directs the flow of the consumer's attention *away* from the notice language and *toward* the activity of joining its program: from entry of personal information, to checking (or not) membership options, to the landing button: "JOIN NOW."

This presentation—sandwiched between emphasized content—deemphasizes the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 15

purported offer to contract, including because it is *not* "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Chabolla*, 129 F.4th at 1155. As in *Berman*, this notice language is "the antithesis of conspicuous," where it is "printed in a tiny gray font considerably smaller than the font used in the surrounding website elements," and where "[t]he comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else." 30 F.4th at 856–57; *see also Kuhk v. Playstudios Inc.*, 2024 WL 4529263, at *6 (W.D. Wash. Oct. 18, 2024) (same).[4]

Nor is it enough that Skechers' "Terms of Use" is in blue font, where the font itself is tiny, deemphasized by surrounding information, and listed just above a button that *does not* invite the user to "AGREE" or "AFFIRM" or "ASSENT," but rather tells users to "JOIN NOW." *Chabolla*, 129 F.4th at 1156-57 (while "use of a blue font" to indicate the Terms of Use "can be reasonably conspicuous. . . there is no bright-line test for finding that a particular design element is adequate in every circumstance"). *See Close v. Penney Opco LLC*, 787 F. Supp. 3d 1166, 1174 (W.D. Wash. 2025) ("[E]ven close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." (citation omitted)); *see also Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1096 (C.D. Cal. 2023) ("Here, the text stating that the user agrees to Defendant's terms of use is in a smaller font than both the 'Sign Up' button and the line for account-holders to sign in.") (analyzing sign-in wrap).

Finally, because Skechers is asking the Court to enforce a term against Plaintiffs on the basis of a one-time "JOIN NOW" click, its citation to *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th

---

[4] This likewise distinguishes Skechers' Notice from *Whalen*, cited by Defendant. There, the online button for manifesting assent actually stated: "Agree and Subscribe," supported by language situated above it that indicated "agree" meant the consumer was agreement to the "Subscriber *agreement*." *Whalen v. NBA Props., Inc.*, 2025 WL 1948591, at *5 (N.D. Cal. July 16, 2025). There, the *button language itself* made clear that, by clicking it, a consumer was agreeing and subscribing; here, at most, a reasonable consumer could be expected to know that she is "joining."

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 16

505 (9th Cir. 2023) is unavailing. In *Oberstein*, consumers were given notice "[a]t three independent stages—when creating an account, signing into an account, and completing a purchase, [through] a confirmation button above which text informs the user that, by clicking on this button, 'you agree to our Terms of Use.'" *Id.* at 515 (case on behalf of ticket purchasers).[5] There, consumers had three clear notices that clicking a button not labeled "I agree" in fact meant "I agree." Here, Plaintiffs had one muddled "join now" notice.

Skechers failed to provide sufficiently conspicuous notice of assent through its sign-in wrap, which deemphasizes the fine-print notice of acceptance, and emphasizes "**JOIN NOW**" as the next step for engagement. Plaintiffs were "entitled to assume that important provisions," like Skechers' binding arbitration provision, "[would] be prominently displayed, not buried in fine print." *Berman*, 30 F.4th at 857. The Motion should be denied.

### ii.  Skechers Did Not Provide Plaintiffs with Notice of the 2025 Terms

To the extent the Court finds that Plaintiffs were bound by the 2021 Terms, Skechers must then show that, through its emailed notices regarding the 2025 changes, it "provided notice of [the] new [Terms] and that there was mutual assent to the contractual agreement to arbitrate." *Jackson*, 65 F.4th at 1099 (citing *Victoria*, 710 P.2d at 838). It did not.

"[I]n the context of unilateral modification of an arbitration agreement, the implied covenant of good faith and fair dealing requires an employer to provide reasonable and express

---

[5] Skechers' further case support is distinguishable. In *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1190 (W.D. Wash. 2024), there was space between the other elements and the notice language; the font was only slightly smaller than the font of the button for assent, and in the notice language itself, the title of the button ("Next") was bolded, stating "[c]hoosing **Next** means that you agree. . . ." *Id.*  In *Keebaugh*, the notice language was "conspicuously distinguished from the surrounding text, by a contrasting white font and emphasized through white borders outlining the hyperlinks," whereas here, the text is the same color as the surrounding text, while also being in smaller font. 100 F.4th at 1020–21. In *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020), the notice language was "the only text on the webpage in italics" while also being "located directly below the sign-in button, and the sign-in page was relatively uncluttered." *Id.* at 484. Here, the notice language is only distinguishable from surrounding text by being smaller, and the "sign-in" page is cluttered with entry boxes and check boxes in larger font.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION (No. 3:25-CV-05861-DGE) – 17

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

notice to employees *regarding the applicability of such modifications to already existing claims*." *Ash v. Axos Bank,* 2024 WL 4195313, at *4 (S.D. Cal. Sept. 13, 2024) (quoting *Franco v. Greystone Ridge Condo.*, 39 Cal. App. 5th 221, 232 (Ct. App. 2019) (emphasis original)), *appeal dismissed*, 2025 WL 3754350 (9th Cir. Dec. 29, 2025). Likewise, the "new Restatement of the Law on Consumer Contracts now makes clear," a "consumer must receive a 'reasonable notice of the proposed modified term' and a 'reasonable opportunity to reject the proposed modified term.'" *Jackson*, 65 F.4th at 1100–01 (citing RESTATEMENT OF THE LAW CONSUMER CONTRACTS § 3, AM. L. INST., Tentative Draft No. 2 (June 2022). Neither has been provided here.

Skechers' purported email notices did not provide "reasonable" or "express" notice of the modifications made in the 2025 Terms, which included several substantive changes to the detriment of consumers like Plaintiffs, including its expansion of the scope of disputes subject to binding arbitration to "any and all disputes, claims or controversies arising out of or relating to your Membership in Skechers Plus, or any related services or products purchased or received," Ex. 4, SKECHERS27, from the 2021 Terms, which merely stated, "any dispute arising from these Terms or in connection with Skechers Plus" were subject to binding arbitration. Ex. 3, SKECHERS22. The 2025 Terms likewise provide extensive specific terms regarding the arbitration itself, naming the arbitrator (AAA), giving arbitrators authority over costs, and imposing a confidentiality requirement on members. Finally, the 2025 Terms add a class waiver provision.[6] So, the 2021 version limits arbitration to disputes based on the Terms themselves or those connected to the Program, whereas the 2025 Terms arguably includes disputes and claims

---

[6] Skechers has not raised any class waiver defense in its Motion. *See generally* Dkt. 46. Plaintiffs reserve all arguments regarding any such defense, including that the assertions herein against the enforceability of the 2025 Terms apply equally to any such defense.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 18

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

with a tangential "relat[ion] to" membership in Skechers Plus, while also including disputes about "related services or products purchased or received." This "update" substantially changed Plaintiffs' rights under the Terms, to their detriment.

Skechers made these changes to the 2025 Terms without providing "reasonable" or "express" notice of the specifically updated terms in its email notices to Plaintiffs. In the subject heading of the purported email Notice to Plaintiff Melchor, Skechers deceptively highlighted "update[s]" about "Skechers Plus *Benefits*," while failing to once reference the specific, substantive changes to her legal rights regarding disputes, waiver of class actions and the ability to speak publicly about such matters—changes that operate to her *detriment*, not her benefit. Tran Dec., ¶¶ 8-9. Similarly, while the email to Plaintiff Liss announces a Terms "update" in the heading, the specific details provided about that update *exclude* any direct reference to the substantive changes to his legal rights. *Id.* at ¶¶ 14-15. By omitting key changes to Plaintiffs' legal rights while amplifying purported "benefits," these Notices are deceptive—and patently insufficient. *See, e.g.*, *Platt v. Sodexo, S.A.*, 148 F.4th 709, 719 (9th Cir. 2025) (where notice email "contained no express language that Sodexo was adding the new arbitration provision or that his continued participation in the Plan constituted consent or agreement to the new provision," it was insufficient); *Cf. Apexxus LLC v. OptumRx, Inc.*, 2025 WL 3707249, at *16 (N.D. Cal. Dec. 22, 2025) ("Optum's failure to confirm that all pharmacies received notice of the updates, *combined with the sparse and incomplete text of the updates*, lend additional support to a finding of procedural unconscionability (emphasis added)).

Skechers ignores key differences to repeatedly cite *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859 (9th Cir. Mar. 3, 2026) for its assertion that its notices were reasonable. For one, the plaintiffs "concede[d]" that they had agreed to "an earlier version" of the applicable Terms. *Id.* at

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 19

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*1. Plaintiffs do not make any such concession. *See supra* Section III(C). And while the *Ireland* court credited the notice for stating that defendant was "updating its terms," and by including a link to the terms, Skechers' notice is distinguishable where every single reference to the "update" of its Terms was matched by references to "benefits" (in the subject heading, as to Melchor)—in the glaring absence of references to updated *detriments* to consumers. A reasonable consumer could, thus, surmise that the *listed* benefits "updates" constituted a summary of all "updates" in the 2025 Terms. Indeed, the court's determination in the nonprecedential decision *Ireland* runs contrary to its finding in *Platt*, a precedential case, that email notice was insufficient where it "contained *no express language* that Sodexo was *adding the new arbitration provision* or that his continued participation in the Plan constituted consent or agreement *to the new provision*." 148 F.4th at 719 (emphasis added).

Skechers' email notice thus fails the *Pratt* requirement of specifically mentioning changes to consumers' legal rights, while deceptively focusing only those changes to the Terms that constituted membership "benefits." This tips the admittedly "fact-intensive" analysis against Skechers. *Ireland*, 2026 WL 594859, at *4 ("[E]valuating whether inquiry notice has been established is [ ] always a fact-intensive analysis, and we do not hold that notice by mass email establishes inquiry notice in every case[.]").

Skechers points to the 2021 change-of-terms provision that by "continuing to participate in Skechers Plus," a consumer accepts any unilateral modification made by Skechers to its own terms. Mot., 1, 4, 15. *See* Ex. 3, SKECHERS21. Preliminarily, Skechers proffers *zero* evidence of Plaintiffs' continued participation in its Loyalty Program. *See* Mot., 21 (pointing solely to enrollment); *see supra* Section II(A). Nor has it shown that Plaintiff Melchor ever received the email notice purportedly delivered to her inbox. Tran Dec. ¶ 10. *See, e.g.*, *Rader v. Nw. Fed. Credit*

*Union*, 2024 WL 388097, at \*6-\*8 (E.D. Va. Feb. 1, 2024) (no evidence that plaintiff opened the email linking to terms; court "will not bind an individual to an arbitration clause in a contract. . . . of which she was completely unaware"), *appeal dismissed,* 2024 WL 3963686 (4th Cir. May 2, 2024).

And its "evidence" of Plaintiffs' continued participation is no evidence at all. Plaintiff Liss has done nothing with his membership since signing up—let alone taken any action indicating his assent to the new Terms. *See id.* at ¶¶ 11-16. While he did *open* the email (*id.* at ¶ 16), Skechers has demonstrated no affirmative action that would sufficiently manifest assent. Further, it submits that Ms. Melchor made purchases from *Skechers*, but offers no evidence of any continued "participation" (*e.g.*, points accumulation, program rewards, account log-ins, customer service contacts) in Skechers Plus after those terms went into effect. *Id.* at ¶ 10. This again distinguishes Defendant's repeatedly cited case, *Ireland*, where the court's finding that plaintiffs "manifested assent" was based on "their continued use of the Tile App." 2026 WL 594859, at \*4. There is no evidence of continued "participation" specifically in the Skechers loyalty program.

Even if Skechers had adduced evidence of Plaintiffs' continuing participation in Skechers Plus, such unilaterally drafted provisions—providing for assent through continued conduct—are disfavored. "As a general rule, 'silence or inaction does not constitute acceptance of an offer.'" *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017) (quoting *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1385 (1993)). "California courts have long held that [a]n offer made to another . . . cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent, for the offerer cannot prescribe conditions of rejection so as to turn silence on the part of the offeree into acceptance." *Id.* (citation and quotations omitted). As

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 21

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

the Ninth Circuit made clear in *Jackson*, regarding modification to an employment agreement: "the fact that [the drivers] continued working and using the Amazon Flex app could not demonstrate assent. . . . a reasonable person would not believe that the Flex drivers' conduct constituted an intent to be bound by a new arbitration provision in the 2019 TOS." 65 F.4th at 1100.

On this point, the Supreme Court of South Carolina's decision in *Lampo* is instructive. While "[s]ilence and inaction [could] constitute acceptance of an offer," it could do so only "[where] it may be inferred that the offeree's silence and inaction" amounts to "manifestation of assent." *Lampo v. Amedisys Holding, LLC*, 445 S.C. 305, 315 (2025). Before notice, the plaintiff "worked according to the terms of the initial [ ] employment agreement," and after, there was "nothing to indicate she did anything different that could be considered a manifestation of assent to the [ ] offer." *Id.* She just continued to perform "duties for which she was already under contract to be paid." *Id. See, e.g.*, *Sevier County Schools Federal Credit Union v. Branch Banking & Trust Co.*, 990 F.3d 470, 477 (6th Cir. 2021), *cert. den.* 142 S. Ct. 2770 (U.S. 2022) (court improperly "place[d] the burden on the [consumers] to . . . object to a company's unilaterally adopted arbitration policy or risk being found to have agreed to it. This is not how contracts are formed"); Restatement (Second) of Contracts § 19(2) (Am. Law Inst. 1979) (conduct "not effective as a manifestation of [ ] assent unless [ ] intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.").

Skechers has simply failed to demonstrate that its emailed Notices invoked Plaintiffs' consent sufficient to enforce the 2025 Terms against them. The Motion should be denied.

**D. Any Enforceable Contract Under the 2021 or 2025 Terms Does Not Reach Plaintiffs' Claims.**

Nevertheless, all of this discussion is academic where the Loyalty Program Terms do not

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION (No. 3:25-CV-05861-DGE) – 22

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

cover Plaintiffs' claims stemming from deceptive email communications.[7] Put another way: *even if* Skechers' unauthenticated pop-up notice comes in and is found sufficiently conspicuous, and *even if* Skechers gave sufficient notice of the 2025 modifications, both the 2021 and 2025 Terms are limited to "participation in Skechers Plus," which has nothing to do with this case. Ex. 3, SKECHERS17 ("[T]hese Terms and Conditions [ ] govern your participation in Skechers Plus."); Ex. 4, SKECHERS23 (same). Moreover, the binding arbitration and class waiver provisions are limited to the Terms, which themselves are limited to Skechers Plus, or to Skechers Plus itself. Ex. 3, SKECHERS22 (referring to "any dispute arising from these terms or in connection with Skechers Plus"); Ex. 4, SKECHERS27 (disputes and claims "arising out of or relating to your Membership in Skechers Plus, or any related services or products purchased or received"). Put simply: Plaintiffs' Skechers Plus membership (if any)—and terms that may govern it—have nothing to say about the deceptive emails that undergird this case.

One need only look to the Complaint to see what this case is about—and that it is not remotely about Plaintiffs' purported agreement with Skechers or membership in the Loyalty Program. *Jackson*, 65 F.4th at 1101 ("In determining if a dispute falls within the scope of an arbitration clause, we examine the factual allegations raised in the complaint."). Plaintiffs have pled that Skechers "blasts" consumers like them "with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets." Dkt. 28 ("Amd. Compl."), ¶ 4. Plaintiffs challenge Skechers' deceptive marketing "scheme," through "false time scarcity" representations in email subject headings,

---

[7] To the extent Skechers argues arbitrability has been delegated to the arbitrator, Skechers is wrong. Plaintiffs are consumers. "Where at least one party is unsophisticated, judges . . . routinely find that the incorporation of the AAA rules is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability," such that a court, not an arbitrator, decides whether a dispute is within the scope of an arbitration clause. *Magill v. Wells Fargo Bank*, N.A., No. 4:21-cv-01877 YGR, 2021 WL 6199649, at *5 (N.D. Cal. June 25, 2021) (citing *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019); *Ingalls v. Spotify USA, Inc.*, No. 16-0353 WHA, 2016 WL 6679561, at *3–4 (N.D. Cal. Nov. 14, 2016)).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 23

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

which it employs to "corral consumers to purchase its products." *Id.* at ¶ 40; *see id.* at ¶¶ 30-39 (such "false scarcity" claims are effective in triggering consumers to act against their interests). And while the Complaint does challenge a handful of deceptive representations in emails regarding "member" discounts, *id.* at ¶¶ 61(c) & (d), 62-64, the claims have nothing to do whatsoever with Plaintiffs' or class members' membership in Skechers Plus, or any terms governing that membership. *See generally id.* Indeed, the deceptive emails pled by Plaintiffs do not regard deals specifically offered to them as alleged members of Skechers Plus. *Id.* at ¶¶ 77-78.

This case does not come under Skechers Plus, or the terms that purportedly govern membership, as required under both 2021 and 2025 provisions. Put another way, Plaintiffs' "factual allegations," *supra*, are not "within the scope of the arbitration clause[s]." *Jackson*, 65 F.4th at 1101. Plaintiffs are not alleging any provision of the Terms has been violated. Nor are they addressing concerns regarding their membership or participation in Skechers Plus. Plaintiffs aren't suing Skechers for incorrect loyalty point allocation or improper "tier" assignment. Neither challenges Skechers' cancellation of their membership. Plaintiffs' claims stand even if the loyalty program were fully and properly administered.

Plaintiff *do challenge* Skechers for deceptive commercial conduct, in violation of CEMA, enacted to protect consumers against the very false-scarcity claims made here. Amd. Compl., ¶¶ 13-29. *See, e.g.*, *Jackson*, 65 F.4th at 1101 ("We have held that even under broad arbitration clauses like this one, factual allegations must at least 'touch matters' covered by the contract containing the arbitration clause.'" (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (citing *Ramos v. Super. Ct.*, 239 Cal. Rptr. 3d 679, 721 (2018)). Plaintiffs' claims do not "touch" Skechers Plus, where they do not arise from the rights or obligations created by the program. Plaintiffs' claims arise from statutory duties imposed by Washington law, not from a loyalty

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION (No. 3:25-CV-05861-DGE) – 24

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

program agreement.

This Court has recently addressed a similar issue and found, even if the plaintiff was bound by the terms of a member program, the claims under ordinary application of Washington Consumer Protection Act—not CEMA—did not "fall within the scope of the arbitration provision." *Close*, 787 F. Supp. 3d at 1172-73 (applying Texas law). Similar to the Skechers' provisions, the clause provided that disputes "arising from or relating to" the terms themselves or the rewards program would be handled in arbitration. *Id.* And as the Court found there, allegations like those here about "the allegedly false advertised discounts not do not 'arise from' or 'relate' to her membership in the rewards program or the number of points she received for her purchases." *Id.* (citing *Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1060 (10th Cir. 2018), a "materially identical case," for the proposition that "applying a plain grammatical meaning of the contract to the facts of this case. . . the parties did not intend to have facts like those alleged in [the] complaint to fall within the 2014 Rewards Program agreement's arbitration provision"). As in *Close* and *Cavlovic*, "[t]he mere existence of the Rewards Program agreement is not itself sufficient to conclude that [Plaintiffs'] allegations of deceptive advertising arise from or relate to that contract." *Id.*.

Skechers attempts to connect this case to its Terms by pointing to the provisions regarding consent to receive marketing emails. Mot., 4, 21. Again, this misses the mark. Plaintiffs are not challenging the *receipt* of marketing emails; they are challenging Skechers' affirmative practice of transmitting *deceptive* emails—that the 2021 and 2025 Terms do not cover. Put another way, even if Plaintiffs actually had notice of and agreed to the Terms (they did not), they never once consented to receiving false, misleading or deceptive messaging in those emails. *See* Ex. 3, SKECHERS20-21 (no agreement to deceptive marketing content); Ex. 4, SKECHERS26 (same).

Skechers points to inapposite case law to assert that any agreement to *receive* marketing

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 25

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

emails encompasses Plaintiffs' claims challenging its *deception* in those marketing emails. But it cannot re-make those decisions in its favor. Wholly unlike the Terms here, the agreement in *Sapan* incorporated all manner of claims through broad language that sought "[t]o the greatest extent permitted by law," to bring in "all disputes and claims between you and AT&T, except for claims arising from bodily injury or death" under the arbitration clause. *Sapan v. Directv, LLC*, 2023 WL 5505914, at *5-*6 (C.D. Cal. June 9, 2023). As the court noted, the "Ninth Circuit has held that where an arbitration clause includes language such as 'arising out of or relating to' *the relationship between the parties*, the clause should be interpreted broadly." *Id.* at * 6 (citing *Simula*, 175 F.3d at 721). Here, the 2021 and 2025 provisions are narrowed to disputes "arising from these Terms or in connection with Skechers Plus" (2021) and "arising out of or relating to your Membership in Skechers Plus" (2025), and do not once invoke the "relationship with" Skechers. And in *Lainer v. Uber Techs., Inc.*, 2016 WL 7444925, at *4 (C.D. Cal. May 11, 2016), the arbitration clause broadly encompassed Uber's "services," services plaintiff had used as a *driver*; and plaintiff's claims against the defendant regarded *receipt* of text messages in the first place, receipt that was covered by her agreement with defendant. *Id.* By contrast, Plaintiffs' claims *do not arise* from any membership in Skechers Plus, and any agreement (if any) to *receive* marketing emails does not constitute consent to receive deceptive emails.

Neither Plaintiffs' Skechers Plus membership (if any) or the Terms of that membership have anything to do with this case. Skechers cannot make this case fit into its arbitration clauses which require that it "arise from" the loyalty program. It doesn't, so the Motion fails.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Compel Arbitration should be denied.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION (No. 3:25-CV-05861-DGE) – 26

Date: June 18, 2026

Respectfully submitted:

*/s/ Lynn A. Toops*___
Lynn A. Toops, *pro hac vice*
Natalie A. Lyons, *pro hac vice*
Ian R. Bensberg, *pro hac vice*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

*I certify that this memorandum contains 8,384  words in compliance with the Local Civil Rules.*

*/s/ Walter A. Smith*_____
Walter M. Smith
**Smith & Dietrich Law Offices, PLLC**
1226 State Ave NE, Suite 205
Olympia, WA 98506
360-915-6952
walter@smithdietrich.com

Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli, *pro hac vice*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Gerard J. Stranch, IV*
Michael C. Tackeff,  *pro hac vice*
Andrew K. Murray*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (No. 3:25-CV-05861-DGE) – 27

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*Attorneys for Plaintiff*
**\*Applications for admission *pro hac vice* forthcoming**


## CERTIFICATE OF SERVICE

I, Lynn A. Toops, hereby certify that on June 18, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

Date: June 18, 2026

/s/ Lynn A. Toop
Lynn A. Toops, *pro hac vice*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION (No. 3:25-CV-05861-DGE) – 28

CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593